FRANCISCO A. VILLEGAS (Bar No. 206997)
fvillegas@atllp.com
KYLE G. GOTTUSO (*pro hac vice*)
kgottuso@atllp.com
MARGARET R. SZEWCZYK (*pro hac vice*)
mszewczyk@atllp.com
WENKAI TZENG (*pro hac vice*)
wtzeng@atllp.com
CHARLIE M. JONAS (*pro hac vice*)
cjonas@atllp.com
ARMSTRONG TEASDALE LLP
7 Times Square, 44 Fl.
New York, New York 10036
Telephone: (212) 209-4400
Facsimile: (314) 621-5065

JOHN V. PICONE III (Bar No. 187226)
jpicone@hopkinscarley.com

HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, California 95113-2406

*Attorneys For Plaintiff*
B.S.D. CROWN, LTD.

STEFANI E. SHANBERG (Bar No. 206717)
sshanberg@perkinscoie.com
NATHAN B. SABRI (Bar No. 252216)
nsabri@perkinscoie.com
ROBIN L. BREWER (Bar No. 253686)
rbrewer@perkinscoie.com
MATHIEU A. SWIDERSKI (Bar No. 330333)
mathieuswiderski@perkinscoie.com
KARL M. JOHNSTON (Bar No. 327446)
kjohnston@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:  (415) 344-7000
Facsimile:  (415) 344-7050

*Attorneys for Defendants*
AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC., AND
TWITCH INTERACTIVE, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| B.S.D. CROWN, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC.,<br><br>Defendants. | Case No. 3:23-CV-00057-WHO<br><br>[PROPOSED] ORDER AND STIPULATION RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

Upon the stipulation of the parties, the Court ORDERS as follows:

1.  This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1." In the event of a conflict between this Order and the Federal Rules of Civil Procedure or any other discovery rules or orders, this Order shall control.

2.  This Order may be modified in the Court's discretion or by agreement of the parties.

3.  As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4.  A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5.  The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines").

**Rules Governing the Production of ESI**

6.  Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

    a.  **General Document Image Format.** Except as otherwise provided for in this Stipulation, all documents existing in electronic format shall be produced in color in TIFF image or multi-page PDF files at a resolution of at least 300 dpi in accordance with the following:

        i.  <u>Images</u>. For production to Defendant, single page TIFF and for production to Plaintiff, multi-page PDF files shall be produced along with image load files that indicate the beginning and ending of each document, and associated multipage text files containing extracted text or OCR with load files containing all requisite information including relevant metadata. All hidden text (e.g., track changes,

speaker notes, hidden rows or columns, formulas, comments, markup notes, etc.) shall be produced.

  ii. In the event that production of a document in TIFF or PDF image file format would be impracticable, the producing party shall have the option of producing such document in native format. The producing party shall provide documents in a searchable format, regardless of whether the producing party produces documents in TIFF or PDF image file format or native format. Load files shall tie together such TIFF or PDF images and extracted text and indicate the location and unitization of the files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Regardless of the above, all spreadsheets should be produced in native format with a corresponding bates stamped slip sheet.

  iii. <u>Metadata</u>. Load files should include, where applicable, the following information: See attached metadata list, **Exhibit A**.

  iv. <u>Production media and encryption of productions</u>. Unless otherwise agreed, the parties shall provide document production data on external hard drives, SFTP, or other manner of electronic transmission, as appropriate. The producing party may encrypt the production data using encryption with complex passwords, and the producing party may forward the password to decrypt the production data separately from the external drive, SFTP, or other electronic transmission to which the production data is saved.

  v. <u>Format for production of documents – hardcopy or paper documents</u>. All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above. Reasonable efforts shall be made to scan the pages at

or near their original size and so that the image appears straight and not skewed. Physically oversized originals, however, may appear reduced. In addition, reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text.

    vi.    <u>Source code</u>. This Stipulation does not govern the format for production of source code, which shall be produced pursuant to the relevant provision of the Protective Order.

    vii.    <u>Attachments</u>. If emails are produced, the parties shall produce email attachments together in families.

