STEFANI E. SHANBERG (Bar No. 206717)
sshanberg@perkinscoie.com
NATHAN B. SABRI (Bar No. 252216)
nsabri@perkinscoie.com
ROBIN L. BREWER (Bar No. 253686)
rbrewer@perkinscoie.com
MATHIEU A SWIDERSKI (Bar No. 330333)
mathieuswiderski@perkinscoie.com
KARL M. JOHNSTON (Bar No. 327446)
kjohnston@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Attorneys for Defendants
AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC., AND
TWITCH INTERACTIVE, INC.

IN THE UNITED STATES DISTRICT COURT

FOR NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BSD CROWN, LTD.

Plaintiff,

v.

AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC., AND
TWITCH INTERACTIVE, INC.

Defendants.

Case No. 3:23-cv-00057-WHO

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: January 24, 2024
Time: 2:00 p.m.
Location: Courtroom 2, 7th Floor
Judge: Hon. William H. Orrick

TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. THE ASSERTED CLAIMS ARE NOT PATENT-ELIGIBLE ..... 1

A. BSD has not shown that the claims are directed to anything but the abstract idea of real-time data transmission ..... 1

1. BSD's claims lack an improvement in computer functionality ..... 3

2. BSD's claims use only functional language with no explanation for how to achieve real-time data transmission ..... 8

B. BSD cannot show that the claims recite a transformative inventive concept ..... 10

III. JUDGEMENT ON THE PLEADINGS IS WARRANTED ..... 12

IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**CASES**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) .......... 9

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .......... 5, 8, 9

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .......... 1, 2

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015) .......... 11

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
569 U.S. 576 (2013) .......... 9, 12

*Avocent Huntsville, LLC v. ZPE Sys., Inc.*,
No. 3:17-cv-04319-WHO, 2018 WL 1411100 (Mar. 21, 2018) .......... 5

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) .......... 3, 7

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) .......... 11

*ChargePoint, Inc. v. Semaconnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) .......... 4, 8

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
813 F. App'x 495 (Fed. Cir. 2020) .......... 7

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) .......... 6

*CosmoKey Sols. GMBH & Co. KG, v. Duo Sec. LLC*,
15 F.4th 1091 (Fed. Cir. 2021) .......... 12

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
986 F.3d 1367 (Fed. Cir. 2021) .......... 9, 12

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) .......... 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .......... 10

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)........................................................................................ 6

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023)........................................................................................ *passim*

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
No. 3:16-cv-02787-WHO, 2016 WL 6834614 (N.D. Cal. Nov. 21, 2016) ............................ 10

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016)........................................................................................ 3, 7, 10

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
132 S. Ct. 1289 (2012) ........................................................................................ 1, 2

*Realtime Data LLC v. Array Networks Inc.*,
No. 2021-2251, 2023 WL 4924814 (Fed. Cir. Aug. 2, 2023)...................................... 5, 6, 8, 9

*SAP America, Inc. v. Investpic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)........................................................................................ 7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019)........................................................................................ 6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)........................................................................................ 4, 7, 9

*Uniloc, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 130 (Fed. Cir. 2020)........................................................................................ 6

*Vaporstream, Inc. v. Snap Inc.*,
No. CV1700220BROKSX, 2017 WL 11599142 (C.D. Cal. June 12, 2017)............................ 3

# I. INTRODUCTION

BSD's opposition reads like a catalog of features that, in retrospect, it wishes it had claimed. Even accepting BSD's conclusory allegations that using a compression protocol that permitted transmission over HTTP provided a technological improvement or an inventive concept does not help BSD because that protocol plainly is not claimed. And BSD does not get to *post hoc* expand the scope of its claims to read in these features to save them from invalidation.

As is clear from the claim language, BSD's claims are directed to the abstract idea of real-time data transmission. The result-oriented language gives no explanation of how to accomplish that goal, and there is no technological improvement to be found. Indeed, BSD's reliance on *unclaimed* aspects of a compression protocol in its opposition instead highlights that the actual claims cover nothing more than an abstract idea. Further, the claimed use of general, off-the-shelf computer components to perform the abstract idea is not the type of transformative inventive concept that can rescue BSD's claims. BSD's tactic of simply listing claim elements as self-evidently inventive or transformative cannot counter Defendants' arguments. Accordingly, judgment for Defendants is warranted.

