1  STEFANI E. SHANBERG (Bar No. 206717)
   sshanberg@perkinscoie.com
2  NATHAN B. SABRI (Bar No. 252216)
   nsabri@perkinscoie.com
3  ROBIN L. BREWER (Bar No. 253686)
   rbrewer@perkinscoie.com
4  MATHIEU A SWIDERSKI (Bar No. 330333)
   mathieuswiderski@perkinscoie.com
5  KARL M. JOHNSTON (Bar No. 327446)
   kjohnston@perkinscoie.com
6  PERKINS COIE LLP
   505 Howard Street, Suite 1000
7  San Francisco, CA 94105
   Telephone:    (415) 344-7000
8  Facsimile:    (415) 344-7050

9  Attorneys for Defendants
   AMAZON.COM, INC.,
10 AMAZON WEB SERVICES, INC., AND
   TWITCH INTERACTIVE, INC.

11

12              IN THE UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15

16  BSD CROWN, LTD.                    Case No. 3:23-cv-00057-WHO

17            Plaintiff,               **DEFENDANTS' MOTION TO STAY
                                       PENDING *EX PARTE*
18       v.                            REEXAMINATION REJECTING
                                       ASSERTED CLAIMS**
19  AMAZON.COM, INC.,
    AMAZON WEB SERVICES, INC.,         Date:      April 3, 2024
20  AND TWITCH INTERACTIVE, INC.       Time:      2:00 p.m.
                                       Location:  Courtroom 2, 7th Floor
21            Defendants.              Judge:     Hon. William H. Orrick

22

23

24

25

26

27

28

1       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on April 3, 2024, or as soon thereafter as this matter can be

3   heard before the Honorable Judge William Orrick in Courtroom 2, Seventh Floor, United States

4   District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate

5   Avenue, San Francisco, California 94102, Amazon.com, Inc. ("Amazon"), Amazon Web Services,

6   Inc. ("AWS"), and Twitch Interactive, Inc. ("Twitch") (collectively, "Defendants") will and

7   hereby do move for a stay pending completion of an *ex parte* reexamination rejecting claims

8   asserted in this case. Defendants' motion is based on this notice of motion, the accompanying

9   memorandum of points and authorities, the proposed order submitted herewith, all exhibits and

10   other papers on file in this action, such other evidence and argument as may be presented at or

11   before the hearing on this motion, and all matters of which the Court may take judicial notice.

12   Defendants reached out on February 21, 2024, to meet and confer with plaintiff BSD Crown, Ltd.

13   regarding this motion and did not receive a response.

14

15   Dated: February 23, 2024         PERKINS COIE LLP

16             By: */s/ Robin L. Brewer*

17                Robin L. Brewer
                  PERKINS COIE LLP
18
                  *Counsel for Defendants*
19                AMAZON.COM, INC.,
                  AMAZON WEB SERVICES, INC., AND
20                TWITCH INTERACTIVE, INC.

21

22

23

24

25

26

27

28

1    **I.      INTRODUCTION**

2          This case should be stayed pending the outcome of an *ex parte* reexamination of the sole

3    asserted patent. On February 12, 2024, the PTO issued a non-final office action rejecting claims 1–

4    2, 13, 21, 21, 23–25, 36–38, and 41 of U.S. Patent No. 6,389,473. *See* Declaration of Robin L.

5    Brewer, Ex. 1. If the office action becomes final, half of the claims asserted in this case—including

6    the sole independent claim—will be invalidated.

7          The present circumstances meet every factor warranting a stay.[1] *First*, this case is still in an

8    early stage. No dates beyond *Markman*—including trial—have been set, no depositions have been

9    taken, and expert discovery has not begun. *Second*, the likely invalidation of asserted claims 1, 2,

10   13, 21, 23, and 24 would simplify and streamline the issues in this case. Without a stay, the Court

11   and the parties will be forced to engage in the futile exercise of litigating invalid patent claims.

12   There is no need to waste Court or party time and resources in this manner. *Third*, BSD is a non-

13   practicing entity primarily "involved in the import, export, and sale of foods," (Compl. ¶ 9 n.3),

14   and it waited nearly four years after the patent-at-issue expired to bring this case. Because the patent

15   is already long expired, BSD will face no undue prejudice or tactical disadvantage from a stay for

16   the patent office to make substantive determinations regarding the validity of asserted claims.

