# VILLEGAS & CEFO LLP

1350 Avenue of the Americas, Floor 2
New York, NY 10019

Francisco A. Villegas
646.844.1071
fvillegas@villegascefo.com

March 5, 2024

VIA ECF
Honorable William H. Orrick, U.S.D.J.
United States District Court
Northern District of California

Re: *BSD v. Amazon.com, Inc., et al.* Case No. 3:23-cv-00057-WHO (N.D. Cal.)

Honorable Judge Orrick:

The parties submit this joint letter concerning discovery disputes over similar RFPs directed to Defendants Twitch Interactive, Inc. ("Twitch"), Amazon.com, Inc. ("Amazon"), and Amazon Web Services, Inc. ("AWS").[1] The parties have extensively conferred in satisfaction of Your Honor's Standing Order.

## BSD's Position

### I.  BSD RFP Nos. 8, 10-11, and 43-44

These RFPs seek licenses and agreements for the Accused Products (8, 10); agreements, marketing documents, and negotiation materials with Defendants' streaming partners and content providers (43, 44); and agreements concerning the acquisition of streaming businesses (11). First, agreements relating to the Accused Products (8, 10) and with content providers using those products (43, 44) are relevant to damages and infringement. For instance, AWS provides its infringing real-time broadcasting services to content providers, such as the NFL, Viacom, PAC-12 Conference, Notre Dame, 2018 Olympics, e-sports content creators, and 2018 World Cup. Although Defendants admit responsive documents are within their possession, custody, or control, they refuse production based on relevancy. But as BSD explained during many hours of meet-and-confers, AWS's agreements with content providers, as well as marketing and negotiation materials, are likely to provide essential damages information, including: infringing income, payment rates and terms, key usage metrics that correlate to such income (e.g., viewers, hours, and data volume), and evidence that the infringing technology drove sales. These requested materials are also relevant to infringement because they may show broadcast parameters and requirements, allowing BSD to properly segregate infringing streams from arguably non-infringing activities. Defendants also claim these requests are unduly burdensome but have failed to provide evidence of burden for any of the RFPs discussed in this letter. *See Gilbert v. Citigroup, Inc.*, 2009 WL 10692463, at *5 (N.D. Cal. Apr. 2, 2009) ("Where [a discovery request] is objected to as unduly burdensome, the objecting party should submit affidavits or other evidence showing the nature of the burden."); *see also Herbalife Int'l of Am., Inc. v. Kamel*, 2023 WL 6193006, at *4 (C.D. Cal. July 20, 2023) (requiring proof of undue burden "by submitting affidavits or other evidence").

Similarly, Twitch refuses to produce its agreements pertaining to the Accused Products (8, 10) and with streaming partners (43, 44). Twitch claims that because most of its streamer relationships (which number in the thousands) are governed by standard terms and conditions, that

---

[1] The disputed RFPs are AWS Nos. 8, 10, 13, 15, 55-56, and 115, Amazon Nos. 8, 10-11, 14, 16, 44-45, and 104, and Twitch Nos. 8, 10-11, 14, 16, 43–44, and 104. All requests are substantially the same, except that No. 11 applies only to Amazon.com and Twitch. BSD's references to RFPs in this letter correspond to the numbering in the Twitch RFPs. BSD's requests and Defendants' respective responses and objections thereto are attached as Exs. 1-18.

it need only (but still has not) provide standard payment rate terms—not actual agreements. Twitch's counsel, however, confirmed that it is also withholding bespoke agreements with certain large streaming partners. As a compromise, BSD suggested that Twitch produce a subset of standard agreement types with an indication of streamers to whom they pertain and full agreements with major streamers possessing unique terms. Twitch rejected this proposal, claiming undue burden—again without any support.

Finally, Amazon and Twitch have refused to provide agreements concerning their acquisitions of streaming businesses (11). For instance, Amazon acquired Twitch in September 2014. By that time, Twitch had transitioned from an older streaming technology to HLS—the streaming protocol at issue here. The acquisition agreements will help explain how Amazon valued real-time broadcasting—a key issue for BSD's damages claims.

