Francisco A. Villegas (Bar No. 206997)
Mark W. Halderman (Admitted *Pro Hac Vice*)
Damir Cefo (Admitted *Pro Hac Vice*)
fvillegas@villegascefo.com
mhalderman@villegascefo.com
dcefo@villegascefo.com
VILLEGAS & CEFO LLP
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Telephone:      (646) 844-1071

Kyle G. Gottuso (Admitted *Pro Hac Vice*)
Charlie M. Jonas (Admitted *Pro Hac Vice*)
kgottuso@atllp.com
cjonas@atllp.com
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd, Suite 1800
St. Louis, MO 63105
Telephone:      (314) 621-5070

*Attorneys for Plaintiff*
*BSD CROWN, LTD.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| BSD CROWN, LTD., | CASE NO.  3:23-cv-00057-WHO |
| Plaintiff, | **PLAINTIFF BSD CROWN, LTD.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| v. | |
| AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INTERACTIVE, INC., | Date:      April 3, 2024 |
| | Time:      2:00 p.m. |
| Defendants. | Location:  Courtroom 2, 7th Floor |
| | Judge:     Hon. William H. Orrick |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  LEGAL STANDARD.............................................................................................. 2

III.  FACTUAL AND PROCEDURAL BACKGROUND....................................................... 3

IV.  ARGUMENT .......................................................................................................... 5

   A.  FACTOR 1: THE STAGE OF THE LITIGATION WEIGHS AGAINST A STAY. .............................. 5

   B.  FACTOR 2: THE *EX PARTE* REEXAMINATION IS UNLIKELY TO SIMPLIFY THE ISSUES FOR TRIAL. ................................................................................................................... 9

   C.  DEFENDANTS' TACTICAL ATTEMPT AT DELAY WILL UNDULY PREJUDICE BSD. ............... 15

V.  CONCLUSION ........................................................................................................ 18

1

## <u>TABLE OF AUTHORITIES</u>

2

Cases

3

*Affinity Labs of Texas v. Apple Inc.*,
No. 09-04436 CW, 2010 WL 1753206, (N.D. Cal. Apr. 29, 2010)................................... 15, 16, 17

4

*Alltech, Inc. v. Cenzone Tech, Inc.*,
2007 WL 935516, (S.D. Cal. March 21, 2007) ......................................................................... 16

5

6

*Anascape, Ltd. v. Microsoft Corp.*,
475 F. Supp. 2d 612, (E.D. Tex. 2007) ..................................................................................... 17

7

8

*Athena Feminine Techs. Inc. v. Wilkes*,
No. C 10-04868 SBA, 2012 WL 1424988, (N.D. Cal. Apr. 24, 2012)...................................... 12

9

10

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10-CV-02863-EJD, 2011 WL 3267768, (N.D. Cal. July 28, 2011)................................... 14

11

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
No. SACV 10-1582 DOC, 2011 WL 4448972, (C.D. Cal. Sept. 26, 2011) ............................... 9

12

13

*Centrify Corp. v. Quest Software, Inc.*,
No. C 10-3873 CW, 2011 WL 607107, (N.D. Cal. Feb. 11, 2011) ........................................... 16

14

15

*Cf. Affinity Labs of Texas, LLC v. BMW N. Am. LLC*,
No. 9:08-CV-164, 2009 WL 8590914, (E.D. Tex. Feb. 20, 2009) ............................................ 17

16

17

*Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*,
2007 WL 1052883, (N.D. Cal. Apr. 5, 2007) ............................................................................. 9

18

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 17-CV-04738-WHO, 2018 WL 6574188, (N.D. Cal. Dec. 12, 2018) .................................. 8

19

20

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
No. C-13-4513-RMW, 2014 WL 819277, (N.D. Cal. Feb. 28, 2014) ........................................ 3

21

22

*Facebook, Inc. v. Blackberry Ltd.*,
No. 4:18-cv-05434-JSW, 2020 WL 13890661, (N.D. Cal. June 15, 2020)............................ 2, 7

23

24

*Finjan, Inc. v. FireEye, Inc.*,
No. C 13-03133 SBA, 2017 WL 1150283, (N.D. Cal. Mar. 28, 2017) ...................................... 6

25

26

*Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*,
No. C 03-1431 SBA, 2007 WL 1655625, (N.D. Cal. June 7, 2007)........................................ 16

27

28

*Int'l Test Sols, Inc. v. Mipox Int'l Corp.*,

No. 16-cv-00791-RS, 2017 WL 1316549, (N.D. Cal. Apr. 10, 2017)......................................... 2, 8

*Interwoven, Inc. v. Vertical Comp. Sys., Inc.*,
   No. C 10-04645 RS, 2012 WL 761692, (N.D. Cal. Mar. 8, 2012) ..................................... passim

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2011 WL 13153233, (N.D. Cal. Feb. 8, 2011) ..................................... 12, 17

*Largan Precision Co. Ltd. v. Fujifilm Corp.*,
   No. C 10–1318 SBA, 2011 WL 794983, (N.D. Cal. Mar.1, 2011) ............................................ 9

*LBT IP II LLC v. Uber Techs. Inc.*,
   22-cv-03985-WHO, 2023 WL 322894, (N.D. Cal. Jan. 19, 2023)........................................... 8

*Life Techs. Corp. v. Illumina, Inc.*,
   No. CIV.A.09-706-RK, 2010 WL 2348737, (D. Del. June 7, 2010) ........................................ 16

*Neodron, Ltd. v. Lenovo Grp. Ltd.*,
   No. 19-cv-5644-SI, 2020 WL 5074308 (N.D. Cal. Aug. 27, 2020) ........................................ 18

*Netflix, Inc. v. CA, Inc.*,
   No. 21-CV-03749-EMC, 2022 WL 1144631 (N.D. Cal. Mar. 30, 2022)................................. 14

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
   No. 07-6053, 2008 WL 2168917, (N.D. Cal. May 23, 2008)............................................... 12, 13

*Nken v. Holder*,
   556 U.S. 418, (2009) ........................................................................................................... 3

