UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BSD CROWN, LTD.,<br><br>   Plaintiff,<br><br>   v.<br><br>AMAZON.COM, INC., et al.,<br><br>   Defendants. | Case No. 3:23-cv-00057-WHO<br><br>**ORDER ON CLAIM CONSTRUCTION**<br>Re: Dkt. No. 83 |

Plaintiff BSD Crown, LTD ("BSD") sued defendants Amazon.com, Amazon Web Services, Inc., and Twitch Interactive, Inc. (collectively, "Amazon" or "the defendants"), for patent infringement. The case is now at the claim construction stage, and the parties seek construction of only one term. This claim term from this same patent was previously construed in a case where BSD was a party; BSD presents nearly identical arguments here as it did there. It renewed those arguments when it moved for judgment as a matter of law in that case. BSD later stipulated to use of that same construction in subsequent litigation involving the same patent but a different defendant. Now—after BSD has had three chances to present its arguments about the proper construction of this identical claim term in this same patent—it seeks to change the construction. Amazon, in turn, asks for the same construction that has been used in BSD's prior lawsuits. Given principles of collateral estoppel, uniformity in patents, and fairness, as well as the fact that the construction is accurate, this litigation will use the same construction as was used previously.

**BACKGROUND**

**I.   FACTUAL BACKGROUND**

BSD alleges that the defendants infringed one of its patents through their use of real-time

video and audio streaming technology.  Complaint ("Compl.") [Dkt. No. 1].  BSD owns the rights to the disputed patent, U.S. Patent No. 6,389,473, (the "'473 Patent" or the "patent-in-suit"), which is entitled "Network Media Streaming."  [Dkt. No. 1-1].

The '473 Patent teaches a process for real-time transmission of video and audio broadcasts using network technology.  *See id.*  BSD's complaint asserts that prior to the invention of the '473 Patent, real-time audio and video streaming "faced technical problems that negatively affected video quality unless expensive, dedicated equipment was deployed." Compl. ¶ 23.  The prior art used expensive hardware to perform the data transmission and required a non-internet link between the source computer and the server, as well as a "high-cost" encoder to package data for the server.  '473 Patent 1:16-47.  Ultimately that meant only computers with "a suitable, dedicated encoder and broadcast server" could provide real-time broadcasting.  *Id.* 1:34- 47.

An overarching objective of the '473 Patent is to provide a process for real time data broadcasting that does not require expensive hardware and instead uses "common, existing server and network infrastructure . . . without the need for a dedicated broadcast computer system." *Id.* 1:50-58.  In other words, the goal of the patent is to improve the prior art by achieving the same result—real-time data broadcasting—but "using common, universally-supported Internet communication protocols," which reduces costs and allows personal computers to remotely broadcast multimedia programs.  *Id.* 1:58-67.

The only independent claim in the patent is Claim 1, which contains the contested language for this claim construction:

> A method for real-time broadcasting from a transmitting computer to one or more client computers over a network, comprising: providing at the transmitting computer a data stream having a given data rate; dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith; encoding the slices in a corresponding sequence of files, each file having a respective index; and uploading the sequence to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate.

*Id.* 14:18-32.

The specification teaches that the data stream from the transmitting computer is

compressed and divided into "segments or slices" of data, "preferably time slices," and preferably each slice is "assigned a respective slice index." *Id.* 2:2-7. The transmitting computer monitors the data stream and compresses it to align with the available bandwidth on the link between the computer and server. *Id.* 3:14-23, 9:32-48. The sequences of slices are then wirelessly uploaded to a server over a network, preferably via the File Transfer Protocol ("FTP") internet protocol, in real time. *Id.* 2:6-11, 14:18-29. Then, the server sends data to the client computer via an internet protocol, preferably HTTP. *See id.* 2:1-28, 14:33-35. The server sends the data by transmitting data slices at different quality levels, depending on available bandwidth of the client computer. *Id.* 3:5-13; *see also id.* 4:39-47, 11:9-22. Preferably the data stream is transmitted using the Hypertext Transfer Protocol ("HTTP"), which is "known in the art." *Id.* 2:11-21. The specifications indicate that each data slice is preferably in its own separate file, though they can also be contained "in a single indexed file," as both are supported by HTTP. *Id.* 2:21-28.

Now the parties seek construction of the term "real-time broadcasting."

