Francisco A. Villegas (Bar No. 206997)
Mark W. Halderman (*Pro Hac Vice*)
fvillegas@villegascefo.com
mhalderman@villegascefo.com
VILLEGAS & CEFO LLP
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Telephone:    (646) 844-1071

Kyle G. Gottuso (*Pro Hac Vice*)
kgottuso@atllp.com
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Telephone:    (314) 621-5070

*Attorneys for Plaintiff*
*BSD CROWN, LTD.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BSD CROWN, LTD.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INTERACTIVE, INC.,<br><br>　　　　　Defendants. | CASE NO.  3:23-cv-00057-WHO<br><br>**PLAINTIFF BSD CROWN, LTD.'S MOTION FOR PRESERVATION ORDER**<br><br>Date:       March 26, 2025<br>Time:      2:00 p.m.<br>Location: Zoom Videoconference<br>Judge:     Hon. William H. Orrick |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................................... iii

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................. 2

III. LEGAL STANDARD ..................................................................................................... 7

IV.  ARGUMENT .................................................................................................................. 8

    A.  The Court Should Be Concerned About The Continuing Existence And Integrity Of Nonparty Evidence In The Absence Of An Order Directing Preservation. ......................... 9

    B.  BSD Is Likely To Suffer Irreparable Harm Absent An Order Directing Preservation. ...... 11

    C.  The Nonparty Streaming Partners And Content Providers Should Be Capable Of Preserving The Evidence. ................................................................................................. 13

V.   CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063 (C.D. Cal. 2009) ............................................. 8

*Artec Grp., Inc. v. Klimov*, No. 15-CV-03449-RMW, 2016 WL 4474614 (N.D. Cal. Aug. 25, 2016) ........................................................................................................................................ 8

*Bright Solutions for Dyslexia, Inc. v. Doe 1*, No. 15-CV-01618-JSC, 2015 WL 5159125 (N.D. Cal. Sept. 2, 2015) ................................................................................................................ passim

*Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2015 WL 396010 (N.D. Cal. Jan. 29, 2015), *aff'd*, 639 F. App'x 639 (Fed. Cir. 2016) .................................................................. 3, 13

*Gay v. Parsons*, No. 16-CV-05998-CRB (PHK), 2024 WL 4224893 (N.D. Cal. Sept. 17, 2024) 12

*Martin v. Johnson*, No. 2:20-CV-11342-SB-SHK, 2022 WL 17224707 (C.D. Cal. Jan. 19, 2022) 8

*U.S. ex rel. Staggers v. Medtronic, Inc.*, No. 1:15-CV-392-TSC-RMM, 2022 WL 4078969 (D.D.C. Sept. 6, 2022) .............................................................................................................. 12

*United States v. Corbett*, No. 219CR107KJMEFBP, 2020 WL 6318434 (E.D. Cal. Oct. 28, 2020) ............................................................................................................................................. 10, 12

*Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 3564847 (N.D. Cal. Sept. 13, 2010) ........................................................................................................................................ 8

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 26, 2025, or as soon thereafter as the matter may be heard before the Honorable Judge William H. Orrick via Zoom videoconference or in Courtroom 2, Seventeenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff B.S.D. Crown, Ltd. ("BSD") will and hereby does move for a preservation order directed at Defendants' nonparty streaming partners and content providers. BSD's motion is based on this notice of motion, the within memorandum of point and authorities, the proposed order submitted herewith, all exhibits and other papers on file in this action, such other evidence and argument as may be presented at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to the inherent and implied powers of this Court, Plaintiff BSD Crown, Ltd. ("BSD" or "Plaintiff") moves for a preservation order to preserve relevant information in the possession of nonparty streaming partners and content providers of Defendants Amazon.com, Inc. ("Amazon.com"), Amazon Web Services, Inc. ("AWS"), and Twitch Interactive, Inc. ("Twitch") (collectively, "Defendants"). In support of its motion, BSD, by and through its attorneys, states as follows:

**I.     INTRODUCTION**

This case concerns Defendants' infringing use (between 2017 and 2019) of real-time media streaming systems covered by U.S. Patent No. 6,389,473 (the "'473 Patent"). A stay of litigation, which issued on March 29, 2024 (ECF No. 109) due to the Unified Patents *ex parte* reexamination (terminated in BSD's favor), and maintained (ECF No. 116) at Defendants' request for a follow-on reexamination, threatens BSD with undue prejudice in the form of evidence spoliation.