    viii.    <u>Extracted Data</u>. Extracted data will be produced in a delimited data file in accordance with the following technical specifications: (a) the first line of the data file must be a header row identifying the field name; (b) the data file must use the following default delimiters: (Comma "," ASCII character 020; Quote "β" ASCII character 254; Newline "®" ASCII character 174; Multi-value ";" ASCII character 59); (c) Date and DateTime fields in the data file must be provided in mm/dd/yyyy format; and (d) All attachments should sequentially follow the parent/document email and include data fields identifying documents as "parent" documents or "attachments" with appropriate group identifiers.

    ix.    <u>Prior Productions</u>. Materials from another litigation shall be produced in this litigation, to the extent reasonably feasible, in the same format as originally produced. This ESI agreement shall not apply to prior productions, except for Sections 1-5, 6(b), 14-16, 18-19, and 20.

b.    **Footer.** Each document image shall contain a footer with a sequentially ascending production Bates number and confidentiality designation.

      c.    **Native Files.** A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall either object or produce the document in its native format to the extent reasonably accessible. The parties will meet and confer to discuss any objections. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced. A document produced as a native file must include the following:

          i.    Documents produced in native file format will have the file name named the same as the BEGDOC number;

          ii.    The full path of the native file will be provided in the data file for the NATIVE_FILE field;

          iii.    When native files are produced because rendering the file to TIFF or PDF would not result in viewable images, a TIFF or PDF image slip sheet placeholder will be produced endorsed with the file name and the legend "Document Produced in Native Format" (or something similar);

          iv.    The confidentiality designation applied to any document under a protective order entered in this action will be produced in the load file in the DESIGNATION field and affixed to the placeholder.

      d.    **Databases.** Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form,

such as a report or data table. These reports or data tables will be produced in a static format.

e. **Requests for Hi-Resolution Documents.** The parties agree to respond to reasonable and specific requests for the production of higher resolution images. Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution images, the parties will meet and confer in good faith to try to resolve it.

f. **Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document, unless privileged, the English-language version shall be produced as well. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

g. **Backups.**

The parties disagree on the necessity of the production of backup data in this case.

**Plaintiff's proposed language**: "A party is required to restore archives or backed-up data if information or documents responsive to a properly served discovery request may be located in the archive or back-up hard drive, server, tape, disk, SAN, or other form of media backup."

**Defendants' proposed language**: "Absent a showing of good cause, no party need restore any form of media backed-up prior to January 5, 2023, which is maintained in a party's normal or allowed processes, including but

      not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case."

  h. **Voicemail, Instant Messages, and Mobile Devices.** Absent a showing of good cause, voicemails, personal instant messaging applications, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

  i. **Miscellaneous Data.** Absent a showing of good cause, unallocated, slack space, deleted data, file fragments or other data accessible by use of computer forensics, and difficult to preserve ephemeral data is deemed not reasonably accessible and need not be collected and preserved. This includes data related to Random Access Memory (RAM), temporary files, and substantially duplicative backup or archived data.

**Email Discovery**

 7. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests.

 8. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

 9. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.  While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

 10. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

 11. Each requesting party shall limit its email production requests to a total of **[Plaintiff's proposal: fifteen] [Defendants' proposal: five]** custodians per producing party for all

such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

12. Each requesting party shall limit its email production requests up to a total of **[Plaintiff's proposal: twenty] [Defendants' proposal: five]** search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

13. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines. Nor shall anything in this Order serve to limit a party's right to object to any discovery request on any ground.

**Privilege and Lack of Waiver**

14.     Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work-product protected ESI is not a waiver in the pending case or in any other proceeding. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

15.     The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

16.     Neither party will produce nor list on any privilege log any item protected by any privilege, immunity, or protection that occurred or was/is created on or after the filing date of this litigation except as required by Patent L.R. 3-7.

17.     To the extent email is produced, the producing party may log all protected content in email chains and strings by logging the topmost email of the email chain or string, as well as sufficient information regarding any redacted or withheld material below the topmost email to allow the receiving party and the Court to make a cogent evaluation of the appropriateness of the assertion of a privilege or other protection. Sufficient information in the foregoing sentence includes an identification of the author, recipient(s), date ranges for each email sent, privilege asserted and general subject matter of the redacted or withheld material below the topmost email, to the extent this information differs from such information provided for the topmost email. A producing party's logging of the topmost email shall be deemed to assert protection for all of the protected material in an email string or chain, including multiple redactions or multiple segments. Nothing herein shall prevent the receiving party from challenging the propriety of the designation of attorney-client privilege, work product, or other designation of protection.