# II. THE ASSERTED CLAIMS ARE NOT PATENT-ELIGIBLE

## A. BSD has not shown that the claims are directed to anything but the abstract idea of real-time data transmission

BSD's claims are not patent-eligible; they are directed to the abstract idea of real-time data transmission. As explained in Defendants' Motion, BSD's claims recite collecting, packaging, and conveying a large volume of data. Mot. at 6-8. This is accomplished in "real-time" by performing those steps over the internet. Namely, claim 1 recites collecting information as a "data stream having a given data rate," "dividing the stream into a sequence of slices," encoding and indexing the slices, and transmitting the sliced data to a server for a user to download at a rate "generally equal to the data rate." These steps are nothing more than applying the abstract concept of data transmission with the speed enabled by computers and the internet—a quintessentially abstract idea under *Alice*. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 223-24 (2014); *see also Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 132 S. Ct. 1289, 1294 (2012).

The specification confirms the claims' focus on the abstract concept of real-time data transmission. The patent's written description explains the data-transmission process at a high level without any technical details, relying instead on admittedly well-known processes and components performing their standard functions. For example, the specification describes encoding data slices using standard compression protocols, uploading those slices in real time "using an internet protocol, most preferably the File Transfer Protocol (FTP), as is known in the art," and generically "adjust[ing] the data streaming rate" as needed. '473 pat. at 2:9-11, 6:50-54, 7:36-49, 11:26-38, 11:52-12:12. Clients download these data slices "using an internet protocol . . . most preferably the Hypertext Transfer Protocol (HTTP), or alternatively, using other protocols, such as UDP or RTP, which are similarly known in the art." *Id.* at 2:1-15, 7:5-17. This was no earth-shattering use of HTTP, which already "support[ed] this sort of file streaming." *Id.* at 2:26-28. The specification describes the components used to perform these tasks at a similarly high level. For example, the encoder and server communicate over a network, "preferably using the well-known internet Protocol (IP)." *Id.* at 6:28-31. And the network is just the internet or any "other computer network as is known in the art." *Id.* at 6:36-43.

BSD does not dispute that the concept of collecting, packaging, and conveying information is abstract. Instead, BSD spends substantial space attacking Defendants' encyclopedia analogy as an oversimplification of the claims. Opp. 12-14. Not only does that focus ignore the substance of Defendants' arguments, but it further highlights the abstractness of these claims. Namely, BSD's only quibble with the encyclopedia analogy is that shipping does not happen in "real-time." But accelerating beyond the pace of printing and shipping paper volumes to sending information with "real time" speed as permitted by the internet is exactly the type of abstract concept contemplated in *Alice*—it merely takes the abstract idea of packaging and transmitting data and applies it using computers and the internet. *See Alice*, 573 U.S. at 223-24; *see also Mayo*, 132 S. Ct. at 1294.

In any event, BSD's criticisms are unfounded. The encyclopedia analogy accounts for every aspect of the claims. For example, the assigned data rate is equivalent to the speed of the printing press and mail room; the indices are the encyclopedia volume numbers; the varied data-quality levels are captured in printing full and abridged versions of the encyclopedia; and the use of HTTP

is like selecting one of several known shipping methods to deliver the volumes. Moreover, using the HTTP protocol is not even required by the claims, so it is not relevant whether Defendants' encyclopedia analogy captures this concept (even though it does). BSD's citation to *Vaporstream*, therefore, is misplaced. There, the court acknowledged that analogies have "limited value" only "to the extent [they] are incompatible with fundamental, technological aspects" of the claims. *Vaporstream, Inc. v. Snap Inc.*, No. CV1700220BROKSX, 2017 WL 11599142, at *5 (C.D. Cal. June 12, 2017). Here, Defendants' encyclopedia analogy is fully compatible with BSD's claims, leaving out only the further instruction to apply the underlying abstract idea using the internet to speed up the data-transmission process to real-time.