17   **II.     LEGAL STANDARDS**

18         Courts in this District consider three factors in deciding whether a case should be stayed

19   pending post-grant proceedings at the patent office: "(1) whether discovery is complete and whether

20   a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case;

21   and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the

22   nonmoving party." *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal.

23   2014) (citations omitted). "These factors are general considerations that are helpful in determining

24   whether to order a stay, but ultimately the court must decide stay requests on a case-by-case basis."

25   *Palo Alto Networks, Inc. v. Packet Intel. LLC*, No. 19-CV-02471-WHO, 2020 WL 5760475, at *1

26   (N.D. Cal. Sept. 28, 2020) (citation and quotation marks omitted). "Congress intended to place 'a

27   ――――――――――――――――――

28   [1] Defendants are not seeking to stay or move the claim construction hearing currently scheduled for
     March 4, 2024.

very heavy thumb on the scale in favor of a stay being granted'" once the patent office institutes review. *TC Tech. LLC v. Sprint Corp.*, No. 16-cv-00153, 2021 WL 4521045, at *3 (D. Del. Oct. 4, 2021) (Bryson, J., sitting by designation) (quoting 157 Cong. Rec. S1363, 2011). The reasoning in the legislative history of the AIA that Congress intended "for district courts to be liberal in granting stays" pending post-grant review applies equally here.

## III.    ARGUMENT

### A.    The Stage of the Litigation Favors a Stay

"The earlier the stage of litigation, the more favored the stay." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-CV-04738-WHO, 2018 WL 6574188, at *3 (N.D. Cal. Dec. 12, 2018). Courts in this district routinely grant motions to stay where the litigation has not progressed beyond fact discovery and where, as here, no trial date has been set. *See, e.g., id.* (granting stay when claim construction was complete and "some substantial discovery" had occurred, but "several costlier stages of pretrial preparation remain, not to mention the trial itself"); *LBT IP II LLC v. Uber Techs. Inc.*, 22-cv-03985-WHO, 2023 WL 322894 (N.D. Cal. Jan. 19, 2023) (granting stay where "discovery [was] not yet complete, and no case schedule (including a trial date) has been set beyond claim construction."); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 13-CV-01356-EJD, 2014 WL 116340, at *3-4 (N.D. Cal. Jan. 13, 2014) (granting stay when claim construction had occurred but fact discovery remained open); *Palo Alto Networks*, 2020 WL 5760475 (granting stay pending IPR where fact discovery was ongoing, but expert discovery had not begun).

This case is at an early stage. Document discovery is still on-going, no depositions have been noticed or taken, expert discovery has not commenced, and no dates beyond *Markman* have been set. *See Contour IP Holding.*, 2018 WL 6574188, at *3 (granting stay when "no expert discovery has begun, no party depositions have been taken, and expert reports have not been served"). Staying the case would allow the parties to avoid the considerable time and expense of engaging in expert discovery, preparation of final contentions, and motions for summary judgment—often the most expensive and resource-intensive stages of litigation—for claims that are likely to be invalidated. This factor, therefore, strongly favors a stay.

**B.      A Stay Will Simplify the Issues before the Court**

A stay is favored under the second factor "when the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *Palo Alto Networks*, 2020 WL 5760475, at *2. This is true even where not all patents or claims at issue in the case are challenged at the patent office. As this Court has observed, "[t]he standard is whether the PTAB's decision could *simplify* the issues in this matter, not whether they would *eliminate* the issues." *Id.* (emphasis added). Where the validity of asserted claims in the litigation is being determined by the patent office, "[t]here is no real dispute that the outcome of the [patent office proceedings] would simplify the issues in this case." *Id.* It is no surprise that courts in this District routinely stay actions where not every asserted patent was subject to the patent office proceedings. *Id.*, at *1 (granting stay in its entirety when four of five patents asserted were subject to IPR proceedings); *Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK, 2018 WL 1609630, at *2 (N.D. Cal. Apr. 3, 2018) (granting stay in its entirety where two of three patents-in-suit were subject to IPR proceedings); *Netflix, Inc. v. CA, Inc.*, No. 21-CV-03649-EMC, 2022 WL 1144631, at *1 (N.D. Cal. Mar. 30, 2022) (granting stay in its entirety where four of five asserted patents were subject to IPR proceedings, noting that efficiencies of a stay are not negated even if "some or even all claims may survive IPR and/or that IPR will not address all invalidity issues").