## II.    BSD RFP Nos. 14, 16, and 104

These RFPs seek actual and projected financial information, such as revenue, income, costs, profits, and losses for the Accused Products (14), as well as actual and projected user analytics (e.g., total concurrent streamers) related to their usage (16, 104). BSD's damages expert requires financial records to base his opinion and needs usage information to show the drivers of demand and the importance of the patented technology in meeting Defendants' increasing bandwidth requirements. To date, Defendants have not produced **any** internal financial statements or projections. Defendants' stonewalling has already prejudiced BSD in its preparation of damages contentions and is forestalling potential settlement negotiations.

Defendants refuse to produce these necessary financial documents for two reasons. First, Defendants assert that their litigation-made financial spreadsheets (i.e., single page Excel summaries) obviate the need for actual company financial documents. Such a position is unacceptable because Defendants' manufactured spreadsheets are no substitute for actual business records and data. Indeed, BSD needs the requested documents to test the veracity of Defendants' litigation-made work product.[2] Courts frequently permit such discovery. *See Hill v. Asset Acceptance, LLC*, 2014 WL 3014945, at *13 n.8 (S.D. Cal. July 3, 2014) ("'[P]laintiff need not accept defendant's interpretation of its financial data through representations in an affidavit, but is entitled herself to examine the data underlying defendant's statement of net worth.'"); *see also Desire, LLC v. Exist, Inc.*, 2013 WL 12133640, at *2 (C.D. Cal. Dec. 3, 2013) (ordering defendant to produce "the underlying documentation for [financial] summaries"); *Beach Mart, Inc. v. L & L Wings, Inc.*, 2012 WL 4925724, at *2 (E.D.N.C. Oct. 16, 2012) ("QuickBooks records" are relevant and a party "should not have to rely on [a] one-page summary of financial information, created in connection with [] litigation, without being able to check behind the summary and confirm the accuracy of the underlying data"). Second, Defendants assert that "the book of wisdom demands consideration of actual revenues rather than projections." They are wrong. Despite Defendants' protestations, *ex ante* projections created around the 2015 hypothetical negotiation are highly relevant. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (The "hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation…."). Indeed, the "Federal Circuit has upheld a hypothetical royalty based on a contemporaneously created business plan projecting revenue." *Oracle Am., Inc. v. Google Inc.*, 847 F. Supp. 2d 1178, 1184 (N.D. Cal. 2012); *see also Interactive Pictures Corp. v. Infinite*

---

[2] The veracity of these litigation-focused Excel spreadsheets is suspect, as they lack the ESI metadata, such as the author, date created, and custodian, as required by the ESI Order. ECF No. 63, at ¶¶ 6(a)(iii), Exhibit A at 10.

*Pictures, Inc.*, 274 F.3d 1371, 1384–85 (Fed. Cir. 2001) (allowing use of pre-infringement "projections for future sales"); *SanDisk Corp. v. Round Rock Rsch. LLC*, 2014 WL 691565, at *2 (N.D. Cal. Feb. 21, 2014) (allowing use of "infringer's profit projections for infringing sales"). Defendants ignore that the book of wisdom is an exception to the *ex ante* rule. While "'in certain circumstances,' the book of wisdom allows the use of post-infringement evidence … it cannot be used to overturn the fundamental precept that requires an *ex ante* hypothetical negotiation … at a time before the infringement began." *Syneron Med. Ltd. v. Invasix, Inc.*, 2018 WL 4696969, at *9 (C.D. Cal. Aug. 27, 2018). It is incorrect to replace "the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014).

### III. The Relevant Time Period For All Discovery.

Finally, Defendants seek to limit the relevant discovery period to January 5, 2017–March 24, 2019, which equates the discovery period with the damages period in this case. Discovery, however, is not limited to the damages period. For instance, "the six-year limitation on recovery of past damages under 35 U.S.C. § 286 does not preclude the hypothetical negotiation date from taking place on the date infringement began, even if damages cannot be collected until some time later." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012). Here, BSD currently understands that infringement began (and therefore the hypothetical negotiation would have taken place) sometime in 2015. BSD, however, should be entitled to pre-2015 documents so its expert can compare financial figures from before and after infringement to assess the impact of the patented technology. Moreover, Amazon's acquisition of Twitch in 2014 is highly relevant, as is Twitch's transition of its networks to the relevant HLS protocol sometime in 2012 or 2013. Documents relating to this transition are critical proof of the importance of HTTP real-time broadcasting. Thus, BSD proposes the following discovery period: June 20, 2012–March 24, 2019 for Twitch, and March 3, 2014–March 24, 2019 for Amazon.com and AWS.