*Palo Alto Networks, Inc. v. Packet Intel, LLC*,
   No. 19-CV-02471-WHO, 2020 WL 5760475, (N.D. Cal. Sept. 28, 2020) .................... 8, 14, 18

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
   No. 13-CV-01356-EJD, 2014 WL 116340, (N.D. Cal. Jan. 13, 2014)....................................... 8

*PolyCom, Inc., v. Codian, Ltd.*,
   No. 2:05-cv-520, 2007 WL 7658922, (E.D. Tex. 23, 2007)...................................................... 7

*Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*,
   No. CIV. 08-309-JJF-LPS, 2008 WL 5335400, (D. Del. Dec. 19, 2008)................................ 16

*Pragmatus AV, LLC v. Facebook, Inc.*,
   No. 11-CV-00494-EJD, 2011 WL 4635512, (N.D. Cal. Oct. 5, 2021) .................................... 18

*Pro-Troll, Inc. v. Shortbus Flashers, LLC*,
   No. 16-CV-04062-VC, 2016 WL 11432003, (N.D. Cal. Dec. 23, 2016) ........................... 13, 17

- iii -

*Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*,
2014 WL 3107447, (N.D. Cal. July 3, 2014) ................................................................ 2

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638, (N.D. Cal. 2022) ........................................................................ 3

*Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*,
No. 3:09-CV-791, 2010 WL 1946262, (E.D. Va. May 10, 2010) .............................. 5

*Telemac Corp. v. Teledigital, Inc.*,
450 F. Supp. 2d 1107, (N.D. Cal. 2006) ............................................................. 3, 6, 17

*Tokuyama Corp. v. Vision Dynamics, LLC*,
No. C 08–2781 SBA, 2008 WL 4452118, (N.D. Cal. Oct.3, 2008) .......................... 15

*TPK Touch Sols., Inc v. Wintek Electro-Optics Corporation*,
No. 13-CV-02218-JST, 2013 WL 5289015, (N.D. Cal. Sept. 18, 2013) ........ 12, 13, 16

*Twilio, Inc. v. TeleSign Corp.*,
No. 16-CV-06925-LHK, 2018 WL 1609630 (N.D. Cal. Apr. 3, 2018) ...................... 14

*Ultra Prods., Inc. v. Antec, Inc.*,
No. 09-042550-RS, 2010 WL 1688538, (N.D. Cal. April 26, 2010) ....................... 7, 15

*Wordtech Sys., Inc. v. Microboards Mfg., LLC*,
No. C 09-04612 SI, 2010 WL 1641510, (N.D. Cal. Apr. 22, 2010) .......................... 16

*Yodlee, Inc. v. Ablaise Ltd.*,
No. 06-07222, 2009 WL 112857, (N.D. Cal. Jan. 16, 2009) ...................................... 9

Other Authorities

35 U.S.C. § 101 .................................................................................................... 4, 7
35 U.S.C. § 302 ........................................................................................................ 18
35 U.S.C. § 303(a) ................................................................................................... 12
35 U.S.C. § 314(a) ................................................................................................... 12
35 U.S.C. § 315(b) ................................................................................................... 14
35 U.S.C. § 315(e)(2) ............................................................................................... 13
35 USC § 316(a)(11) ................................................................................................ 16
Fed.R.Civ.P 12(b)(6) ................................................................................................. 1
Fed.R.Civ.P 12(c) ...................................................................................................... 1

## I.     INTRODUCTION

The Amazon.com, Inc. ("Amazon"), Amazon Web Services, Inc. ("AWS"), and Twitch Interactive, Inc. ("Twitch") (collectively, "Defendants") Motion to Stay (Dkt. No. 100) is another dollar-short attempt at derailing the litigation. A stay pending the outcome of the *ex parte* reexamination should be denied for three reasons.

First, this thirteen month litigation is no longer in its infancy: (1) Defendants filed a Fed. R. Civ. P 12(b)(6) motion (the Court upheld BSD's willfulness allegations against the parent defendant); (2) Defendants filed a motion to certify an interlocutory appeal (denied); (3) Defendants filed a Fed. R. Civ. P. 12(c) motion to invalidate the patent-in-suit on § 101 grounds (denied); (4) the parties fully briefed claim construction and submitted technology tutorials; (5) extensive written discovery is well underway; (6) two Defendant-noticed depositions are pending; and (7) a joint statement asking the Court to compel Defendant discovery is pending. Thus, the stage of this litigation weighs strongly against a stay.

Second, a stay will not simplify the case. The *ex parte* reexamination challenges only half of the asserted claims of U.S. Patent No. 6,389,473 (the "'473 Patent").[1] As a result, the parties will continue to litigate this case even if the PTO invalidates all reexamined claims. Indeed, because the unchallenged asserted claims depend from challenged independent claim 1, infringement, validity, and damages evidence (fact and expert) will be required for independent claim 1 regardless of the outcome. Importantly, none of the asserted dependent claims subject to reexamination (2, 13, 21, 23, and 24) present any exclusive issues that will not already be addressed for the asserted claims (8, 9, 10, 11, 12, and 14). If anything, Defendants' request for stay creates more work for this Court. Unlike an *Inter Partes* Review ("IPR"), an *ex parte* reexamination imposes no estoppel on defendants. Thus, if any claims survive the reexamination, the Defendants are free to assert the entirety of their invalidity challenges in this litigation—burdening the Court and BSD with arguments that could have potentially been simplified had Defendants filed an IPR. For strategic reasons, they did not.

---

[1] Only asserted claims 1, 2, 13, 21, 23, and 24 are subject to reexamination. The remaining asserted claims (claims 8, 9, 10, 11, 12, and 14) are unchallenged.

Finally, Defendants' Motion will prejudice BSD. The requested stay is yet another tactical maneuver designed to delay the case and prevent Plaintiff from obtaining discovery. Defendants have forced BSD to endure months of unfruitful discovery letters and conferences, culminating in a letter requesting the Court compel critical and long withheld discovery. Dkt. No. 102. Since the start of discovery, Defendants have produced a total of only 953 documents totaling 16,624 pages (most of which are publicly available) pertaining to some of the largest streaming systems on the planet.[2] At a more granular level, Amazon and Twitch have produced a mere 35 and 151 documents, respectively. This throttling of discovery is by design. Rather than request a stay when the reexamination was granted last October, Defendants waited nearly 5 months so they could file a late term §101 motion for judgment on the pleadings—attempting all avenues to dispose of the case before staying the litigation. When the §101 motion failed in February, Defendants sought a stay—seeking to capitalize on a reexamination filed by an alleged "third party."