## II.     PROCEDURAL BACKGROUND

The Honorable (Ret.) Paul Grewal construed the term at issue in *Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2014 WL 5079687, at *4-5 (N.D. Cal. Oct. 9, 2014) ("*Apple I*"). In that case, the plaintiff here—which was formerly called Emblaze—sued Apple for infringement of the '473 Patent. Judge Grewal affirmed the construction when denying the plaintiff's motion for judgment as a matter of a law, after a jury found that Apple did not infringe. *See Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2015 WL 396010, at *6 (N.D. Cal. Jan. 29, 2015), *aff'd*, 639 F. App'x 639 (Fed. Cir. 2016) ("*Apple II*").

BSD—again, then called Emblaze—stipulated to the use of the *Apple I* construction of "real-time broadcasting" in subsequent litigation again Microsoft, in front of the Honorable Jon S. Tigar. *See* [Dkt. No. 72-1] Ex. B at 1; Joint Claim Construction Br. at 1, *Emblaze v. Microsoft*, No. 3:12-cv-05422-JST, (N.D. Cal. June 25, 2013) (hereinafter "*Microsoft*"), (Dkt. No. 46).

In January 2023, BSD sued Amazon.com, Amazon Web Services, Inc., and Twitch Interactive, Inc. (collectively, "Amazon" or "the defendants") in this court for patent infringement of the '473 Patent. [Dkt. No. 1].

3

1    I granted in part and denied in part Amazon's motion to dismiss. [Dkt. No. 51]. I denied
2    Amazon's motion to certify that order for interlocutory appeal. [Dkt. No. 71]. I also denied
3    Amazon's motion for judgment on the pleadings. ("Prior Order") [Dkt. No. 89].

4    The parties then filed their briefs for claim construction. BSD filed its opening brief.
5    ("OB") [Dkt. No. 84]. Amazon filed its responsive answer brief. ("AB") [Dkt. No. 85]. BSD
6    filed its reply brief. ("RB") [Dkt. No. 94]. The parties also filed a patent tutorial. Under Patent
7    Local Rule 4-6, I found the claim construction appropriate for resolution without oral argument
8    and vacated the hearing. [Dkt. No. 101].

## LEGAL STANDARD

### I. COLLATERAL ESTOPPEL

"Because the application of general collateral estoppel principles is not within the exclusive jurisdiction of [the Federal Circuit]," district courts apply the law of the circuit in which they sit. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017) (citation omitted).

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2019 WL 5781915, at *2 (N.D. Cal. Oct. 15, 2019) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). "Defensive collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue of claim construction where: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'" *Id.* (quoting *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)); *see also e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014) (affirming district court's application of collateral estoppel to previously construed claim where *Hydranautics* elements were met).

"The party asserting preclusion bears the burden of showing with clarity and certainty

1  what was determined by the prior judgment." *Hydranautics*, 204 F.3d at 885 (citation omitted).
2  "[If] it is determined that the collateral estoppel bar is available, the actual decision to apply the
3  doctrine is left to the district court's discretion." *Droplets*, 2019 WL 5781915, at *2 (quoting
4  *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984)). "The Supreme
5  Court has granted to trial courts 'broad discretion to determine when [issue preclusion] should be
6  applied.'" *Id.* (quoting *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007)).

## II. CLAIM CONSTRUCTION

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Terms contained in claims are "generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582 (citation omitted).

When determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582-83. "A claim term used in multiple claims should be construed consistently." *Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002) (citation omitted).

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "[T]he person of ordinary skill in the art ['POSITA'] is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

"When the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) (citations omitted). "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at

1582; *see also Phillips*, 415 F.3d at 1316 (providing that it is a fundamental rule that "claims must be construed so as to be consistent with the specification"). "However, claims are not to be interpreted by adding limitations appearing only in the specification." *Vitronics*, 90 F.3d at 1582. Indeed, "where . . . the claim language is unambiguous, [the Federal Circuit has] construed the claims to exclude all disclosed embodiments." *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215-16 (Fed. Cir. 2008).

Finally, "it is entirely appropriate . . . for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999). However, extrinsic evidence is less reliable than and should be evaluated in light of intrinsic evidence. *Phillips*, 415 F.3d at 1318-19.