Central to this case is whether Defendants' live broadcasts practiced "real-time" streaming or, instead, too much latency in such transmissions (*i.e.*, lag or delay) rendered them non-infringing. To prove its case, BSD has sought to determine the measure of Defendants' video stream latency.

1. Defendants have met those efforts with unjustified deflection. On the one hand, Amazon and Twitch assert that latency evidence is **solely** in the possession of Defendants' nonparty streaming partners and content providers and thus wash themselves of responsibility. Yet on the other hand, they nonetheless refuse to identify those mystery parties. Specifically, Defendants have withheld streaming agreements that would identify their partners and content providers, thereby preventing BSD from issuing subpoenas directed to critical latency data, among other topics. This delay is not mere garden variety recalcitrance. By impeding discovery in conjunction with a stay of litigation, Defendants unfairly exploit the passage of time. Through a tactical series of reexaminations that triggered a stay of litigation already lasting nearly a year and that could extend for several more (if appeals are required), Defendants hope time will erode critical evidence knowing that without a preservation order, nonparty streaming partners and content providers may destroy latency data in accordance with common document retention policies.

Three factors favor the issuance of an order to preserve critical evidence. First, while BSD has no way of knowing the document retention policies of Defendants' streaming partners and content providers, there exists material concern that latency evidence will be destroyed because, without a preservation obligation, and as time passes, third parties' normal document retention policies are likely to lead to the destruction of important evidence. Second, as Defendants' discovery responses allege that these nonparties are the only source of latency data, BSD is certain to suffer irreparable harm without an order preventing the destruction of this critical information. Finally, BSD's requested relief is demonstrably reasonable given BSD's willingness to narrow pertinent subject matter, despite the risk it may incur by not seeking wholesale preservation of *all* relevant evidence – which would be the standard if a litigation stay were not in place.

For these reasons, BSD respectfully requests that the Court grant the Motion and order Defendants to identify their top 50 streaming partners and content providers by revenue for each of the three categories of Accused Instrumentalities (150 total) and notify such third parties to preserve critical evidence.

## II.    BACKGROUND

In January 2023, BSD filed this lawsuit against Defendants for infringement of the '473

1  Patent. ECF No. 1. In July 2023, BSD identified Accused Instrumentalities and asserted claims 1,
2  2, 8, 9, 10, 11, 12, 13, 14, 21, 23, and 24. Declaration of Francisco Villegas ("Villegas Dec."), dated
3  Feb. 11, 2025, Ex. 1 at 2 (BSD Patent L.R. 3-1 Disclosures). The Accused Instrumentalities (also
4  called "Accused Products") include three categories of infringing services (each comprised of
5  various media subsystems): (1) Amazon.com/AWS live HLS streaming; (2) Amazon.com/AWS
6  live MPEG-DASH streaming, and (3) Twitch live streaming.[1] *Id*. at 3.

7  The '473 Patent is now expired, and thus, the only infringement at issue in this case occurred
8  between January 5, 2017 and March 24, 2019—between 6-8 years ago.