**Deduplication**

18.     The parties agree to deduplicate documents prior to production where feasible. Duplicate documents may be withheld from production provided deduplication is handled in the following manner:

   a.     As to emails that have not been printed into a paper form and remain in electronic form, those emails will be considered duplicates if (i) the hash

values of two or more emails are identical, and (ii) the substantive text of the email is exactly the same.

b.  As for non-email electronic documents, these documents will be considered duplicates if (i) they have the same hash value.

19.  All duplicates must identify the duplicate custodians even if that duplicate custodian is identified after a document has been produced. An updated duplicate custodian list must be provided with each production where documents were not produced due to detected duplication.

**Effect on Discovery Obligations**

20.  Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal Rules of Civil Procedure, Local Rules, or other order of the Court.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:  September 1, 2023                     **PERKINS COIE LLP**

By: */s/ Robin L. Brewer*
   Robin L. Brewer

*Attorneys for Defendants*
AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC.,
TWITCH INTERACTIVE, INC.

Dated: September 1, 2023                      **ARMSTRONG TEASDALE LLP**

By: */s/ Francisco A. Villegas*
   Francisco A. Villegas

*Attorneys for Plaintiff*
BSD CROWN, LTD.

**Exhibit A**

| Field Name | Field Description |
|---|---|
| BegDoc | Beginning Bates number as stamped on the production image |
| EndDoc | Ending Bates number as stamped on the production image |
| BegAttach | First production Bates number of the first document in a family |
| EndAttach | Last production Bates number of the last document in a family |
| Batesrng | Range of Bates numbers that make up the document. |
| ParentID | The BegDoc value of the document's parent |
| AttachNames | Semi-colons deliminated list of original filenames of all attached documents |
| NumAttach | Total number of documents attached to the document |
| All Custodians | All custodians, de-duped and primary, associated with a file. |
| Email Subject | Subject line of email |
| SentDateTime | Sent date and time of an e-mail message |
| ReceivedDateTime | Received date and time of an e-mail message |
| To | All recipients that were included on the "To" line of the email |
| From | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| Author | Any value populated in the Author field of the document properties |
| LastAuthor | Last Saved By value pulled from native metadata |
| Filename | Filename of an electronic document |
| Filepath | Pathname of file's location |
| Filesize | Size of native file, in bytes |
| Title | Title value extracted from the native metadata |
| ModifiedDateTime | Date and time the native file was last modified |
|  | this is called Last Author which is already added. Delete. |
| CreatedDate | Date the document was created (format: MM/DD/YYYY) |
| CreatedTime | Time the electronic document was created |
| TimeZoneProcessed | Time Zone Processed |
| DocExt | File extension of the document |
| MD5File | MD5 Hash of the actual contents of the document |
| NATIVELINK | Native File Link (Native Files only) |

| | |
|---|---|
| Text | Path to individual searchable text files |
| HasTrackChanges | Document has Track Changes |
| HasHiddenData | Document has Hidden Data such as (Comments, Row or Columns) |
| HasNotes | Document has Notes |
| Organization | Company extracted from native metadata |
| ConvIndex | E-mail thread identification |
| MD5Dupe | MD5 Hash used for deduplication (generally different than MD5File for emails) |
| Confidentiality | Confidentiality assigned to the document. |
| Redacted | If Redacted |
| Placeholder | Notation when slipsheet inserted |
| ProdRound | Production volume number |

**[PROPOSED] ORDER**

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: _____

  Hon. William H. Orrick
  U.S. District Judge

## **ATTESTATION CLAUSE**

I, Francisco A. Villegas, am the ECF user whose credentials were used in this filing. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have consented to the filing of this document.

Dated: September 1, 2023                              By: */s/ Francisco A. Villegas*
                                                                              Francisco A. Villegas