Importantly, BSD's hyper-focus on this one analogy demonstrates just how thin its actual response to Defendants' analysis of the claims is. Ultimately, while an analogy is a useful tool, what matters is the claim language. Defendants' Motion showed multiple examples of analogous abstract claims. As explained below, BSD's criticisms of Defendants' cited cases miss the mark. Opp. 16-19. There is no technological improvement described in the claims, nor do the claims explain how to achieve the goal of real-time data streaming; they are instead directed to an abstract idea.

***1. BSD's claims lack an improvement in computer functionality***

BSD relies heavily on a purported technological improvement to argue that its claims are not abstract. That argument fails. BSD's claims merely use computers as a tool to accomplish real-time data transmission; they do not change the way any computer components operate. Instead, each component performs its standard function: the transmitting computer receives a data stream with a given rate, the data is divided into slices by known methods, the encoder encodes the slices as files with indices by known methods, and the files are uploaded to a server for download by a client, again by known methods. *See, e.g.*, '473 pat. at 2:1-15, 2:26-28, 6:50-54, 7:5-17, 7:36-49, 11:26-38, 11:52-12:12; *see also, e.g.*, 6:28-31, 6:36-43, 11:9-22. Using these existing components for their standard functions is no technological improvement. *See, e.g.*, *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (claims to "recording, administration and archiving of digital images" lacked technological improvement in cellular telephones where specification

made clear that "it 'is known' that 'cellular telephones may be utilized for image transmission.'"); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1375 (Fed. Cir. 2023) (claims lacked any technological improvement where they did not recite any "special data conversion" or other parameters for how to achieve stated goal of conserving bandwidth); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019) (claims did not provide "new networking hardware or software, . . . HTTP header fields, user identifiers, encryption techniques, or any other improvement in [] network technology."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, *LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (claims did not "provide any parameters for the 'signals' purportedly dictating how the information is being routed" and "[a]t best" used "generic computer components to carry out the recited abstract idea.").

Throughout its opposition, BSD points to its Background section, section III, to argue that the claims recite a non-abstract technological improvement. BSD explains that prior systems required the use of expensive equipment to achieve real-time broadcasting, while the purported invention in the '473 patent used "common" servers to accomplish that goal by using the HTTP protocol. Opp. 4-5. It summarily states that these "improvements are captured in the Asserted Claims," and quotes the claim language reciting the generic step of "providing … a data stream having a given data rate." *Id.* at 5-6. BSD then asserts that use of a given data rate for uploading data slices with a particular file format to a server "permit[s] real-time streaming" using "HTTP servers," which it purports to be "an improvement" in "real-time streaming technology." *Id.* at 6.

Thus, BSD's alleged improvement boils down to a supposedly "contrarian" use of the admittedly known HTTP protocol that can be accomplished by using an admittedly known file format. *Id.* at 6-7; *see also id.* at 9-10. Neither of these standard techniques improves the functioning of a computer. In fact, the specification confirms that the HTTP protocol already supported the claimed transmission sequence, '473 pat. at 2:26-28, and it does not give *any* details for how to create a file for the data slices. An even bigger problem for BSD is that the claims are *not limited* to the use of the HTTP protocol, nor do they require any particular file format or compression technique. BSD does not argue otherwise. Even if one were to accept that BSD's use of HTTP was "revolutionary," or that it encoded slices using a unique file format, unclaimed features cannot save

the claims from abstractness. *See Hawk Tech.*, 60 F.4th at 1357; *ChargePoint, Inc. v. Semaconnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

BSD also argues that the claims provide a "specific solution" in the purportedly "unique combination [of] networking equipment and data structures." Opp. 10. But "merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) (collecting cases). Further, the "concrete structures" BSD points to are just generic components; BSD itself describes the "transmitting computer," "encod[er]," and a "server" as "common, existing server and network infrastructure." Opp. 8, 10. And the specification likewise describes only standard computer parts. Each component communicates "using the well-known internet Protocol (IP)," and the network over which components communicate is nothing more than the internet or "other computer network as is known in the art." '473 pat. at 6:28-31, 6:36-43. Moreover, while BSD makes much of the fact that its claimed method *can be* accomplished using inexpensive components, that potential use-case does not constitute a non-abstract improvement in technology; the claims are not limited to any particular equipment, inexpensive or otherwise.