The outcome of the reexamination is likely to significantly impact both the invalidity and infringement issues this case.  Invalidation of claims is highly likely in this particular case because the patent is already expired and cannot be amended to overcome a rejection. Claims are either invalidated or amended in roughly 80% of instituted *ex parte* reexaminations. *See Ex Parte Reexamination Filing Data*, available at https://www.uspto.gov/sites/default/files/ documents/ex_parte_historical_stats_.pdf (last accessed February 16, 2023). Because the '473 patent expired, BSD cannot overcome its rejection by amending its claims. *See* 37 C.F.R. § 1.530(j). Because this option is unavailable, invalidation is highly likely.

The issues in this case also will be simplified because the sole independent claims has been rejected. The invalidation of the sole independent claim will significantly impact both infringement

and invalidity. Even if dependent claims remain at issue, the rejection of the corresponding independent claim will assist the Court in determining validity of those claims. Moreover, should the independent claim remain rejected, the calculation of damages would be fundamentally altered. Among other factors, the *Georgia-Pacific* analysis looks to the "utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results." *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). If the patent office concludes that the invention embodied in Claim 1 existed in the prior art, the value of BSD's invention would be tied solely to the incremental value of its remaining dependent claims.

### C.     BSD Will Suffer No Prejudice or Tactical Disadvantage

The sole asserted patent expired in March 2019. Despite this, BSD chose to wait until January 2023—nearly four years—to bring this case. Under these circumstances, BSD cannot credibly argue that it would be prejudiced by a temporary stay while the *ex parte* reexamination concludes. *See Neodron, Ltd. v. Lenovo Group, Ltd.*, No. 19-cv-5644-SI, 2020 WL 5074308, at *2 (N.D. Cal. Aug 27, 2020) ("Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay.").

When deciding whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party, courts in this District apply "a four sub-factor analysis considering: (i) the timing of the reexamination request; (ii) the timing of the request for stay; (iii) the status of reexamination proceedings; and (iv) the relationship of the parties." *Contour IP*, 2018 WL 6574188, at *6 (internal quotations omitted).

The first three sub-factors—the timing the *ex parte* reexamination request, Defendants' request for stay and the status of proceedings—all favor a stay. A third-party, Unified Patents LLC, requested the *ex parte* reexamination on September 1, 2023, and it was instituted on October 5, 2023. *See* Exs. 2 and 3. Defendants now move to stay just over a week after the PTAB issued its non-final rejection of the claims on February 12, 2024. *See* Ex. 1. The status of the proceedings also favors stay: the *ex parte* reexamination has been instituted and claims asserted in this case have been rejected. *See id.* From filing date to a final certificate issue date, the average pendency of an *ex parte* reexamination is 25.2 months. *See Ex Parte Reexamination Filing Data*, available at

https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf (last accessed February 16, 2023).

Finally, as a non-practicing entity, the only prejudice BSD could suffer is a delay in the disposition of this case. But courts have consistently found that that is not sufficient to deny a stay of proceedings. *See Palo Alto Networks*, 2020 WL 5760475, at *2 ("The prejudice that Packet articulates largely stems from prejudice inherent in a stay: the amount of time that the IPR will take. This is not sufficient to satisfy its burden of showing specific prejudice."); *see also Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-00494-EJD, 2011 WL 4635512, at *3 (N.D. Cal. Oct. 5, 2021) ("Courts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement."). Moreover, here, any potential delay associated with the patent office proceeding will be minimal in comparison to BSD's own delay in bringing this case. BSD waited four years after expiration of the '473 patent and eight years after the dismissal of its previous lawsuit on the '473 patent, despite alleging in its infringement contentions that both of the accused technologies (Twitch and AWS Elemental) were capable of producing infringing streams beginning in 2015. BSD is also capable of minimizing the delay caused by a stay of litigation in favor of *ex parte* proceedings by responding to office actions promptly. *See TC Tech*, 2021 WL 8083373, at *2 (noting that plaintiff can minimize prejudice caused by a stay because "[a] decision by the PTO could of course happen even earlier … [if plaintiff] expedite[d] the proceedings itself by filing quickly").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Pending the Outcome of *Ex Parte* Reexamination should be granted.

Dated: February 23, 2024                    PERKINS COIE LLP

By: */s/ Robin L. Brewer*
    Robin L. Brewer

    *Counsel for Defendants*
    AMAZON.COM, INC.,
    AMAZON WEB SERVICES, INC., AND
    TWITCH INTERACTIVE, INC.