**Defendants' Position**

This case relates to a single patent that expired almost five years ago. Further, the USPTO recently rejected many of the asserted claims—including the sole independent claim at issue. *See* Dkt. 100. BSD has failed to demonstrate the relevance of the discovery that it seeks in this discovery letter or that any need is proportional to the burden.

While the parties met and conferred for many hours, the discussions covered a variety of issues for both sides, including BSD's deficient damages contentions in which BSD failed to articulate a revenue-based damages theory despite Defendants' production of financial information related to the accused products. BSD was frequently unable to provide additional detail regarding the relevance of its requests, including how it intended to rely on the information it believed may be in the requested documents, or even to which of its damages theories the requested documents were relevant. BSD appears to believe damages gives it carte blanche to get anything remotely touching "financial" information even though many of its requests are untethered to any theory presented in its deficient damages contentions. This is not sufficient to justify BSD's fishing expedition. *See Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072, 2019 WL 1168536, at *1 (N.D. Cal. Mar. 13, 2019) (commenting that damages contentions help in analyzing relevance and proportionality and denying motion to compel where theory to which motion related was not disclosed in damages contentions).

**I.     BSD RFP Nos. 8, 10–11, and 43–44**

*Agreements*: Defendants have fully complied with the Patent Local Rules and produced relevant licenses. Despite including in this letter RFP No. 8, directed to licenses since March 24, 1998, BSD makes no other reference to licenses or claim that Defendants' productions of licenses are deficient, nor was this addressed during the many meet and confers. This issue is not ripe.

Regarding BSD's requests for agreements between AWS and its customers, and Twitch and content creators, RFP No. 10 seeks all agreements over a 25 year period "that describe the financial terms between Twitch and any third-party concerning the Accused Products;" RFP No. 43 seeks all agreements with any "live stream partners and content providers prior to March 24, 2019;" and RFP No. 44 seeks "[a]ll marketing and negotiation materials made in response to" such agreements. BSD's supposed justification for the relevance of these broad requests is speculation untethered to reality, particularly as both AWS and Twitch have produced relevant revenue. BSD includes no discussion as to Amazon, and Amazon is not implicated on these RFPs.

As to Twitch, BSD misunderstands the nature of the Twitch service and the agreements it is requesting. Twitch is a free service. When users sign-up for Twitch, they get their own "channel" where they can create, stream, and share their video content. Users whose channels reach certain milestones are invited to become monetizing streamers, meaning they get a share of the revenue generated from subscriptions and other methods of monetization of the content on their channel. The agreements with content creators are not license agreements for the accused technology or the Twitch service, but rather licenses to creators' content. Although these agreements are completely irrelevant to *any* damages theory articulated by BSD, in a good faith effort to resolve this dispute, Twitch provided to BSD both standard and premium versions of the monetized streamer agreements from the relevant time period. Despite this good faith effort, BSD demands that Twitch conduct a burdensome search for any additional "bespoke" agreements that might exist. Twitch has explained, to the extent that there were any "bespoke" agreements entered during the relevant time period, Twitch does not have any automated way of identifying those agreements. Twitch would have to manually review more than 30,000 agreements with U.S. monetized streamers to identify any that had additional or different terms from the standard or premium contracts. BSD fails to articulate what additional relevant information might be obtained from any such agreements, and BSD has not made any showing that the need for any such agreements outweighs the burden that would be imposed if Twitch were required to manually review these agreements.

As to AWS, BSD identifies categories of information that are unlikely to be included in the agreements or that, even if included, have no apparent relevance. BSD does not explain how it intends to correlate whatever financial terms are in these customer agreements to either the produced revenue or its damages theories. Similarly, the relevance of payment rates and terms or supposedly key usage metrics to damages is not clear as BSD makes no reference to these in its damages contentions and has failed to explain their relevance during meet and confers beyond a general blanket statement. BSD further provides no explanation as to why such agreements may show broadcast parameters and requirements. This is purely speculative, particularly since the customer ultimately sets the broadcast parameters for the accused products. The burden is apparent from the request. BSD seeks potentially hundreds of agreements, including amendments, in addition to marketing documents made in response to the agreement and negotiation materials, which is undefined. Given the unlikely relevance, the need does not outweigh the burden.