Defendants have delayed this case long enough. Plaintiff respectfully requests the Court deny the Motion.

## II.   LEGAL STANDARD

Courts in this District "have begun to rethink" the "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination. . . ." *Facebook, Inc. v. Blackberry Ltd.*, No. 4:18-cv-05434-JSW, 2020 WL 13890661, at *3 (N.D. Cal. June 15, 2020). A court "'is under no obligation to delay its own proceedings by yielding to ongoing . . . patent reexaminations.'" *Int'l Test Sols, Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 WL 1316549, at *1 (N.D. Cal. Apr. 10, 2017) (quoting *Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014)); *see also Interwoven, Inc. v. Vertical Comp. Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at *2 (N.D. Cal. Mar. 8, 2012) ("A court is certainly not required to stay judicial resolution in light of a pending patent reexamination." (citing *Vikase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001))).

---

[2] Defendants produced 98 of the documents on March 7, 2024, after BSD filed a joint statement requesting the Court to compel discovery. And the vast majority of the Defendants' productions relate to publicly available pleadings from prior cases and alleged prior art references.

In determining whether to stay a case pending an *ex parte* reexamination, the Northern District of California considers three factors: (1) the stage of the case; (2) whether a stay will simplify the court proceeding; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006). Moreover, the party requesting the stay bears the burden to "persuade the court that a stay is appropriate." *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 WL 819277, at *2 (N.D. Cal. Feb. 28, 2014) (citing *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)).

## III.     FACTUAL AND PROCEDURAL BACKGROUND

BSD filed this action on January 5, 2023, alleging that Defendants willfully infringed the '473 Patent. Dkt. No. 1. Defendants responded by filing a motion to dismiss BSD's willful infringement allegations. Dkt. No. 32. After full briefing and oral argument, the Court granted in part and denied in part Defendants' motion on July 27, 2023—leaving BSD's willful infringement claims against Amazon intact. Dkt. No. 51. Unhappy with that result, on August 24, 2023, Amazon moved for leave to certify the Court's Order denying its Motion to Dismiss for interlocutory appeal. Dkt. No. 54. One reason in support of the appeal was "[e]liminating willfulness from this case would not only simplify discovery" and "decrease the issues for trial." *Id*. at 13. Defendants advance a similar argument here. However, what was true then[3] is also true now: whether an appeal or a reexamination, nothing will change. On October 16, 2023, the Court denied Defendants' requested detour to the appellate court. Dkt. No. 71.

The interim motion practice did not slow BSD's discovery tempo. BSD provided initial disclosures, served four sets of requests for production, issued two sets of interrogatories, and served a documentary subpoena to one of AWS's streaming partners. Defendants also served initial disclosures, document requests, interrogatories, and two non-party subpoenas *duces tecum*. Both

---

[3] *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022) ("[E]ven under the strictest of pleading standards, and *even if all its willfulness claims were struck*, [Plaintiff] would be entitled to pursue in discovery issues concerning [Defendant's] pre-suit knowledge of the specific patents-in-suit and of infringement….This supplemental observation seems necessary because this entire motion was evidently made to set up the argument that discovery into willfulness would be off limits.") (emphasis added).

parties have responded to discovery, and BSD has supplemented several of its Interrogatory responses. Discovery has been protracted. Numerous deficiency letters have been exchanged, and the parties have met and conferred on at least a half dozen occasions regarding scheduling issues, ESI, and discovery disputes. *See* Gottuso Decl. at ¶ 12-40.

All Local Patent Rule contentions have been exchanged. For example, on July 21, 2023, BSD served its Patent L.R. 3-1 Infringement Contentions of claims 1, 2, 8, 9, 10, 11, 12, 13, 14, 21, 23, and 24 (the "Asserted Claims"). Those materials contained 602 pages of detailed technical charts and an accompanying document production pursuant to Patent L.R. 3-1 and 3-2. On September 13, 2023, Defendants served their Invalidity Contentions, along with many prior art references and invalidity claim charts. The parties also exchanged Damages Contentions and Responsive Damages Contentions pursuant to Patent L.R. 3-8 and 3-9. *See* Gottuso Decl. at ¶ 5-11.

Around that time, BSD learned that Unified Patents, LLC ("Unified Patents")—a likely proxy of Defendants—filed without provocation an *ex parte* request for reexamination of the '473 Patent on September 1, 2023. Unified Patent's request was limited in scope. It challenged only half of the Asserted Claims, namely claims 1, 2, 13, 21, 23, and 24.[4] On October 5, 2023, the PTO granted the *ex parte* reexamination—which the PTO routinely grants in over 92% of cases. Exh. 1 at 5(a). While Unified Patents attacked on one front, Defendants quietly worked on other plans. In early December 2023, Defendants filed a motion for judgement on the pleadings (Dkt. No. 75), arguing that the '473 Patent was invalid under 35 U.S.C. § 101. BSD opposed, and the Court ultimately denied the § 101 motion on January 29, 2024 (Dkt. No. 89).

Despite the reexamination being granted on October 5, 2023, Defendants waited until their § 101 motion was denied—nearly 5 months—before seeking a stay of these proceedings. During the pendency of Defendants' motion for judgment on the pleadings, BSD filed its Opening Claim Construction Brief. Dkt. No. 83. On January 19, 2024, Defendants filed their Responsive Claim

---

[4] Unasserted claims 25, 36, 37, 38, and 41 were also challenged, but they are not part of this litigation.

Construction Brief. Dkt. No. 85. BSD replied on February 2, 2024. Dkt. No. 94. Then, on February 12, 2024, the PTO issued an *Ex Parte* Reexamination Non-Final Office Action. That office action, again, only pertained to six of the Asserted Claims (claims 1, 2, 13, 21, 23, and 24), while the other six Asserted Claims (claims 8, 9, 10, 11, 12, and 14) remained unchallenged. On February 23, 2024, Defendants filed this Motion.