## DISCUSSION

The parties seek construction of one claim term: "real-time broadcasting."

| **BSD's Construction** | **Amazon's Construction** | **Court's Construction** |
|---|---|---|
| "simultaneous transmission of data to one or more clients matching the human perception of time or proceeding at the same rate as a physical or external process which allows for some, but not limitless, delay" | "simultaneous transmission of data to one or more clients matching the human perception of time or proceeding at the same rate as a physical or external process" | "simultaneous transmission of data to one or more clients matching the human perception of time or proceeding at the same rate as a physical or external process" |

Claim 1 uses the term "real-time broadcasting." '473 Patent 14:18-32. The parties' dispute is over whether the defendants' proposed construction—which is the construction from *Apple I* and stipulated to in *Microsoft*—should apply here or whether the additional language proposed by BSD is necessary to clarify the term and help the jury. The defendants' first argument is that the plaintiff's request is barred by collateral estoppel, and I agree for the reasons discussed below. But even if collateral estoppel did not apply, or even if I exercised my discretion under the equitable doctrine to not apply it, the defendants' construction is still the most accurate.

6

## I. COLLATERAL ESTOPPEL

Amazon argues that collateral estoppel applies because the construction of "real-time broadcasting" was necessarily decided in *Emblaze*, which ended in a final judgment on the merits, and BSD was a party (or in privity with the plaintiff) in that case. *See* AB 5:21-7:18. In turn, BSD asserts that even if the collateral estoppel factors are met, I am required to assess the merits of the patent, and I should decline to exercise my discretion to impose collateral estoppel. *See* RB 3:3-4:4.

### A. Prior Cases

In *Apple I*, Judge Grewal addressed two arguments about the construction of "real-time broadcasting," both of which are relevant here. First, Judge Grewal discussed whether the claim required simultaneous transmission *and* simultaneous receipt of the data and found that the language of the claim and specification—intrinsic evidence—showed only the requirement of simultaneous transmission. *Apple I*, 2014 WL 5079687, at *4. He included this clarification in the claim construction. *See id.*

Second, Judge Grewal addressed the parties' dispute regarding "the immediacy with which the invention must deliver the event stream to the user"; in other words, "the degree of delay allowable in 'real-time' transmission.'" *Id.* The plaintiff sought to construe "real-time" to mean "without substantial delay," while the defendant argued it meant "minimal delay." *Id.* Judge Grewal examined the language of the claim and specifications and found the following:

> The '473 patent states that "[f]urther preferably, the client compares the times stamped in the data stream to a local real-time clock and, if it determines that there is a significant lag in the time codes relative to the real-time clock, opens additional links with server 36 in order to increase the overall data rate." While the steps of recording and comparing time stamps are part of a preferred embodiment and should not be imported into a basic claim term like "real-time," inherent in this excerpt is the idea that the delivery of the data stream to the client should generally match the procession of the event being broadcast. The specification also mentions that applications of the invention include "an interview program or an entertainment or sports event" and "video teleconferencing." Applications such as these require a transmission system rapid enough to proceed in "real-time" with the live event. The Microsoft Computer Dictionary's definition of "real-time" expresses this requirement well: "Real-time operations are those in which the machine's activities match the human perception of time or those in which computer operations proceed at the same rate as a physical or external process."

7

*Id.* at *5 (quoting '473 Patent) (footnotes omitted). Judge Grewal also noted that the Federal Circuit supports the use of technical dictionaries to provide courts with a "better understand[ing] [of] the underlying technology" including how a POSITA would understand the claims. *Id.* at *5 & n.50 (quoting *Phillips*, 415 F.3d at 1318).

Based on that language and reasoning, Judge Grewal rejected both parties' suggested constructions. Instead, he applied the definition from the technical dictionary, construing "real-time" in the claim language as "matching the human perception of time or proceeding at the same rate as a physical or external process." *Id.* at *4-5.

The case proceeded to trial, where a jury found that the '473 Patent was not invalid but that Apple did not infringe. Emblaze moved for judgment as a matter of law, which Judge Grewal denied. *See Apple II*, 2015 WL 396010, at *6. Judge Grewal found that Apple presented substantial evidence at trial showing that its system was "intentionally designed . . . to have significant built-in latency, such that the accused streams do not practice the 'real-time broadcasting' limitation, as construed by the court." *Id.* at *4-5. He pointed out that the parties had previously agreed that the term included a small amount of lag time, and that Emblaze's post-trial motion "argue[d] for the first time" that the construction allowed for too much lag time—for too much delay. *Id.* at *5-6. He thoughtfully reviewed the patent language and specifications again and determined, again, that the claim contemplates some delay, but that more delay "takes an accused stream outside the scope of the invention." *Id.* at *6. On that basis, and because the defendants had submitted significant evidence that their technology incorporated significant delays of up to thirty seconds, Judge Grewal denied Emblaze's motion. *See id.* The Federal Circuit affirmed the verdict and the denial of Emblaze's motion on appeal. *See Emblaze*, 639 F. App'x 639.