9  Video stream latency is very important to this case. Quite simply, too much delay could
10 result in non-infringement, as this Court has held that "real-time broadcasting" means
11 "simultaneous transmission of data to one or more clients matching the human perception of time
12 or proceeding at the same rate as a physical or external process." *See* ECF No. 105, Claim
13 Construction Order, at 6. While instantaneous video streaming is not required by the Asserted
14 Claims, it will be determined at trial how much latency is permissible under the '473 Patent. The
15 issue of "how much" was one of the core issues in prior litigation against Apple Inc, *Emblaze Ltd.*
16 *v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2015 WL 396010, at *6 (N.D. Cal. Jan. 29, 2015), *aff'd*,
17 639 F. App'x 639 (Fed. Cir. 2016), and BSD believes it to remain one here, too.

18 Since its Complaint, BSD knew that nonparties would play an important role. ECF No. 1
19 ¶6 ("Amazon provides live streaming services for numerous content providers, including at least
20 the NFL, Viacom, PAC-12 Conference, Notre Dame, 2018 Olympics, and 2018 World Cup"). As
21 these were unlikely to be Defendants' only streaming partners, from the outset BSD notified
22 Defendants of the need to identify all such entities. *See* ECF No. 45 at 3-4 (Jun. 14, 2023 Joint Case
23 Management Statement) ("BSD anticipates needing discovery on . . . Defendants' agreements with
24 affiliates and third parties to provide video streaming products and services"). Shortly thereafter,
25 BSD followed-up with discovery seeking the identification of additional "customers":

---

[1] The first two categories include the AWS Elemental MediaLive and AWS Elemental Live (collectively, "AWS Media Services"). These products can be used in an infringing manner with AWS Elemental MediaPackage and AWS Elemental Delta. *Id.*

- 3 -

> "All licenses . . . that [You] granted or received concerning the Accused Products," (Twitch, AWS and Amazon.com RFP No. 8), and
>
> "All agreements between You and any of Your live stream partners and content providers. . .," (Twitch RFP No. 43; AWS RFP No. 55; Amazon.com RFP No. 44) (collectively, the "Nonparty Agreement RFPs").[2]

BSD also knew that latency would be a core issue in this litigation. It promptly issued Defendants an interrogatory to learn the end-to-end latency of the Accused Instrumentalities. AWS responded in August 2023, stating that "the end-to-end latency depends upon many factors, including the components of the Elemental Media Services used as well as factors outside of AWS's control."[3] Villegas Dec. Ex. 2 at 4 (AWS Responses to BSD's Second Set of ROGS, No. 2). Moreover, AWS asserted that "[i]mplementation by AWS customers of the Elemental Media Services for live video streaming **varies widely from customer to customer** due to the inherent flexibility and customization offered by the suite of available tools." *Id*. at 6 (emphasis added). And for these reasons, AWS claimed that it, "**does not** have a business need to **measure or record** the **latency** of any specific customer setup or individual live video stream." *Id*. (emphasis added). Defendants' counsel confirmed the same thing as to Twitch:

> As to AWS, we explained that customer implementations of the Elemental Media Suite of tools vary extensively, and necessarily so too does latency. … Similarly, as to Twitch, we explained the variability in latency from stream-to-stream….

*See* ECF No. 111-6, R. Brewer Letter to K. Gottuso dated Aug. 26, 2023, at 1.

In parallel to its brewing discovery dispute with Defendants, BSD began work on third-party discovery based on purely public information. On January 12, 2024, BSD issued a subpoena to Paramount Global (the "Paramount Subpoena"). Villegas Dec. Ex. 4. There, BSD requested documents pertaining to several important latency topics:

---

[2] These requests can be found at ECF No. 102-1 at 3 (RFPs to Twitch 7-32), ECF No. 102-2 at 4 (RFPs to Twitch 33-87); ECF No. 102-7 at 3 (RFPs to AWS 7-44), ECF No. 102-8 at 4 (RFPs to AWS 45-99), ECF No. 102-13 a 3 (RFPs to Amazon.com 7-33), and ECF No. 102-14 at 4 (RFPs to Amazon.com 34-88).
[3] Amazon.com adopted AWS's position, responding to the same interrogatory, "Amazon has no responsive information that is not also possessed by AWS or Twitch." Villegas Dec. Ex. 3 at 4.