Thus, this case is not like *Avocent*. There, the claims recited specific components, including "a plurality of network nodes" and a "management module" that did more than "provide a generic environment in which to carry out an abstract idea." *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 3:17-cv-04319-WHO, 2018 WL 1411100, at *7 (Mar. 21, 2018) (cleaned up). Those specific structures "enhance[d] conventional systems by converting different types of management data into a common management data format," thereby "removing barriers to new technologies, including enhanced security." *Id.* There is nothing like that here, where the generic components are simply a tool to carry out the abstract concept of real-time data transmission.

BSD's argument for a purported technological improvement in claims 11 and 12 likewise fails. Opp. 7-8, 11-12. BSD alleges that using varied data-quality levels "solved the problem of varying bandwidth" and provided a low-cost solution "using technologies known at the time" and then block-quotes the specification's general description of changing the quality level of the data stream when the available bandwidth is too low or too high. *Id.* BSD gives no further explanation

for why the complaint or specification demonstrate a technological improvement. Not only does BSD's opposition fail to support its conclusory allegations, it highlights the generic, results-based language in claims 11 and 12. As explained in Defendants' Motion, the patent lacks any detail for determining bandwidth, encoding data at multiple quality levels, or selecting bandwidth thresholds or the data-quality level. *See Realtime Data LLC v. Array Networks Inc.*, No. 2021-2251, 2023 WL 4924814, at *11 (Fed. Cir. Aug. 2, 2023) (claims merely involved decision to use one of plurality of encoding techniques).

BSD relies on several cases with claims to non-abstract technological improvements, but none are helpful for the '473 patent's claims. In *Enfish*, the claims were directed to "a self-referential table for a computer database," which provided a specific improvement in "the way a computer stores and retrieves data in memory." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337, 1339 (Fed. Cir. 2016). In *Uniloc*, the claims made use of "an additional data field for polling at least one secondary station," which improved Bluetooth response time by "simultaneously send[ing] inquiry messages and poll[ing] parked secondary stations." *Uniloc, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307-08 (Fed. Cir. 2020). The claims in *SRI* were "directed to using a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019). The claims "actually prevent[ed] the normal, expected operation of a conventional computer network" by providing a "framework for the recognition of more global threats to interdomain connectivity," thus "reciting a specific technique for improving computer network security." *Id.* at 1303-04. And in *Core Wireless*, the claims were "directed to an improved user interface for computing devices." *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). The claims recited a "particular manner of summarizing and presenting information in electronic devices." *Id.* at 1362-63. BSD makes the sweeping, conclusory assertion that its claims are like those in its cited cases because BSD's claims "recite a specific technique" and do not use "generic components as tools." Opp. 15-16. But that is plainly false. The only "specific" elements that BSD points to are "media

data structures and HTTP servers," which, as explained, are not required in the claims. *Id.* at 15. What BSD *does* claim includes only general components for implementing the abstract idea of collecting, packaging, and transmitting data. Such use of computers merely as a tool to carry out the abstract idea is not patent-eligible.

BSD's attempts to distinguish Defendants' cited cases similarly fail. It summarily argues that *TLI*, *Cisco*, *Two-Way Media*, and *Bridge & Post* are distinguishable because BSD's claims provide a solution to a technical problem, but it fails to explain what that solution is or how its claims differ from those in the cited cases. *Id.* at 18. BSD's summary assertions do nothing to distinguish its claims from *TLI*'s abstract claims, which dated or timestamped a digital image to send over the internet but provided no improvement in cellular telephone or server technology, or from *Cisco*'s abstract claims, which merely selected which radio base station to act as the master in a network based on the station with the highest antenna performance with no "particular metric or method for ranking" the stations. *In re TLI*, 823 F.3d at 610; *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 497-98 (Fed. Cir. 2020). Nor does BSD distinguish its claims from those in *Two-Way Media*, which were abstract because they did not "provide any parameters for the 'signals' purportedly dictating how … information is being routed" and "[a]t best" used "generic computer components to carry out the recited abstract idea," 874 F.3d at 1338, or from the claims in *Bridge & Post*, which lacked any "new networking hardware or software … HTTP header fields, user identifiers, encryption techniques, or any other improvement in … network technology," 778 F. App'x 882 at 884. Instead, BSD refers back to its argument in section III of its opposition that its patented method uses data files and makes use of the HTTP protocol. But as explained, what BSD points to is not any technological solution, nor are those features claimed.