*Acquisition Documents*: Documents related to the acquisition of Twitch are not relevant.

4

Amazon's acquisition of Twitch occurred in 2014, which is *before* BSD contends that the version of HLS that it alleges infringes the asserted patent was in use (at Twitch or anywhere else). As such, any financial evaluation at that time is irrelevant. BSD should not be allowed to obtain highly confidential acquisition information that, based on its own allegations and admissions, predates and has no connection to the value of the HLS technology at issue in the case.

## II.     BSD RFP Nos. 14, 16, and 104

*Projections*: Defendants produced *actual* financial information for the damages period which ended more than five years ago and lasted for just over two years from January 2017 and March 2019. It is well recognized, including in the cases cited by BSD, that the book of wisdom may be used for actual sales. BSD's request for *projected* financial information generated 12 years ago is not proportional to the needs of the case given the accessibility of the actual financial information.

BSD's characterization of the financial information produced by Defendants as "litigation-made" and "manufactured" is unsupported. Defendants maintain financial information in financial management systems, and they produced outputs from those systems as they would in the ordinary course of business. If BSD wants more information on how these spreadsheets were created, it is free to take a deposition. That it has not done so is not a basis to challenge their veracity.

BSD cites to irrelevant cases that do not support its request. The court in *Desire v. Exist* ordered the production of documents underlying a *FRE 1006 summary* that plaintiff created, not financial information stored in the ordinary course of business. *Desire*, 2013 WL 12133640, at *2. In *Hill v. Asset Acceptance*, the court denied a request seeking more detailed financial information in an class action. *Hill*, 2014 WL 3014945, at *13 n.8. And in *Beach Mart v. Wings*, the court ordered further production from QuickBooks records where, unlike here, the information produced did not already include sales revenue, profits, and costs. *Beach Mart*, 2012 WL 4925724, at *2.

*User Analytics*: Defendants do not understand the parties to be at an impasse as it relates to user analytics. Defendants have asked BSD to identify the specific user analytics it seeks, and Twitch has already provided feedback to BSD for certain analytics identified by BSD. BSD does not provide any analysis of these RFPs in this letter.

## III.    Relevant Time Period for All Discovery

BSD misstates Defendants' position on the relevant time period for discovery. Defendants have not refused to produce documents on the basis that they were created outside the damages period. Defendants have produced documents from beyond this time period and will continue to do so as they identify relevant, non-privileged documents. As Defendants have made clear, however, the damages period informs the time period relevant to the accused functionality, *i.e.*, only the specific operation of the accused products between January 2017 and March 2019 is relevant. To the extent BSD seeks documents beyond this time—particularly as early as 2012, before it even contends HLS infringed—the relevance and proportionality necessarily wanes.

BSD points to only two categories of documents it contends Defendants' have withheld information on this basis. But each of these categories are objectionable for other reasons. As to documents related to the acquisition of Twitch, this is not relevant or proportional for the reasons stated above. BSD also points to documents related to Twitch's transition from RTMP to HLS in the 2012–2013 time period, but Twitch has already produced documents related to this transition and has committed to searching further for such documents and producing them if they exist.

Sincerely,

/Francisco Villegas/

Francisco A. Villegas

Francisco A. Villegas (Bar No. 206997)
Mark W. Halderman (*pro hac vice*)
Damir Cefo (*pro hac vice*)
VILLEGAS & CEFO LLP
1350 Avenue of the Americas, Floor 2
New York, NY 10019
Telephone: (646) 844-1071
fvillegas@villegascefo.com
mhalderman@villegascefo.com (*pro hac vice*)
dcefo@villegascefo.com (*pro hac vice*)

Kyle G. Gottuso (*pro hac vice*)
Charlie M. Jonas (*pro hac vice*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
kgottuso@atllp.com
cjonas@atllp.com

*Attorneys for Plaintiff*
*BSD Crown, Ltd.*

## CERTIFICATE OF COMPLIANCE

I certify that BSD met and conferred with Defendants via videoconference on December 8, 18, and 22, 2023, as well as on February 9 and March 4, 2024. These meet and confers included discussions pertaining to the disputed RFPs at issue in this letter.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

March 5, 2024                                    **VILLEGAS & CEFO LLP**

/Francisco Villegas/

Francisco A. Villegas