The case continued to move forward. On February 26, 2024, the parties submitted technology tutorials for the Court's consideration, and on February 29, 2024, the Court informed the parties that the hearing was vacated and that claim construction is appropriate for resolution without oral argument. Dkt. No. 101. Additionally, the Patent L.R. 3-10 Damages Contentions Meeting is scheduled for March 21, 2024, after having been postponed due to ongoing discovery disputes. Dkt. No. 92. In order to have a meaningful damages meeting with Defendants, BSD submitted a joint statement with the Court on March 5, 2024, pursuant to Paragraph 4 of Your Honor's Standing Order for Civil Cases, to compel the production of critical damages documents that Defendants have wrongfully withheld. Dkt. No. 102.

## IV.   ARGUMENT

### A.   Factor 1: The Stage of The Litigation Weighs Against a Stay.

Defendants' conclusory assertion that this case is "at an early stage" which "strongly favors a stay" (Mot. at 2) is wrong. As several courts have noted, "'[a]lthough the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference—that a suit in the early stages should weigh heavily in favor of a stay—is not true.'" *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, No. 3:09-CV-791, 2010 WL 1946262, at *3 (E.D. Va. May 10, 2010). Moreover, Defendants downplay the substantial resources that both the Court and the parties have invested over thirteen months of litigation. *See Interwoven, Inc.*, 2012 WL 761692, at *4 (finding that the Court and the parties had "expended sufficient resources and time to render a stay untenable").

The parties have engaged in significant fact discovery, completed claim construction, and briefed substantive motions.

Typically, a stay is only "appropriate in cases that are still in the initial stages of litigation and where there has been little or no discovery." *Finjan, Inc. v. FireEye, Inc.*, No. C 13-03133 SBA, 2017 WL 1150283, at *2 (N.D. Cal. Mar. 28, 2017) (citing *Telemac Corp.*, 450 F. Supp. 2d at 1111). Here, however, significant discovery has already transpired. For example, the parties have:

- served, responded to, and in some cases supplemented, extensive written discovery, including interrogatories and requests for production;

- produced 4,034 documents[5] (not including Defendants' source code associated with the Accused Products, which they have made available for inspection) totaling 58,024 pages of materials;

- met and conferred over six times for well over 10 hours to discuss extensive discovery disputes relating to Defendants' failure to produce critical documents;

- served initial Infringement, Invalidity, and Damages Contentions pursuant to the Local Patent Rules;

- retained and disclosed experts;

- served third-party subpoenas for documents and depositions;[6] and

- filed a joint discovery statement in which BSD asks the Court to compel Defendants to produce critical damages documents.

These extensive and substantive discovery efforts demonstrate that this case is far from being at an "early stage." *See, e.g.*, *Telemac Corp.*, 450 F. Supp. 2d at 1111 (finding that "well underway" fact discovery, even if incomplete, weighs against a stay); *see also Interwoven, Inc.*, 2012 WL 761692, at *4 (denying stay where the parties had "exchanged documents, excepting source code, served interrogatories and document requests, and responded to each other's requests and interrogatories").

---

[5] Plaintiff has produced 3,081 of those documents, totaling 44,582 pages.

[6] Defendants assert that this case is at an early stage in part because "no depositions have been noticed or taken." Mot. at 2. Not true. Defendants have noticed two third-party depositions: (1) RealNetworks LLC; and (2) Jeffery Ayars. Exs. 2, 3. These depositions, likely for tactical reasons, have not yet occurred.

Not only have the parties expended significant resources engaging in fact discovery, but they have fully briefed claim construction, prepared and submitted technology tutorials, and now await an imminent claim construction Order.[7] These facts again weigh heavily against a stay. *See, e.g.*, *Interwoven*, *Inc.*, 2012 WL 761692, at *4 (denying stay where the parties had "fully briefed the issue of claim construction, attended a Markman hearing, and received a claim construction order"); *see also Blackberry Ltd.,* 2020 WL 13890661, at *3 (finding that completed claim construction is indicative that a case is not in its "'early stages,' even though substantial work remains to be done"); *Ultra Prods., Inc. v. Antec, Inc.*, No. 09-042550-RS, 2010 WL 1688538, at *4 (N.D. Cal. April 26, 2010) (finding that the "stage of case" factor weighed against a stay where "claim construction preparation [was] well under way," although hearing had not yet occurred); *PolyCom, Inc., v. Codian, Ltd.*, No. 2:05-cv-520, 2007 WL 7658922, at *2 (E.D. Tex. 23, 2007) (recognizing that a "stay would rarely be appropriate" where it was requested a year into litigation "on the eve of the claim construction hearing").

Considerable resources have also been expended on several substantive motions and issues. First, the Court denied Defendants' motion to dismiss BSD's willfulness allegations. Dkt. No. 51. This required the Court to undertake an analysis of patent-specific case law to ascertain the proper standard for pleading willfulness. The parties also engaged in oral argument before the Court. Dkt. No. 47. Second, the Court denied Defendants' motion to certify the Court's Order on the motion to dismiss willful infringement so that they could file an interlocutory appeal. Dkt. No. 71. Third, the Court denied Defendants' motion for judgment on the pleadings, which asked the Court to invalidate Plaintiff's patent under 35 U.S.C. § 101.[8] Dkt. No. 89. There, the parties provided the Court with detailed analyses of the '473 Patent (including complex technical figures) and extensive case law. Such materials are likely to have consumed meaningful Court resources. Importantly, this Court has denied stays where similar resources for dispositive motions have been expended. For example, in *International Test Solutions, Inc. v. Mipox International Corporation*, the Court held

---

[7] The Court canceled the *Markman* hearing that was scheduled for March 4, 2024, and has taken the claim construction issues under advisement on the briefing. Dkt. No. 101.

[8] The Court also heard oral argument on this issue on January 24, 2024. Dkt. No. 86.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that dispositive motion practice makes a litigation "distinguishable from the cases granting stays at later stages, <u>including those granting last-minute stays on the eve of claim construction.</u>" *Int'l Test Sols.*, 2017 WL 1316549, at *2 (denying stay because "although the pleadings have yet to settle and significant discovery looms on the horizon, the parties have now argued and briefed a dispositive issue") (emphasis added). In short, the Court's efforts to date further weigh against a stay.