Subsequently, in *Emblaze v. Microsoft*, the parties—including BSD, then known as Emblaze—stipulated to the construction of "real-time broadcasting" from *Apple I*. *See* [Dkt. No. 72-1] Ex. B at 1; *Microsoft*, (Dkt. No. 46).

B.   **Collateral Estoppel Analysis**

BSD does not contest two of the elements of collateral estoppel—that the *Apple I*

proceeding ended with a final judgment on the merits, and that BSD was the party in that litigation, or at least in privity with Emblaze. *See generally* RB. Both of these are clear from the record. *See Apple II*; 639 F. App'x 639; Compl. ¶ 1 & n.1 ("BSD, formerly known as Emblaze, Ltd. ('Emblaze'), was founded in 1994. . . . Emblaze, in turn, was formerly known as Geo Interactive Media Group, Ltd. ('Geo'). Geo, Emblaze, and BSD remain the same company; only the name has changed.").

Instead, BSD asserts that collateral estoppel does not apply because it is not seeking to change the "scope of the claim" because it "is not re-litigating the meaning of 'real-time broadcasting.'" *Id.* at 2:12-3:2. It is not entirely clear how this argument shows that collateral estoppel does not apply. For support BSD cites *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984) (per curiam), which held that "where a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims, i.e., the determined scope cannot be changed." Because *Molinaro* applied the three elements of collateral estoppel and held that the doctrine applied in that case, this citation neither clarifies nor supports BSD's argument.

In any event, this issue was identical to the one in *Apple I* and "necessarily decided" in that case. *See Droplets*, 2019 WL 5781915, at *2. The record shows that Judge Grewal addressed the parties' competing constructions for "real-time broadcasting" and even addressed specific arguments about the delay permitted by the term "real-time," which BSD raises again here. *See Apple I*, 2014 WL 5079687, at *5. In other words, not only was this identical issue litigated, but also BSD made nearly identical arguments in front of Judge Grewal. *See id.* at *4-5; *see also Droplets*, 2019 WL 5781915, at *4 (explaining that "necessarily decided . . . means only that the court undeniably decided the issue" (quoting *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (per curiam)). It rephrased and repeated those arguments in its motion for judgment as a matter of law, which Judge Grewal again assessed and again rejected. *See Apple II*, 2015 WL 396010, at *6. And because the particular claim term and patent are the same, it makes no difference whether this litigation involves different products from those in *Apple I*. *See Droplets*,

9

2019 WL 5781915, at *3 (collecting cases). Accordingly, this identical issue was actually litigated and necessarily decided twice, and then affirmed by the Federal Circuit. The defendants meet their burden, *see Hydranautics*, 204 F.3d at 885, to show that this element of collateral estoppel is met.

Finally, BSD asserts that I cannot apply collateral estoppel without considering the substance of their arguments about the proper construction, but that argument is not supported by the case law in this district. *See Droplets*, 2019 WL 5781915, at *3-7 (granting a motion for preclusion and construing claims as they were construed in prior litigation without assessing substance of construction); *cf. West v. Quality Gold, Inc.*, No. 5:10-CV-03124-JF HRL, 2011 WL 6055424, at *2 (N.D. Cal. Sept. 16, 2011) (analyzing collateral estoppel elements and finding that one was not met, so turning to substance of the arguments); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2010 WL 4510909, at *3 (N.D. Cal. Nov. 1, 2010) (same). BSD cites for support *Finjan, Inc. v. Symantec Corp.*, No. 14-CV-02998-HSG, 2017 WL 550453, *3 (N.D. Cal. Feb. 10, 2017), where the plaintiffs sought to construe a claim term in the same way as it had been previously construed in separate litigation, in which the plaintiffs participated but the defendants did not. Collateral estoppel clearly did not apply—the plaintiffs could not ask the court to find the defendants were collaterally estopped from seeking a different construction where they were not part of the prior litigation, nor did the parties or court discuss the doctrine. *See id.* Instead, the court discussed the principle that district courts may and should defer to the prior claim construction orders of other courts, particularly courts within the same circuit, to promote uniformity, but that a district should "still ultimately reach[] its own independent judgment." *Id.* (citing *Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1107 (N.D. Cal. 2006)) (subsequent citations omitted). *Finjan* and *Visto* both relied on the Supreme Court's emphasis of uniformity in *Markman*, 517 U.S. at 391, but none of those cases contemplated collateral estoppel as a reason to use the prior construction.[1] Accordingly, that principle of deference is inapposite