> RFP No. 3: "All documents that show the relationship between Segment Duration or Data Slice duration (including, but not limited to, those in the Accused Products) and the End-to-End Latency of Live video."
>
> RFP No. 15: "All documents and communications that show the importance of latency (including, but not limited to, End-to-End Latency) to Your Live streaming business …".
>
> RFP No. 16: "Documents sufficient to show the End-to-End Latency of each of Your Live streaming when using HLS or MPEG-DASH with the Accused Products during the Damages Period."
>
> RFP No. 18: "Documents sufficient to show all Segment Duration(s) and Data Slice duration(s) of Your HLS and/or MPEG-DASH Live streams using the Accused Products during the Damages Period."

*Id*.

After nearly three months of fruitless meet and confers (ECF No. 102 at 7), Defendants refused BSD's demands to provide documents identifying its nonparty streaming partners and content providers, as well as damages materials sought in other disputed RFPs[4] (Twitch RFP Nos. 10 and 44; AWS RFP Nos. 10 and 56, and Amazon.com RFP Nos. 10 and 45). Thus, BSD filed a Joint Discovery Letter on March 5, 2024 (the "Joint Letter"). ECF No. 102 at 1–2.

In the Joint Letter, BSD explained that the requested agreements between AWS and nonparty partners and content providers were relevant because they could show critical infringement information, including "broadcast parameters and requirements [that would] allow[] BSD to properly segregate infringing streams from arguably non-infringing activities." ECF No. 102 at 1. Additionally, as described in the Joint Letter, the agreements could "provide essential damages information." *Id*. At a minimum, however, these agreements would identify the nonparty "customers" that Defendants asserted were the **only** custodians of critical latency data.

In response, Defendants argued that it would be unduly burdensome to produce "potentially hundreds of [AWS] agreements," yet at the same time, self-servingly attempted to wash themselves of liability by claiming that AWS's "customer[s] ultimately set[] the broadcast parameters for the

---

[4]  These requests can be found at ECF No. 102-1 at 3, ECF No. 102-2 at 4; ECF No. 102-7 at 3, ECF No. 102-8 at 4, ECF No. 102-13 a 3, and ECF No. 102-14 at 4.

accused products" (*id*. at 4)—"broadcast parameters," meaning media processing settings that could impact latency. Twitch, on the other hand, claimed that most of its streamer relationships—which it suggested numbered in the thousands ("more than 30,000 agreements with U.S. monetized streamers," *id*.)—were governed by standard terms and conditions, but that its largest streaming partners received bespoke agreements. *Id*. at 1-2. Other than producing standard form agreements devoid of any streaming partner or content provider information, Twitch also refused to comply with its discovery obligations.

Before the Joint Letter was resolved and prior to receiving documents from the Paramount Subpoena, the Court stayed the case due to the United States Patent and Trademark Office ("USPTO") issuing an office action in an *ex parte* reexamination filed by nonparty Unified Patents, LLC, rejecting the challenged claims. On July 2, 2024, the USPTO concluded the reexamination by confirming the patentability of all of the challenged claims. ECF No. 111-1. On July 18, 2024, BSD moved to lift the stay in light of the challenged claims confirmed validity. ECF No. 111. Defendants, however, informed the Court that the stay should not be lifted because they intended to file their own reexamination in short order. ECF No. 113 at 1. BSD argued that lifting the stay was warranted, in part, due to spoliation concerns because Defendants' nonparty streaming partners and content providers "are crucial witnesses and not mere ancillary actors" and that these "non-parties possess key infringement information, such as essential stream latency data, that resides only with them." ECF No. 111 at 12; *see also* ECF No. 114 at 10. While the Court ultimately declined to lift the stay, it acknowledged BSD's spoliation concerns and stated that BSD may raise the issue at the next case management conference. ECF No. 116 at 2.