BSD finally attempts to distinguish *Cisco* on grounds that its own complaint included more than conclusory statements. But BSD then quotes the entirely conclusory allegation that its patent "disclosed the use of multiple streams at different quality levels," which "solved the problem of varying bandwidth" and "provided video quality at a fraction of the cost using technologies known at the time." Opp. 19 (quoting Compl. ¶ 24). BSD does not explain how these statements are any different from the conclusory allegations in *Cisco* that "the patent's disclosure and claims are drawn

to solving a specific, technical problem arising from the evolution of ad-hoc radio communication systems." 813 F. App'x at 498-99. Such conclusory allegations cannot defeat Defendants' Motion. *See SAP America, Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

#### ***2. BSD's claims use only functional language with no explanation for how to achieve real-time data transmission***

BSD's claims also lack a description for *how* to achieve real-time data transmission, further demonstrating their abstractness. Claim 1, for example, uses broad, result-oriented language like "providing" data at a "given data rate," "dividing" and "encoding" the data, and "uploading" and "downloading" the data at a "rate generally equal to the data rate." The claims lack critical details for achieving the goal of real-time data transmission. For example, the claims say nothing about how to determine or set the data rate, how to divide and encode data slices, the parameters to use for uploading and downloading the data files, or how to make the upload and download rates "generally equal" to the data rate. *See, e.g.*, *Affinity Labs*, 838 F.3d at 1258; *Hawk Tech.*, 60 F.4th at 1358; *Realtime*, 2023 WL 4924814 at *8.

BSD attempts to overcome these fatal deficiencies by highlighting claim language about assigning a "given data rate" to the data stream and dividing the data into slices which are encoded as a sequence of files, each with an index. Opp. 10-11, 20. BSD also argues that because the claim term "file" requires "an identifier that is recognizable by a file system," that somehow provides a description of how to accomplish real-time streaming. *Id.* at 11. But BSD does not explain how the claim language is anything but purely functional and result-oriented. *Id.* at 10-11, 19-20. Instead, BSD describes only what can be potentially *accomplished* by using the generically claimed processes (e.g., the use of "[f]iles *permitted the transmission* of bite sized chunks" and "*permitted the use of HTTP* for real-time media streaming," and the claimed steps of dividing and encoding "*enabled the use of HTTP*"). *Id.* at 11, 20. This focus on the "result" is exactly the problem with BSD's claims. *See, e.g.*, *Hawk Tech.*, 60 F.4th at 1357; *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020). And even if the patent did explain how to encode the data or transmit files over HTTP, the claims are not limited to any particular file type, encoding protocol,

or the use of HTTP, making any such explanation irrelevant. *See ChargePoint*, 920 F.3d at 769; *Hawk Tech.*, 60 F.4th at 1357.

BSD fails to meaningfully distinguish Defendants' cited cases. BSD summarily argues that its claims are different because they provide the "how" missing from the patentee's claims in *Hawk Tech* and *Two-Way Media*. Opp. 16-17, 19-20. But the opposition does not explain what makes the patent's generic "providing," "dividing," "encoding," and "uploading" steps different from *Hawk Tech*'s "digitizing," "converting," and "transmitting" steps, or from *Two-Way Media*'s "sending information," "directing the sent information," and "monitoring receipt of the sent information," for example. *Hawk Tech.*, 60 F.4th at 1357; *Two-Way Media*, 874 F.3d at 1337. BSD similarly argues that *Realtime*, *Affinity Labs*, and *Adaptive Streaming* are not analogous because the asserted patent's claims recite more than generic techniques, but BSD again does not explain why its claimed steps are any less generic than the claimed steps recited in those cases. *See, e.g.*, *Realtime*, 2023 WL 4924814, at *11 ("performing compression with a plurality of different encoders"); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) ("encoding and decoding image data"); *Affinity Labs*, 838 F.3d at 1258 ("transmit[ing] a request for the regional broadcasting channel," and "receiv[ing] a streaming media signal" at a device outside the broadcast region). It is no help that BSD's claimed steps may "achieve the invention's goal" by "allow[ing] the broadcast to go on substantially in real time without the use of special-purpose hardware." Opp. 17 (quoting '473 pat. at 2:17-21). The point is that, like in Defendants' many cited cases, the claims' result-oriented language fails to explain *how* to achieve that goal.