The cases relied upon by Defendants are inapposite. Indeed, Defendants fail to cite any decision where a stay was granted for an *ex parte* reexamination after such a significant amount of case activity had transpired. The best authority that Defendants could muster had not progressed to the stage of this matter or was decided in the context of pending IPRs, which as discussed in the following section have an estoppel effect unlike reexaminations. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-CV-04738-WHO, 2018 WL 6574188, at *6 (N.D. Cal. Dec. 12, 2018) (granting stay pending an IPR proceeding); *LBT IP II LLC v. Uber Techs. Inc.*, 22-cv-03985-WHO, 2023 WL 322894, at *1 (N.D. Cal. Jan. 19, 2023) (granting stay pending an IPR where "only the opening claim construction brief has been filed"); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 13-CV-01356-EJD, 2014 WL 116340, at *3 (N.D. Cal. Jan. 13, 2014) (staying case pending IPR and recognizing the "unique posture that required the litigation to progress before a motion to stay could be considered"—i.e., a "pending conditional transfer to this district"). In *Palo Alto Networks, Inc. v. Packet Intel, LLC*, Your Honor stayed the case, but did so pending IPRs with the force of estoppel. No. 19-CV-02471-WHO, 2020 WL 5760475, at *2 (N.D. Cal. Sept. 28, 2020) (Orrick, J.). Moreover, unlike here, 31 of 33 asserted claims were challenged and "[n]o dispositive motions [had] been filed." *Id*. at *1-2.

While work remains and no trial date is set, it cannot be said that this case is at an early stage. Staying the case at its current stage would derail the substantial efforts that both the parties and Court have performed over the last thirteen months. For these reasons, factor one weighs strongly against a stay.

**B.      Factor 2: The *Ex Parte* Reexamination is Unlikely to Simplify the Issues.**

Factor two asks the Court to consider whether the outcome of the reexamination will simplify the issues in this case. Defendants' conclusory analysis fails for three primary reasons: (1) <u>half</u> of the Asserted Claims will advance towards summary judgement and trial regardless of the outcome of the reexamination; (2) there is no reexamination estoppel to simplify Defendants' extensive invalidity arguments, which they can raise unfettered at trial; and (3) Defendants' PTO statistics are misguided.

**First**, a stay is not justified because not all the Asserted Claims are subject to reexamination. *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No. SACV 10-1582 DOC, 2011 WL 4448972, at *3 (C.D. Cal. Sept. 26, 2011) ("As other courts have held, permitting a stay because some relevant claims may be affected 'would invite parties to unilaterally derail timely patent case resolution by seeking reexamination.'" (quoting *Largan Precision Co. Ltd. v. Fujifilm Corp.*, No. C 10–1318 SBA, 2011 WL 794983, at *2 (N.D. Cal. Mar.1, 2011))); *see also Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.").

Even if the PTO were to cancel each of the six reexamined claims, *this case will still continue on the six unchallenged claims*. Thus, a stay would only delay the inevitable: progress towards trial on Asserted Claims 8-12 and 14, which are not subject to reexamination. *See Yodlee, Inc. v. Ablaise Ltd.*, No. 06-07222, 2009 WL 112857, at *5 (N.D. Cal. Jan. 16, 2009) ("If regardless of the result of the reexamination, there are still claims or counterclaims that need to be resolved by the Court, then reexamination clearly fails to provide a final resolution.") (internal citations omitted).

It is noteworthy that the third-party requester intentionally chose not to challenge the remaining claims—they are simply too far removed from the putative prior art cited to date.

Defendants claim that invalidating at least some of the Asserted Claims will simply the issues. Mot. at 3. That facile assertion has an appetizing legal sheen. However, its inherent fallacy is easily revealed because Defendants' briefing fails to account for how the remaining unchallenged

- 9 -

claims will impact the litigation. In fact, nowhere in their Motion do Defendants explain how litigating infringement and validity for only the remaining claims will be easier than proceeding to trial on the entire Asserted Claim set. *See* Mot. at 3-4 ("A Stay Will Simply the Issues before the Court").

That analysis is absent from the Motion for a simple reason: that cancelation of the challenged claims will <u>not</u> result in any meaningful simplification of the issues. <u>All</u> Asserted Claims (both challenged and unchallenged) ultimately <u>depend</u> on a single independent claim (i.e., challenged claim 1). Thus, BSD's unchallenged dependent claims will legally require analysis of claim 1 regardless of the outcome at the PTO. Importantly, the unchallenged Asserted Claims subsume the patent analysis of all the challenged dependent claims. Put simply, nothing is simplified by removing the reexamined claims. As demonstrated below, the challenged claims require no evidence and present no issues that will not also be litigated for the unchallenged Asserted Claims.

- Challenged Claim 2 – "downloading the sequence using an Internet protocol over the network from the server to one or more client computers" will be addressed entirely in terms of facts and expert discovery by <u>unchallenged</u> claim 8, which depends on claim 2 and pertains to decoding—a step that happens after downloading. For this reason, cancellation of claim 2 has no impact on the issues in this litigation.

- Challenged Claim 13 – "downloading the sequence comprises downloading the sequence using a protocol selected from a group consisting of HTTP, UDP and RTP" will also be entirely addressed by unchallenged claim 8 as claim 13 pertains to downloading, which precedes decoding (*see* discussion concerning claim 2). Moreover, discovery of HTTP is at the heart of the two streaming standards at issue: HTTP Live Streaming ("HLS") and Dynamic Adaptive Streaming over HTTP ("MPEG DASH"). Thus, cancellation of claim 13 cannot simplify anything.

- 10 -

- Challenged Claim 21 – "uploading the sequence comprises uploading a sequence using an Internet Protocol" is subsumed by all the remaining unchallenged claims. Claim 1, upon which all the unchallenged claims depend, requires this same uploading step except that Claim 21 adds the further limitation of "using an Internet Protocol." That additional limitation, which all of Defendants' systems practice as described in BSD's infringement contentions, simplifies nothing as an Internet Protocol would be charted and discussed under *any* of the remaining unchallenged claims, all of which contain an "uploading" element.