---

[1] BSD also cites *Sunstone Info. Def., Inc. v. F5, Inc.*, No. 21-CV-09529-YGR, 2023 WL 2746762, at *3 (N.D. Cal. Mar. 30, 2023), for the proposition that I have an "independent obligation" to construe the claims and not defer to the findings of other courts. That case relied on *Aircraft Tech. Publishers v. Avantext, Inc.*, No. C 07-4154 SBA, 2009 WL 3817944, at *3 (N.D. Cal. Nov. 10,

1  here, and I am unpersuaded by the argument.[2]  *See also Droplets*, 2019 WL 5781915, at *5

2  (explaining that issue preclusion encourages litigants to appeal judgments rather than attack them

3  collaterally).

4      The plaintiffs are therefore collaterally estopped from relitigating the construction of this

5  claim term.  The term "real-time broadcasting" is construed as it was in *Apple I* and as the

6  defendants seek here.

**II.  BSD'S SUBSTANTIVE ARGUMENTS**

8      BSD also argues that I should exercise my equitable discretion and decline to apply

9  collateral estoppel.  RB 3:13-4:4.  Their argument is that the *Apple I* construction requires

10  clarification and that their proposed additional language would clarify the scope of the patent for

11  the jury.  *See id.* 4:5-5:4.

12      First, I note that Judge Tigar previously rejected a nearly identical request in a separate

13  case.  In *Droplets*, 2019 WL 5781915, at *6, he declined to exercise his equitable discretion to not

14  apply collateral estoppel where the parties argued that the prior construction was incorrect, which

15  is essentially what BSD argues here.  He reasoned that while he could exercise such discretion if

16  he "were convinced that a prior result were demonstrably wrong," the parties had not made such a

17  showing.  *Id.*  "But more fundamentally," he explained, "[the plaintiff] has it backwards – if a

18  party believes the first court got it wrong, that party may seek reconsideration or appellate review

---

2009).  Both addressed the same discretionary doctrine but are inapposite to this case because they did not address collateral estoppel, likely because it was not possible to apply collateral estoppel to the facts of the cases.

[2] Even if the principle applied here, I agree with and follow the approach of the Honorable Haywood S. Gilliam in *Finjan*.  There, he reviewed and adopted my construction from a prior order, which grounded its analysis in two reasons.  Judge Gilliam's analysis of the claim was, in full, "While still independently weighing the arguments made by the parties here, the Court is persuaded by Judge Orrick's thorough reasoning for adopting [the defendant's] construction, and accepts that reasoning *in toto* to arrive at the same construction of [the claim term] here." *Finjan*, 2017 WL 550453, at *3.
Here, Judge Grewal arrived at the construction of "real-time broadcasting" by relying on the language of the claim and specifications, as well as the application of the technology contemplated by the patent.  *Apple I*, 2014 WL 5079687, at *4-5.  Here too, I have independently weighed the arguments made by the parties and am persuaded by Judge Grewal's thorough reasoning for adopting the chosen construction.  I "accept[] that reasoning *in toto*" and arrive at the same construction here.  *See Finjan*, 2017 WL 550453, at *3.  This also promotes the Supreme Court's emphasis "intrajurisdictional certainty." *Markman*, 517 U.S. at 391.

11

to correct the prior court's decision.  By not doing so, it is that party, and not a subsequent court, that risks encapsulation of a result."  *Id.*  This is, of course, directly applicable here, where BSD argues that the *Apple I* construction is not quite right—again, for the same reasons that were already thoughtfully considered by Judge Grewal in construing the term—and so asks me to use my discretion to modify it.  But BSD could have appealed that ruling and could have declined to stipulate to the use of the construction in *Microsoft*, but it did not.  Indeed it *did* appeal the denial of its motion for a new trial, which relied on the same construction, and the district court order was affirmed by the Federal Circuit.  Accordingly, I am unpersuaded by this line of argument.