On August 15, 2024, Amazon filed its *ex parte* reexamination, which the USPTO ordered on November 8, 2024. ECF No. 121-1. This second reexamination may add significant delay to this litigation. The average length of time for an *ex parte* reexamination is 25.2 months—over two years, and often longer. ECF No. 104-1 at ¶ 7(a).

Since the USPTO ordered the second reexamination, BSD has attempted to convince Defendants, at the very least, to identify their nonparty streaming partners and content providers, while agreeing that discovery of the agreements themselves is unnecessary for now. In subsequent

- 6 -
PLAINTIFF'S MOTION FOR PRESERVATION ORDER
3:23-CV-00057-WHO

1  Joint Case Management Statements in October and November 2024 (ECF No. 118 at 3–5; ECF No. 121), and at a November 26, 2024 Case Management Conference (ECF No. 122), BSD again informed the Court of its nonparty spoliation concerns. During that conference, the parties agreed to discuss the spoliation issue.

Following a meeting on December 10, 2024, BSD sent a letter to Defendants asking them to identity their "top fifty (50) (by revenue) of Defendants' streaming partners/clients" corresponding to the three categories of infringing instrumentalities—150 total nonparties. Villegas Dec. Ex. 5, F. Villegas Letter to N. Sabri dated Dec. 24, 2024, at 1. BSD offered to "further mitigate time and expense" by "send[ing] the preservation notices" itself to these nonparties. *Id*. at 2. On January 7, 2025, Defendants rejected BSD's proposal, arguing it consisted of "a set of interrogatories, while the litigation is stayed, that would unreasonably burden both Defendants and third parties based on a supposition that some of those third parties may have discoverable information." Villegas Dec. Ex. 6, N. Sabri Email to F. Villegas dated Jan. 7, 2025, at 1. Defendants countered by offering not to object to the issuance of "preservation notice[s] to the third parties identified in BSD's initial closures and in the October 8, 2024, Joint Case Management Statement" (*id*.)—a mere seven (7) third parties based solely on public information. On January 10, 2025, BSD notified Defendants that it "cannot accept such a limitation on the preservation of discovery," to which Defendants on January 14, 2025 confirmed would oppose any requested spoliation relief. *Id*.

## III.  LEGAL STANDARD

"Once a complaint is filed, parties to a lawsuit are under a duty to preserve evidence that is relevant or could reasonably lead to the discovery of admissible evidence." *Bright Solutions for Dyslexia, Inc. v. Doe 1*, No. 15-CV-01618-JSC, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015) (internal quotation omitted). "Federal courts have the implied or inherent power to issue preservation orders as part of their general authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Artec Grp., Inc. v. Klimov*, No. 15-CV-03449-RMW, 2016 WL 4474614, at *1 (N.D. Cal. Aug. 25, 2016) (quoting *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009)) (cleaned up). "'Before additional measures to preserve evidence are implemented, there must be some showing that there is reason for the court

- 7 -

to be concerned that potentially relevant evidence is not being preserved and that the opposing party may be harmed as a result.'" *Id*. (quoting *Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010)).

When deciding whether a preservation order should issue, courts in this circuit generally consider three factors:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence;
> (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and
> (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.

*Bright Solutions*, 2015 WL 5159125, at *2. Importantly, "[f]ederal courts also have authority to order third parties to preserve evidence in cases where the above factors weigh in favor of such orders." *Martin v. Johnson*, No. 2:20-CV-11342-SB-SHK, 2022 WL 17224707, at *1 (C.D. Cal. Jan. 19, 2022) (citing *Bright Solutions*, 2015 WL 5159125, at *3) (issuing a preservation order to nonparties where the three factors weighed in favor of issuance and "the entities that have the [evidence] Plaintiffs need are not parties and thus have no duty to preserve absent a court order").