Finally, BSD suggests that its claims are not abstract because they provide a "novel method of dividing media streams into slices and encoding them into indexed files not found in the prior art." *Id.* at 20. As described, the claims do not recite any particular method of slicing the data or encoding it as indexed files. Moreover, to the extent BSD's argument relies on the purported novelty of these unclaimed features, the law is clear that novelty and eligibility are distinct inquiries. *E.g.*, *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013); *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021).

**B. BSD cannot show that the claims recite a transformative inventive concept**

There is nothing inventive about BSD's abstract claims to transform them into patent-eligible subject matter. As explained in Defendants' Motion, the claims recite standard computer components, including a "transmitting computer," "client computers," a "network," and a "server" for "providing . . . a data stream having a given data rate," which perform their typical functions of storing, transmitting, and displaying data. In fact, BSD agrees that its claimed method is performed using only generic components. Opp. 23.

The remaining claim limitations, namely, "dividing the stream into a sequence of slices," encoding the slices in files, and "uploading" the files "such that . . . client computers can download" the data "generally" at the "data rate," are nothing more than the abstract idea of real-time data transmission. The abstract idea itself cannot be an inventive concept. *Hawk Tech.*, 60 F.4th at 1358; *see Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). BSD tries to show otherwise by stating that none of these claim limitations use the term "real-time" without explaining why that matters, and then reciting the "series of steps" that result in real-time transmission. Opp. 22-23. But that is exactly Defendants' point: the claims recite nothing more than the steps of real-time data transmission.

BSD argues that its claims have a transformative inventive concept because they are "tied to concrete structures" and "present no preemption concerns." *Id.* at 21. Its reliance on *Huawei* for those propositions is misplaced. There, the claims were directed to "a specific improvement in cellular communication," namely, a particular application of a predefined set of numbers derived from a mathematical equation that "enable[d] a mobile device to more efficiently synchronize with a base station." *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 3:16-cv-02787-WHO, 2016 WL 6834614, at *6-7 (N.D. Cal. Nov. 21, 2016). The equation in question was only used to derive part of the claimed method and "had no significance when removed from the context of mobile devices connecting to a base station within a cell," and thus the claims were specific enough to constitute a non-abstract technological improvement. *Id.* at *8-9. The *Huawei* court further recognized that "a tie to a concrete structure, even where it is integral to the claimed invention, *is not enough* to conclude the claim covers patentable subject matter." *Id.* at *9 (emphasis added); *cf. In re TLI*, 823

F.3d at 611-12 (claims were not patent-eligible despite "requir[ing] concrete, tangible components"). "Rather, it is the method as a whole" that determines eligibility. *Id.* Here, BSD's claims are not tied to any particular structures. They use only generic components to accomplish the abstract idea of real-time data transmission, as described. But even if the claims were somehow tied to a concrete structure, BSD's claimed method as a whole lacks an inventive concept. As described, the generic components are merely a tool for performing the abstract idea of real-time data transmission. Further, BSD's lack-of-preemption argument is not helpful. It is well-settled that "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

BSD attempts to bolster its inventive-concept argument by noting that the claims permit real-time broadcasting without expensive equipment. Opp. 22-23. BSD points to the specification's discussion of inexpensive hardware but does not even attempt to show how that feature is incorporated into the claims. Nor could it; the claims are not limited to any particular hardware, and especially not to only inexpensive hardware. Moreover, the claims admittedly use only generic equipment. Accordingly, there is no inventive concept for BSD to latch onto.