- Challenged Claim 23 – "dividing the stream into the sequence of slices comprises dividing the stream into a sequence of time slices, each having a predetermined duration associated there with" is subsumed by claim 1, and thus, all of the unchallenged claims. The claim construction agreed upon by Defendants already states that the dividing step in claim 1 can encompass time slicing: "each slice having a data size, *which may be established by setting a time duration of the slice*, assigned in advance of the stream being divided." *See* Joint Claim Construction and Prehearing Statement ("JCCPS"), Dkt. No. 72, at 2 (emphasis added).

- Challenged Claim 24 – "wherein the data stream comprises multimedia data," which as with all the other unchallenged claims, will be part of this litigation regardless of the PTO's actions. Multimedia is precisely the data type that Defendants' HLS and MPEG-DASH systems broadcast. Thus, this issue will always follow the unchallenged claims even if the PTO cancels Claim 24.

For the reasons above, none of the challenged claims alter the infringement facts necessary in the case. Defendants' sole substantive argument that the reexamination will simplify the issues is that if the PTO concludes that Claim 1 is invalid, then "the value of BSD's invention would be tied solely to the incremental value of its remaining dependent claims." Mot. at 4. Unchallenged claims 11 and 12, however, enable client devices to select from multimedia streams of different quality levels depending on bandwidth conditions and are the crux of the HLS and MPEG-DASH protocols

- 11 -

employed in Defendants' infringing systems. Thus, the reexamination can only slightly (if at all) impact the damages analysis in this litigation.

Defendants' other assertion that "[t]he outcome of the reexamination is likely to significantly impact … the invalidity … issues in this case" (Mot. at 3) is also incorrect, as the required discovery and the parties' affirmative proof and defenses will not change based on the result of the reexamination. In fact, a stay will have the opposite effect. For example, even assuming the challenged claims were cancelled (which BSD does not believe will happen), Defendants will be back in Court advancing the same tired invalidity contentions. The only benefit to Defendants (at a cost to BSD) is a significant detour to this docket. As this Court has observed, "staying a case even in its early stages pending reexamination does not necessarily lead to 'the just, speedy, and efficient management of the litigation, but instead has tended to prolong it without achieving sufficient benefits in simplification to justify the delay.'" *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2011 WL 13153233, at *3 (N.D. Cal. Feb. 8, 2011) (quoting *Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. 07-6053, 2008 WL 2168917, *3 (N.D. Cal. May 23, 2008)).

For at least these reasons, the reexamination cannot provide a final resolution to all claims before this Court—weighing against a stay. *See Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868 SBA, 2012 WL 1424988, at *3 (N.D. Cal. Apr. 24, 2012) ("[T]o truly simplify the issues . . . the outcome of the *reexamination must finally resolve all issues in the litigation*.") (citation omitted) (emphasis added).

**Second**, Defendants' analysis is conspicuously silent on the fundamental difference between IPR's and reexaminations—*i.e.,* there is no statutory estoppel attached to the reexamination.[9] *See TPK Touch Sols., Inc v. Wintek Electro-Optics Corporation*, No. 13-CV-02218-JST, 2013 WL 5289015, at *2–3 (N.D. Cal. Sept. 18, 2013) ("'*[I]nter partes* proceedings

---

[9] Defendants also fail to address the fact that an IPR cannot be initiated unless there is a "reasonable likelihood that the petitioner would prevail" with respect to at least one challenged claim. *See* 35 U.S.C. § 314(a). But the bar for initiating *ex parte* reexamination is considerably lower—the examiner must initiate reexamination if there is merely "a substantial new question" of patentability raised by the reexamination request. *See* 35 U.S.C. § 303(a). Accordingly, Defendants' motion overlooks the premise that a decision to institute *ex parte* reexamination is much less predicative of the ultimate outcome than an IPR.

impose estoppel upon third-party requesters, which prevent them from later re-litigating the same issues that were raised, or could have been raised, during the *inter partes* proceedings' [but] ***Ex parte* reexamination offers no such protection.**" (quoting *Network Appliance Inc.*, 2008 WL 2168917 at n.1)) (emphasis added). In an IPR, a Defendant may not assert "in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). That limitation does not exist with an *ex parte* reexamination such as we have here.

This Court has observed that lack of estoppel is a meaningful consideration in weighing against a stay.[10] In *Blackberry*, the Court found that, "no estoppel prevents [defendant] from raising different—or even the same—invalidity grounds following reexamination." 2020 WL 13890661, at *5. Moreover, as in *Blackberry*, Defendants' numerous alleged prior art references (39 patents, 44 non-patent publications, and 4 systems) indicates that:

> should the PTO invalidate, fail to invalidate, or do anything else to the claims, [Defendants] will have little trouble finding another subset of … prior art references to advance at trial. In these circumstances, reexamination is exceedingly unlikely to reduce (as opposed to merely change) the issues to be decided by the Court and jury.

*Id.* Because there is no estoppel, Defendants will be free to challenge the reexamined claims again in this litigation (or future PTO proceedings) based on the same prior art (as well as new prior art) and arguments that failed in the reexamination. The lack of estoppel vitiates any argument that the reexamination will simplify this case regardless of the outcome. *See, e.g.*, *Pro-Troll, Inc. v. Shortbus Flashers, LLC*, No. 16-CV-04062-VC, 2016 WL 11432003, at *1 (N.D. Cal. Dec. 23, 2016) (finding that "[t]he choice of *ex parte* reexamination was strategically advantageous to [defendant] because the result of the reexamination will have no estoppel effect" and "[t]hus, the *ex parte* reexamination process is much less likely to advance the ball….") (internal citations omitted); *TPK Touch Sols. Inc.*, 2013 WL 5289015, at *3 ("[T]he *ex parte* reexamination

---

[10] Not only is there no estoppel, but this Court has, in denying stays, also considered that the "*ex parte* reexamination will not address or resolve issues of invalidity based on 35 U.S.C. sections 101 or 112." *TPK Touch Sols. Inc.*, 2013 WL 5289015, at *2. Thus, Defendants will be free to attack the challenged claims under § 112 once the stay is lifted.

procedure, unlike the *inter partes* procedure, takes longer [and] is less likely to result in material changes in the litigation…."").

Unsurprisingly, the cases cited by Defendants primarily involve the more favorable, but inapposite, IPR line of cases.[11] Notably, Defendants chose not to file their own IPR challenging the Asserted Claims, presumably for one of two reasons: (1) they did not find invalidating prior art; or (2) they wished to avoid the risks of statutory estoppel.[12] Despite this, Defendants are seeking to have their cake and eat it too, by staying the case on the back of a third-party's reexamination where they face no risk of an adverse decision.

**Third**, even for the six claims that are subject to reexamination, there is a strong likelihood that some (if not all) will survive. In the most recent statistical data published by the PTO (as of September 2023, Gottuso Decl. at ¶ 2), only 10% of third-party filed *ex parte* reexaminations result in "all claims canceled." Exh. 1 at ¶ 8(b). Indeed, *ex parte* reexaminations are rarely successful in canceling <u>all</u> challenged claims. *See, e.g., Interwoven*, 2012 WL 761692, at *3 ("[T]he only way Interwoven's reexaminations will resolve invalidity issues is if the PTO cancels the claims in their entirety, of which there is only a 12% chance." (*citing Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.,* No. 10-CV-02863-EJD, 2011 WL 3267768, at *4 (N.D. Cal. July 28, 2011)) (denying a stay because simplification is unlikely when the likelihood of PTO cancelation was low)). Defendants' statistics do not tell the full story. They lump statistics for canceled and amended claims together (Mot. at 3) in an attempt to show that half of the Asserted Claims will be either invalidated or unenforceable. Amending claims is the path of least resistance before the PTO, but that is not indicative of BSD's reexamination strategy. For these reasons, Defendants' generic statistics are meaningless. This factor weighs strongly against a stay.

---

[11] For example, each of the following cases cited by Defendants to support their position that the reexamination will simplify this case involved IPRs: *Palo Alto Networks, Inc.*, 2020 WL 5760475 (N.D. Cal. Sept. 28, 2020); *Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK, 2018 WL 1609630 (N.D. Cal. Apr. 3, 2018); *Netflix, Inc. v. CA, Inc.*, No. 21-CV-03749-EMC, 2022 WL 1144631 (N.D. Cal. Mar. 30, 2022).

[12] Defendants' deadline to file an IPR has long passed. 35 U.S.C. § 315(b) (must file an IPR petition within one year of being served with a complaint alleging infringement of the patent).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.     Defendants' Tactical Attempt at Delay Will Unduly Prejudice BSD.

The consequences of a stay on the nonmoving party are a paramount consideration in determining whether one should be granted. *See, e.g.*, *Ultra Prods., Inc.*, 2010 WL 1688538, at *3 (denying motion for stay considering prejudice and inferences that defendants' delay was "tactically driven"). Here, a stay would be unduly prejudicial to BSD.

Defendants have long been skirting their discovery obligations. Rather than answer the Complaint and engage in document discovery, Defendants have forced BSD to withstand several motions and endure a months-long pursuit for responsive documents—culminating in BSD's recently filed joint statement requesting that the Court compel discovery. Dkt. No. 102. It is clear Defendants have no interest in producing many, if not most, of the documents responsive to Plaintiff's discovery requests and are using a stay as a new avenue to further stall their obligations. Indeed, from the time reexamination was granted on October 5, 2023 until Defendants' requested a stay on February 23, 2024, Defendants produced a total of 11 documents.[13] Rather than seek a stay back in October when reexamination was granted, Defendants pushed forward with claim construction and filed a § 101 motion in December 2023. That Defendants waited nearly 5 months (until after the Court denied their § 101 motion) to seek a stay further evinces their tactical gamesmanship. *See Interwoven, Inc*., 2012 WL 761692, at *2 ("That Interwoven waited until after receiving an unfavorable ruling to request reexamination lends credence to Vertical's contention that the current motion is simply a delaying strategy." (citing *Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08–2781 SBA, 2008 WL 4452118, *4 (N.D. Cal. Oct.3, 2008))). For example, this Court has held that "seven weeks to file the [] motion to stay" from the mere decision granting *inter partes* reexamination (not a first office action which occurred several months later) was prejudicial and weighed against stay. *Affinity Labs of Texas v. Apple Inc.*, No. 09-04436 CW, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010). The Court should not reward Defendants' strategic decision to delay their stay request so they could first attempt to dismiss this case under § 101 while simultaneously ignoring their discovery obligations.

---

[13] Defendants produced another mere 98 documents on March 7, 2024 after BSD filed a joint statement requesting the Court to compel discovery.

To be clear, Defendants are not asking the Court for a short stay. "Although the 'delay inherent in the reexamination process does not constitute, by itself, undue prejudice,' delay is certainly a factor to be considered." *Centrify Corp. v. Quest Software, Inc.*, No. C 10-3873 CW, 2011 WL 607107, at *2 (N.D. Cal. Feb. 11, 2011) (quoting *Wordtech Sys., Inc. v. Microboards Mfg., LLC*, No. C 09-04612 SI, 2010 WL 1641510, at *2 (N.D. Cal. Apr. 22, 2010) (quotation marks omitted)). Indeed, district courts have repeatedly recognized that reexaminations cause long, indefinite delays. *See Life Techs. Corp. v. Illumina, Inc.*, No. CIV.A.09-706-RK, 2010 WL 2348737, at *3 (D. Del. June 7, 2010) (noting potential prejudice from long delay and "the indefinite nature of the stay"); *Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*, No. CIV. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) ("No one can predict the outcome or the timing of these proceedings."); *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, at *5 (N.D. Cal. June 7, 2007) ("When a party moves to stay litigation pending PTO reexamination, the non-moving party may be unduly prejudiced by the lapse of time during reexamination." (citing *Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 WL 935516, (S.D. Cal. March 21, 2007))).

While IPR proceedings are statutorily mandated to complete within a year to 18 months (6 months can be added for cause), the average length of time for an *ex parte* reexamination is 25.2 months—over two years, and often longer.[14] 35 USC § 316(a)(11); Exh. 1 at ¶ 7(a). Defendants' request to stay this case for, potentially, over two years, when the parties will **with certainty** be back before the Court to litigate the remaining, unimpacted claims, is unjustified and prejudicial to Plaintiff. *See TPK Touch Sols. Inc.*, 2013 WL 5289015, at *3 ("[T]he risk of prejudice is compounded by the relatively long period of time requested to complete *ex parte* reexamination."). "Moreover, if either party appeals the determination from the reexamination, the delay will likely extend another three years." *Affinity Labs of Texas v. Apple Inc.*, 2010 WL 1753206, at *2. In short, Defendants' request for a multi-year stay is unduly prejudicial as it will merely stall the resolution of Plaintiff's infringement allegations as to unchallenged patent claims.

---

[14] These statistics only include prosecution at the PTO—not appeals to the Patent Trial and Appeal Board.

In addition, as Defendants recognize in their Motion, the '473 Patent is now expired. Mot. at 4. Thus, the only infringement at issue in this case occurred between 2017 and 2019—between 6-8 years ago. Delaying discovery by 25 months will serve only to substantially increase the risk of evidence spoliation and faded witness memories. *See Kilopass Tech. Inc*, 2011 WL 13153233, at *3 (agreeing with plaintiff that "it will be beneficial to all parties to develop the most accurate and fullest possible record" to prevent "the substantial risk of evidence spoliation and faded witness memories") (cleaned up); *see also Interwoven, Inc.*, 2012 WL 761692, at *3 (denying stay and noting that plaintiff would be "strategically prejudiced by a stay" because "[e]vidence, witness availability, and memory concerning the pertinent timeframe will likely become more stale and difficult to retrieve as time passes"); *Affinity Labs of Texas v. Apple Inc.*, 2010 WL 1753206, at *2 ("[F]urther delay will only increase the likelihood of loss of evidence.") (citing *Telemac Corp.*, 450 F. Supp. 2d at 1111 (concluding that staying the case could lead to "further loss of information" and a "tactical advantage")). This is particularly true in this case where a significant amount of discovery is likely to come from non-party content providers that use Defendants' infringing services and have no obligation to preserve evidence at this time.[15] *See Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007) ("[C]rucial witnesses [are] more likely to be located if discovery is allowed to proceed now rather than later.").

By attempting a wait-and-see method and foregoing its own PTO challenge to the '473 Patent, Defendants have found shelter "lay[ing] behind the log [of Unified Patents], hoping for favorable developments with the passage of time." *Cf. Affinity Labs of Texas, LLC v. BMW N. Am. LLC*, No. 9:08-CV-164, 2009 WL 8590914, at *2 (E.D. Tex. Feb. 20, 2009); *Pro-Troll, Inc.*, 2016 WL 11432003, at *1 (finding that "[t]he choice of *ex parte* reexamination was strategically advantageous to [defendant] because the result of the reexamination will have no estoppel effect"). Indeed, Defendants' gamesmanship raises the specter of an endless gambit if the case were stayed. While an IPR petition may not be filed after the one-year statutory deadline and carries with it impactful estoppel risks, *ex parte* reexaminations can be requested at any time with no estoppel and

---

[15] One of many such content providers is Paramount. BSD served Paramount with a subpoena and is expecting a production later this month.

1
2
3
4
5

no statutory prohibition on serial requests. *See* 35 U.S.C. § 302. If Unified Patents' request is ultimately unsuccessful in invalidating the '473 Patent, Defendants could try again—filing their own *ex-parte* reexamination and dragging out the parties' dispute indefinitely. The better course of action is to complete the substantial investment the parties and the Court have already made and see this case through resolution.

6
7
8
9
10
11
12
13
14
15
16
17
18

Defendants' authority is distinguishable from the circumstances in this case. Mot. at 4-5. This Court's stay decisions in *Palo Alto Networks, Pragmatus AV, and TC Tech* came during the infancy of the litigation, did not involve dispositive motion practice, or were decided before claim construction was complete. *See Palo Alto Networks*, 2020 WL 5760475, at *2 ("No dispositive motions have been filed."); *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-00494-EJD, 2011 WL 4635512, at *2 (N.D. Cal. Oct. 5, 2021) ("No discovery has been taken, and no trial date has been set. Thus, the only substantive event in this case resulted from Pragmatus serving infringement contentions despite the agreement to stay all disclosures until the case management conference."); *TC Tech*, 2021 WL 8083373, at *3 ("This case is still in its infancy….[T]his case has previously been stayed for six months . . . [and] [a]t the time of the filing of this Motion, the Markman was six months away."). Finally, the decision in *Neodron* was with respect to a granted *inter partes* review with the preclusive effects of estoppel. *Neodron, Ltd. v. Lenovo Grp. Ltd.*, No. 19-cv-5644-SI, 2020 WL 5074308 (N.D. Cal. Aug. 27, 2020).

19
20

This factor weighs against a stay.

21

## V.    CONCLUSION

22
23

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Stay.

24

Dated: March 8, 2024

25
26
27
28

By: /s/ *Francisco A. Villegas*
Francisco A. Villegas (Bar No. 206997)
Mark W. Halderman (*pro hac vice*)
Damir Cefo (*pro hac vice*)
VILLEGAS & CEFO LLP
1350 Avenue of the Americas, Floor 2
New York, NY 10019
Telephone: (646) 844-1071

1                                              fvillegas@villegascefo.com
                                              mhalderman@villegascefo.com

2                                              dcefo@villegascefo.com

3                                              Kyle G. Gottuso (*pro hac vice*)
                                              Charlie M. Jonas (*pro hac vice*)

4                                              ARMSTRONG TEASDALE LLP
                                              7700 Forsyth Blvd., Suite 1800

5                                              St. Louis, MO 63105
                                            Telephone: (314) 621-5070

6                                              kgottuso@atllp.com
                                            cjonas@atllp.com

7

8                                              *Attorneys for Plaintiff*
                                            *BSD Crown, Ltd.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY                                   3:23-CV-00057-WHO