Second, the substance of BSD's arguments is unpersuasive for all the same reasons rejected by Judge Grewal in *Apple II*.  BSD asserts that the jury would mistakenly interpret the construction in *Apple I* to require only instantaneous transmission and receipt and so would not allow for the 15 to 20 seconds of delay contemplated by the claim language.  This argument may be motivated by *Apple II*, which found that the defendant presented substantial evidence showing that its technology intentionally incorporated substantial lag and so fell outside the scope of the '473 Patent.  *Apple II*, 2015 WL 396010, at *4-5.  Judge Grewal rejected Emblaze/BSD's argument that the construction of "real-time broadcasting" did not include sufficient lag time in the claim scope, noting the claim and specification disclose that the client receives "the data stream substantially *in real time*, preferably with *only a minimal lag*" and that the data stream used time stamps to "*synchronize* the data, so that the multimedia sequence is played back just as it was input . . . preferably with only a *minimal necessary transmission and decoding delay*."  *Id.* at *6 (quoting '473 Patent 8:4-7, 10:49-54 (emphases added)).  In other words, the specification "include[d]—at most—a small amount of lag," in accordance with the "human perception of time" and "same rate as a physical or external process" language from the construction.  *Id.* at *6.  Judge Grewal then noted that whether an accused stream actually practices the real-time broadcasting limitation "is a question of degree" and that question should be and was addressed by the jury.  *Id.*

Here, BSD essentially renews the argument rejected by Judge Grewal.  BSD does not contest that the specification contemplates only a minimal amount of delay, yet it seeks to add the language "which allows for some, but not limitless, delay."  *See* OB; RB.  The patent does

12

contemplate some delay.  *See* OB 9:1-13:8; *see also* '473 Patent 11:55-59, 13:7-12 (referring to the optimal functioning level for different transmission as having a delay between one and five seconds).  But the language in the construction already contemplates some delay—the delay that matches the human perception of time or proceeds at the same rate as physical or external processes.  Additional clarification is redundant and unnecessary.

It is also unhelpful: BSD's proposed language implies that *any* delay is included in the scope of the claim so long as it is not "limitless."  That is belied by the language of the patent, and indeed the entire purpose of the invention, which focuses on streaming data "with only a minimal necessary transmission and decoding delay."  '473 Patent 10:53-54; *see also id.* 12:56-58 ("[I]n the case of a live broadcast transmission, it may be preferable simply to drop the file rather than send it after such a long delay."); *Phillips*, 415 F.3d at 1313 (considering the context of the entire patent including the specification).  The specification itself says that a preferred embodiment involves a maximum transmission delay of 20 seconds, which can be adjusted, but if the rate is higher than the maximum, "it is then determined that the link over which the file was transmitted is not functioning adequately."  *Id.* 12:61-13:6.[3]  BSD's additional language would therefore surely confuse the jury and could risk the jury finding that any length of delay is within the scope of the claim, which is not correct.  *Cf. West*, 2011 WL 6055424, at *11 (rejecting proposed constructions as "vague and unlikely to be helpful to the trier of fact").  And adding it to the construction simply to avoid the same outcome as the *Apple* litigation is not the purpose of claim construction.

BSD's arguments are therefore unpersuasive.  I decline to adopt its proposed construction.

## CONCLUSION

For those reasons, I adopt the construction for "real-time broadcasting" proposed by the

---

[3] BSD's papers point out that the specification contemplates a maximum twenty-second delay. And while the specification is important for context, "claims are not to be interpreted by adding limitations appearing only in the specification." *Vitronics*, 90 F.3d at 1582.  Accordingly, I will not add language to the construction strictly to address this twenty second limitation that only appears in the specification.  Nor does this "read out" a preferred embodiment of the claim—as Judge Grewal noted, the jury could still find that the "question of degree" of the delay practiced by the accused technology could still favor BSD.  *See Apple II*, 2015 WL 396010, at *6.

1  defendants and used in *Apple II*.

2  **IT IS SO ORDERED.**

3  Dated: March 14, 2024



William H. Orrick
United States District Judge

14