## IV. ARGUMENT

BSD seeks an order preserving critical evidence from a 3-year span that Defendants assert is only in the hands of nonparties. This evidence includes: (1) latency information relating to infringement and (2) damages information. For latency, BSD seeks an order preserving evidence concerning: (a) media segment duration (*i.e.*, the size of video chunks nonparties selected to stream video, 2 seconds, 4 seconds, or more),[5] (b) end-to-end video transmission time data (*i.e.*, the latency value),[6] and (c) data concerning the time to perform the various steps of the '473 Patent, including the time required to provide, divide and encode a media segment, the time to upload a media segment from encoder/transmuxer/transcoder to an origin server, the time to download a media segment from the origin server to the client, and the time required by a client to decode a media

---

[5] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP Nos. 3, 18.
[6] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP No. 16.

segment.[7] For damages, BSD seeks information concerning (a) analytics of real-time streams (*e.g.*, the amount of real-time streams),[8] (b) business case documents (*i.e.*, the reason for using the infringing technology),[9] (c) actual/projected usage amounts,[10] (d) any non-infringing products or protocols considered as alternatives to the Accused Products and HLS/MPEG-DASH,[11] and (e) documents showing the importance of latency for live streaming.[12]

Because there is serious concern about the maintenance of the evidence in the absence of a court order, the near certain irreparable harm to BSD, and the nonparties' ability to preserve the evidence, the three *Bright Solutions* preservation factors weigh in BSD's favor.

### A. The Court Should Be Concerned About The Continuing Existence And Integrity Of Nonparty Evidence In The Absence Of An Order Directing Preservation.

Pertinent nonparty evidence is very likely not to be preserved. Because the '473 Patent is expired, the relevant evidence that BSD requires is from 2017 to 2019—between 6-8 years ago. Given its age, it is reasonable to believe that nonparties, without having notice of this lawsuit, may destroy pertinent information. For example, Section 802 of the Sarbanes-Oxley Act of 2002 requires the retention of financial and accounting records for seven years after a review of financial statements. *See* Pub. L. No. 107-204, 116 Stat. 745 (2002). Indeed, Defendants recently have implied that they have not notified any of their streaming partners and content providers of this lawsuit—let alone that they need to preserve evidence. *See, e.g.,* Villegas Dec. Ex. 6, N. Sabri Email to F. Villegas dated Jan. 7, 2025, at 1 (suggesting that even as to third-parties identified in BSD's complaint and subsequent disclosures, Defendants have not provided any notice of this litigation and instead proposed that "BSD send preservation notices to the third parties identified in BSD's initial disclosures and in the October 8, 2024, Joint Case Management Statement (Dkt. No. 118) [(Pac-12 Conference, National Football League, University of Notre Dame, International Olympic

---

[7] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP Nos. 18, 23, 25, 26, 27, 28, 29.
[8] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP No. 7.
[9] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP No. 8.
[10] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP No. 11.
[11] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP Nos. 9, 12, 13.
[12] *See, e.g.*, Villegas Dec. Ex. 4, Paramount Subpoena at RFP No. 15.

- 9 -

Committee, Fédération Internationale de Football Association (World Cup), NBC Universal Media, LLC, and Paramount Global)].").

Defendants' proposal to send preservation notices to a handful of publicly known nonparties out of AWS's hundreds, and Twitch's thousands, of streaming partners and content providers (ECF No. 102 at 4, Joint Discovery Letter), is not sufficient.[13] This is especially true, and "[t]he need for [a preservation] order is all the more pressing here, where the entities that have the information Plaintiffs need are **not parties** and thus have **no duty to preserve absent a court order**." *Bright Solutions*, 2015 WL 5159125, at *3 (emphasis added); *see also United States v. Corbett*, No. 219CR107KJMEFBP, 2020 WL 6318434, at *2 (E.D. Cal. Oct. 28, 2020) ("[T]he court finds that, absent a preservation order, there is a significant possibility that the Sacramento County Jail may not 'maintain the integrity of the evidence in question,' since it is **not a party** to the underlying criminal action and **has no duty to do so**.") (emphasis added).

Although BSD does not have access to the specific document retention policies of the relevant nonparties, it is not for lack of trying. At the end of June and early July 2023, BSD issued the Nonparty Agreement RFPs, seeking Defendants' licenses and agreements with streaming partners and content providers pertaining to the Accused Products. When Defendants failed to comply with these discovery requests after months of deficiency letters, BSD ultimately asked the Court to compel their production. ECF No. 102 at 1–2. Prior to the resolution of that discovery dispute, however, the Court stayed the case due to the Unified Patents reexamination. ECF No. 109. This left BSD without access to documents that would reveal the identities of Defendants' largest streaming partners and content providers. Despite this issue having been raised in two Joint Case Management Statements (ECF No. 118 at 3-5; ECF No. 121 at 1), and at the November 2024 Case Management Hearing, Defendants refuse to meaningfully cooperate in the mitigation of evidence spoliation. Defendants rejected BSD's offer to limit preservation obligations to only three categories of latency information, refusing to identify even a single streaming partner or content

---

[13] While BSD was able to send a document subpoena to Paramount Global prior to the Stay, it had yet to send them to the remaining known nonparties, in part because it wanted to first review the agreements sought in the Nonparty Agreement RFPs so that it could identify the largest of the nonparty streaming partners and content providers.

provider/client. Villegas Dec. Ex. 6, N. Sabri Email to F. Villegas dated Jan. 7, 2025, at 1. Defendants' counterproposal, that BSD send preservation notices to only seven (7) nonparties, was farcical.

BSD's proposal was a good-faith effort to compromise in view of the ongoing stay of litigation. It carried real risk, as mere preservation letters may not impose a preservation duty on nonparties.[14] *See Bright Solutions*, 2015 WL 5159125, at *2 (nonparties "have no duty to preserve absent a court order"); *see also U.S. ex rel. Staggers v. Medtronic, Inc.*, No. 1:15-CV-392-TSC-RMM, 2022 WL 4078969, at *5 (D.D.C. Sept. 6, 2022) ("But Relators' entreaties would be *requests*, not *orders*, and this Court will not wait for a physician to refuse Realtors' [*sic*] request before exercising its authority to preserve vulnerable evidence relevant to this case.") (emphasis in original). Preservation letters are only effective if the nonparties were ultimately determined to be "interested part[ies]," and thus have had their "own independent duty to preserve evidence" after receiving "notice of actual or pending litigation." *Gay v. Parsons*, No. 16-CV-05998-CRB (PHK), 2024 WL 4224893, at *4 (N.D. Cal. Sept. 17, 2024).

Here, Defendants have neither notified the nonparties of this litigation, nor provided the requested agreements to determine if the nonparties are "interested parties." Having refused any compromise, a preservation order is necessary to establish an enforceable duty to preserve evidence.

**B.     BSD Is Likely To Suffer Irreparable Harm Absent An Order Directing Preservation.**

If the Court does not issue a preservation order, BSD will be irreparably harmed because only Defendants' nonparty streaming partners and content providers possess critical evidence. In addition to important damages information, nonparties are likely to possess necessary evidence concerning the latency of their streaming systems that utilize Defendants' technology—evidence

---

[14]   Without having seen the requested nonparty agreements, BSD cannot state with any certainty whether Defendants have "control" over the nonparty evidence, and thus cannot know whether Defendants had a duty to preserve it. *See, e.g., Lofton v. Verizon Wireless (Vaw) LLC*, 2014 WL 10965261, at *1 (N.D. Cal. Nov. 25, 2014) (control established by audit provision stating that defendant "shall have the right, at all times, to examine and audit records").

necessary for infringement that Defendants assert only the nonparties possess. *See Bright Solutions*, 2015 WL 5159125, at *3 (finding irreparable harm if "necessary evidence of infringement" was not preserved); *see also Corbett*, 2020 WL 6318434, at *2 (finding "irreparable harm" where the evidence "cannot be replicated by other means").

The importance of latency evidence is illustrated by the Court's claim construction order. Specifically, the Court held that the term "real-time broadcasting" requires infringing systems to include the "simultaneous transmission of data to one or more clients matching the human perception of time or proceeding at the same rate as a physical or external process." *See* ECF No. 105, Claim Construction Order, at 6. If a system has too much latency (*i.e.*, lag), then that is highly relevant to whether it is sufficiently "real-time" to practice the '473 Patent. *See* ECF No. 105, Claim Construction Order, at 8 (recognizing that in BSD's previous case against Apple Inc., Judge Grewal denied BSD's Motion for a Judgement as a Matter of Law concerning the claim term "real-time broadcasting" where defendant had "incorporated significant delays of up to thirty seconds" (citing *Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2015 WL 396010, at *6 (N.D. Cal. Jan. 29, 2015), *aff'd*, 639 F. App'x 639 (Fed. Cir. 2016))).

Importantly, in their August 2023 interrogatory responses, Defendants indicated that **only** nonparties possess essential stream latency data. When asked about the end-to-end latency of the infringing instrumentalities, AWS and Amazon.com responded that, "[i]mplementation by AWS customers of the Elemental Media Services for live video streaming **varies widely from customer to customer** due to the inherent flexibility and customization offered by the suite of available tools." *Id*. at 6 (emphasis added). For these reasons, AWS and Amazon.com claimed they "**do[] not** have a business need to **measure or record** the **latency** of any specific customer setup or individual live video stream." *Id*. (emphasis added). Defendants' counsel confirmed the same thing in correspondence as to Twitch. ECF No. 111-6, R. Brewer Letter to K. Gottuso dated Aug. 26, 2023, at 1 ("Similarly, as to Twitch, we explained the variability in latency from stream-to-stream"). If Defendants' discovery responses are accurate, then without nonparty latency evidence of infringing systems, it will be extremely difficult, if not impossible, for BSD to prove

infringement. Thus, BSD will suffer irreparable harm without a preservation order because it will not have access to critical infringement and damages evidence.

### C. The Nonparty Streaming Partners And Content Providers Should Be Capable Of Preserving The Evidence.

Finally, nonparty streaming partners and content providers should be capable of preserving pertinent evidence. The scope of information to be preserved is limited to specific and narrow evidence concerning infringement (*i.e.*, latency) and damages over a limited 3-year period between 2017 to 2019. While it is not possible for BSD to know the full capabilities of the still unidentified nonparties, it should not be difficult for Defendants' largest (and likely most sophisticated) partners and content providers to preserve a limited set of materials concerning infringement and damages during a 3 year period.

## V.  CONCLUSION

For the above stated reasons, BSD respectfully requests the Court grant its Motion for Preservation Order.

Dated: February 11, 2025

By: /s/ *Mark W. Halderman*
Francisco A. Villegas (Bar No. 206997)
Mark W. Halderman (*pro hac vice*)
VILLEGAS & CEFO LLP
1350 Avenue of the Americas, Floor 2
New York, NY 10019
Telephone: (646) 844-1071
fvillegas@villegascefo.com
mhalderman@villegascefo.com

Kyle G. Gottuso (*pro hac vice*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
kgottuso@atllp.com

*Attorneys for Plaintiff
BSD Crown, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2025, I caused the service of the foregoing on counsel of record via ECF filing, including on the following:

Stefani E. Shanberg
Robin L. Brewer
Nathan B. Sabri
Mathieu A. Swiderski
Karl M. Johnston
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
sshanberg@perkinscoie.co
rbrewer@perkinscoie.com
nsabri@perkinscoie.com
mathieuswiderski@perkinscoie.com
kjohnston@perkinscoie.com

*Attorneys for Defendant Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc.*

By: */s/ Evan Rosenbaum*

CERTIFICATE OF SERVICE                                                                 3:23-CV-00057-WHO