BSD's repeated focus on the "contrarian" use of HTTP is likewise inapposite. *Id.* at 22-23. As explained, even accepting that allegation as true, it is irrelevant whether the particular use of HTTP described in the complaint and specification was unconventional because it is *not claimed*. Again, BSD does not even attempt to show where the use of the HTTP protocol appears in the claims, only stating that the claimed method "allowed for" transmission via HTTP. *Id.* at 22. Thus, BSD's reliance on *Cellspin* is misplaced. *Id.* at 23. In *Cellspin*, the patentee alleged that several aspects of its claimed inventions were unconventional. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316-17 (Fed. Cir. 2019). Critically, the Federal Circuit noted that these allegations plausibly provided an inventive step "[a]s long as what makes the claims inventive *is recited by the claims*." *Id.* at 1317 (emphasis added). Here, by contrast, BSD's claims do not require *any* use of HTTP. Further, as explained in Defendants' Motion, BSD's complaint does not show how the claims purportedly achieved the alleged inventive concept of using the HTTP protocol, noting only that it was accomplished "using technologies known at the time." Mot. at 16-17; Compl. ¶ 24. Indeed, the

complaint confirms that use of HTTP was known and "had many benefits" that allowed for the "inexpensive servers" and "scalability" BSD now claims as inventive. Compl. ¶¶ 23-24.

Finally, BSD makes a conclusory argument that the claimed combination of elements is inventive. Opp. 23-24. But BSD just lists claim limitations without explaining why the combination is enough to transform the abstract idea into patent-eligible subject matter. *Id.* at 24. There is nothing unique about collecting, packaging, and transmitting data in the claimed order. None of the dependent claims makes the combination of steps inventive, either. For example, claims 11 and 12 add encoding multiple quality levels and an analysis of available bandwidth exactly where those steps would logically occur in a transmission sequence: to the encoding and downloading steps, respectively. BSD's argument merely highlights the abstract idea of real-time data transmission proceeding in typical order. BSD even asserts—without any support—that there is an open factual question about a "lack of novelty" in the combination of elements, *id.* at 24, but, again, patent eligibility is a separate question from novelty. *E.g.*, *Ass'n for Molecular Pathology*, 569 U.S. at 591; *cxLoyalty*, 986 F.3d at 1378.

Accordingly, BSD's reliance on *CosmoKey* is misplaced. In *CosmoKey*, the Federal Circuit focused on the fact that the patentee's "last four claim steps" were not "conventional." *CosmoKey Sols. GMBH & Co. KG, v. Duo Sec. LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021). The claims provided specific, detailed instructions for executing low-complexity two-factor user authentication, which was the key inventive concept saving the claims from ineligibility. *Id.* That is, "the *claimed steps* … yield[ed] certain advantages over the" prior art described in the specification. *Id.* (emphasis added). Here, the specification admits that the existing HTTP protocol already supported the type of transmission described in the '473 patent. '473 pat. at 2:26-28. And again, any advantage of using HTTP *is not claimed*. Instead, the claims recite the abstract concept of real-time data transmission at a high level using only generic components. Thus, there is no combination of these claim steps that is inventive enough to save BSD's claims.

**III. JUDGEMENT ON THE PLEADINGS IS WARRANTED**

BSD makes a conclusory argument that it should be granted leave to amend only because courts "freely grant" such leave under Federal Rule of Civil Procedure 15(a). Opp. 25. But BSD

does not explain why it meets even that generous standard, what additional allegations it could add, or how any such allegations would change the result. Further, BSD's opposition raises no claim-construction issues, which confirms that the Court's resolution of the two disputed claim terms will not impact its patent-eligibility analysis. Finally, BSD was already granted leave to amend its complaint (Dkt. 51 at 12) and chose not to; it should not be given yet another opportunity. Judgment for Defendants is the correct result here.

**IV. CONCLUSION**

For the foregoing reasons, and the reasons stated in Defendants' Motion, the Court should grant Defendants' motion for judgment on the pleadings and enter judgment in Defendants' favor.

DATED: December 22, 2023

By: */s/ Nathan B. Sabri*
Nathan B. Sabri
PERKINS COIE LLP

*Counsel for Defendants*
AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC.