UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BSD CROWN, LTD.,<br><br>       Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INTERACTIVE, INC.,<br><br>       Defendants. | Case No. 3:23-cv-00057-TSH<br><br><br>**JOINT DISCOVERY STATUS REPORT** |

Dear Honorable Judge Hixson:

Plaintiff BSD Crown, Ltd. ("BSD") and Defendants Twitch Interactive, Inc. ("Twitch"), Amazon.com, Inc. ("Amazon"), and Amazon Web Services, Inc. ("AWS") submit this joint discovery status report.

**Update Regarding Discovery Disputes from February 25 Hearing**

**BSD RFP Nos. 8, 10, 43 (Licenses and agreements for the accused products)**

**Defendants' Position**

**Twitch agreements with U.S. content creators**: Twitch identified the top 100 U.S. content creators during the period of January 2017 to March 2019 and produced agreements for all but four content creators on March 20, 2026. Twitch has sent notices to the remaining content creators and anticipates production in the coming weeks depending upon notice requirements.

**AWS agreements with customers**:

**Defendants' Position**

BSD requested the production of the agreements for the top 75 U.S. customers, which represents more than a quarter of the companies that purchased Elemental on-premise devices during the damages period. The agreements collected so far have been either Elemental Master Purchase Agreements or AWS Enterprise Agreement, and each incorporate NDAs, which govern the notice requirements. The AWS Enterprise Agreements are directed to all AWS services and generally make no specific mention of Elemental or any Elemental products or services. Defendants further explained that in addition to the Elemental Master Purchase Agreements and the AWS Enterprise Agreements, customers could sign a click-through agreement when purchasing the accused products. AWS is not able to identify customers that signed a click-through agreement from that time period. Customers could also purchase the Elemental on-premise devices through a distributor and would not execute an agreement with AWS.

As to cloud services, such as MediaLive and MediaPackage, there is no reliable data from before 2020 to enable Defendants to identify particular customers. AWS has aggregate data that is not customer or region specific.

Defendants offered to produce the Master Purchase Agreements and the Enterprise Agreements that have been pulled once notice provisions are complied with. Defendants also offered to produce all of the Elemental Master Purchase Agreements from the damages period, which amounts to about 16 agreements. As explained on the April 6, 2026 conferral with BSD, MediaLive is a cloud service and Defendants cannot verify who MediaLive customers were prior to 2020. Cloud services were associated with either a click through agreement, for which Defendants do not have records of who agreed to the click through agreement, or AWS Enterprise Agreements, which do not mention particular products. Defendants explained on the April 6, 2026 conferral that they do not have customer level data to determine which customers may have used MediaLive or MediaPackage in the United States during the damages period.

BSD's assumption that these agreements cover live streaming from end to end and cover the most pertinent revenue suggests a misunderstanding as to what is set forth in these agreements. As Defendants have explained, the accused cloud services are governed by either the AWS Enterprise Agreement, which generally make no specific mention of Elemental or Elemental products or

1

services, or a click through agreement. AWS has produced its revenue and other documents relevant to damages, which BSD has repeatedly ignored. As such, it is categorically untrue that that BSD is "left with no Amazon-produced damages data points." Defendants are willing to continue to meet and confer with BSD related to this issue, including the possibility of a manual search. BSD did not raise its suggestion of a manual review or what that would entail during the parties' meet and confer. Since it was not raised, Defendants are not sure what BSD is suggesting related to a manual review or the burden associated with this latest request. Defendants agree to continue to meet and confer with BSD to find a mutually acceptable solution.

In view of this information, BSD said it would consider the issue and information further. BSD made no mention of the NFL during the meet and confer, so Defendants had no opportunity to address the point BSD now raises in this letter. Defendants have not located an agreement with the NFL for the purchase and/or use of the Accused Instrumentalities and will meet and confer to with BSD regarding this issue. Defendants were focused on locating agreements relating to the Accused Instrumentalities (as requested in BSD's RFPs) rather than specific top customers. To the extent BSD wants Defendants to look for agreements with specific customers, Defendants are willing to meet and confer with BSD to identify those customers and search for those agreements.

**<u>BSD's Position</u>**

Amazon asserts that no searchable database exists for agreements prior to 2020. But its discovery obligations do not end simply because a centralized repository is unavailable. Amazon has not confirmed that it conducted a reasonable manual search for these materials. Just as it did in failing to thoroughly search individual custodians and instead relying on a central repository to locate documents that "should" have been placed there, here too Amazon does not appear to have conducted a thorough review. For example, despite BSD's patent complaint explicitly referencing Amazon's NFL broadcast streams (*e.g.*, Dkt. No. 1-3 at 13), Amazon would have the Court believe an agreement with such a high-profile client cannot be found.[1] These streaming agreements cover multiple important sources of important data. They cover live streaming from start to finish and account for at least the most basic sources of pertinent revenue such as the encoder (MediaLive), packager (MediaPackage), advertisement insertion (MediaTailor), and internet distribution (CloudFront). Amazon's own documentation explains this basic arrangement. *See, e.g.*, https://aws.amazon.com/blogs/media/frequently-asked-questions-about-the-cost-of-live-streaming/ (originally published Aug. 8, 2018, last accessed Apr. 8, 2026). Without such materials, BSD is left with no Amazon-produced damages data points, precisely the outcome Defendants seek.

Above, Defendants claim to be unaware of BSD's request for agreements relating to NFL streaming on AWS and Twitch. As the Court suggested during the hearing on BSD's motion to compel on this issue, Defendants' repeated insistence that they do not understand "what [BSD] would want" in its Requests for Production is unconvincing. Moreover, as the Court also has already noted, it is Defendants' obligation to identify and produce responsive discovery, not BSD's. In any event, the NFL was expressly identified in BSD's Complaint (Dkt. No. 1 at 3), along with other examples, including Viacom, PAC-12, Notre Dame, the 2018 Olympics, and the

---

[1] https://www.mux.com/blog/thursday-night-football-streaming-technology-showdown-amazon-prime-vs-twitch ("Recently Amazon started competing with itself for viewers by hosting Thursday Night Football on both Amazon Prime Video as well as Twitch (Reminder: Amazon acquired Twitch in 2016 for around $970M).") (last accessed Apr. 7, 2026).

2018 World Cup, and was again referenced in the June 14, 2023 Joint Case Management Conference statement (Dkt. No. 45 at 8). Any purported surprise therefore reflects a failure to conduct a reasonable search for responsive materials.

**BSD RFP No. 11 (Agreements concerning the acquisition of streaming businesses)**

<u>**BSD's Position**</u>

Defendants state that they have reviewed all potentially relevant acquisitions and identified four which they admit relate to video streaming, and each is temporally proximate to the date of the hypothetical negotiation: (1) the acquisition of Sye Media in 2020, (2) the acquisition of Twitch in 2014, which BSD agreed not to seek discovery into **if** Defendants provided specific financial documents, which Defendants have not produced; (3) the acquisition of RoofTop Media in 2014; and (4) the acquisition of Elemental in 2015. Each of these acquisitions may provide important datapoints for the damages experts to consider.

In its prior update, BSD explained that (1) Defendants are obligated to identify all responsive transactions, (2) to date, they have identified four, and (3) BSD understands that Defendants represent these four items comprise all responsive streaming acquisitions and no information is being withheld on relevance grounds. On that basis, BSD concluded that no further follow-up was necessary, and Defendants should promptly produce the responsive documents. The Parties met and conferred on this issue on April 6, 2026 at which time Defendants agreed to produce documents concerning the outstanding Sye Media, Elemental, and RoofTop Media acquisitions. BSD awaits this production.

A previously resolved issue has since reemerged. The parties agreed that, if Defendants produced financial projections from January 1, 2014 through December 31, 2015, BSD would not move to compel documents relating to the Twitch acquisition. BSD expected a good faith production of such projections, which are typically maintained in the ordinary course. Instead, Defendants produced a single, undated spreadsheet (TWITCH_0007513) and contend it satisfies the agreement. Based on BSD's experience, revenue projections are routinely generated and maintained. A single undated document, lacking custodial metadata and unilaterally selected by Defendants, does not constitute a good faith production of the requested materials. If Defendants do not produce a fulsome set of projections within one week, BSD will move to compel production of these financial materials, including the Twitch acquisition documents.

<u>**Defendants' Position**</u>

Defendants reviewed all potentially relevant acquisitions and identified four which relate to video streaming. Defendants identified those acquisitions to BSD on March 10, 2026. Defendants identified four transactions: (1) the acquisition of Sye Media in 2020, which post-dates the asserted patent's expiration; (2) the acquisition of Twitch in 2014, which BSD agreed not to seek discovery of; (3) the acquisition of RoofTop Media in 2014, which was an online comedy streaming service and was acquired by Audible for its content; and (4) the acquisition of Elemental in 2015.

Defendants are disappointed by BSD's decision not to honor the compromise reached by the parties six months ago. During a meet and confer in October 2025, BSD agreed to drop its request for Twitch acquisition documents, if Defendants would "search for and produce projections from the 2015 time frame for Twitch." *See* November 6, 2025 J. Miller email to E. Rosenbaum. Following a conferral in December, BSD confirmed its agreement to withdraw its requests pertaining to the Twitch acquisition "assuming [Defendants] provide the documents you've

promised." *See* December 18, 2025 E. Rosenbaum email to J. Miller. Twitch produced the 2015 projections it was able to locate after a reasonable search, but it was not able to locate projections for 2014. Twitch produced TWITCH_0007513 on January 15, 2026. The produced spreadsheet contains multiple tabs and reflects Twitch's projections from 2015. BSD has not explained why this spreadsheet is insufficient and what other documents it believes should exist. Defendants do not believe it is worth raising this issue further with the Court and will produce the Twitch acquisition agreement, but Defendants remain troubled by BSD's unwillingness to uphold its end of the agreement despite Defendants following through on its commitment.

**BSD RFP No. 44 (Marketing documents and negotiation materials with streaming partners and content providers)**

**Defendants' Position**

Twitch does not generally engage in joint marketing efforts with content creators. In performing its further searching, Twitch identified public documents relating to Twitch events from the damages period that involved content creators and have produced those documents. Twitch does not believe it possesses any additional documents relating to joint marketing efforts with content creators. AWS is also working to investigate whether it has engaged in any marketing with the customers for which it is producing agreements. Twitch and AWS have not identified any negotiations that occurred outside of email and are confirming.

**Update Regarding Other Discovery Disputes**

In accordance with the Court's March 13, 2026 Order (Dkt. No. 175) requiring the parties to file a discovery status report, the parties hereby provide a summary of discovery issues. The parties continue to meet and confer as to these issues.

**Production of Prior Litigation Materials Involving Asserted Patent (*Emblaze Ltd. v. Apple Inc.*, 11-cv-01079 (N.D. Cal.) and *Emblaze Ltd. v. Microsoft Corporation*, 3:12-cv-05422 (N.D. Cal.))**

**        *Apple* Litigation Materials**

**BSD's Position**

BSD has promised to produce (1) all non-privileged documents to which third parties do not object under the protective order in that case and (2) a list of all documents to which third parties object. Defendants' request for an index is unduly burdensome and will not add anything. At the April 6, 2026 meet and confer, BSD explained that any such index would merely duplicate BSD's *Apple* production, less documents withheld by third parties. When asked what additional information Defendants expected such an index to provide, Amazon's counsel was unable to identify any.

**Defendants' Position**

As of April 8, 2026, BSD has not produced a complete set of *Apple* litigation materials. Since the last joint discovery update, BSD made a small production of less than 6 documents from the *Apple* litigation. BSD still has not provided an index of the *Apple* litigation documents in its possession, custody, or control, not even the list of documents Apple objected to.

4

During the April 6, 2026 meet and confer, Defendants reiterated their concerns with BSD's inconsistent positions as to what BSD has of the *Apple* litigation materials as explained in the March 26, 2026 Joint Discovery Update. Without an index of all *Apple* litigation materials in BSD's possession, custody, or control, Defendants have no assurances that all materials have been produced. BSD confirmed that Cozen O'Connor has not transferred the files to BSD's current counsel. As such, BSD's current counsel cannot make accurate representations as to the completeness of its productions on behalf of BSD. Given BSD's continued delay to produce the *Apple* litigation documents and that there is no level of certainty what *Apple* litigation materials Cozen O'Connor has in its files let alone whether they have now all been produced or Apple objected to their production, Defendants intend to file a letter brief requesting the *Apple* litigation materials be transferred to BSD's current counsel, Villegas & Cefo, and that BSD be required to provide an index of all *Apple* litigation materials in its possession, custody, or control.

BSD is incorrect that Defendants could not "identify" what additional information might be provided by the index. Defendants have explained their reasoning on multiple occasions, including what they expect an index may reveal. The issue is that Defendants cannot know what BSD (via Cozen O'Connor) has or does not have nor does it seem that BSD's current counsel knows what Cozen O'Connor has. When Defendants have asked about additional materials, such as the sealed pleadings, Villegas & Cefo have gone back to Cozen O'Connor and then Defendants have been informed that they have at least some of the materials. The index is necessary to provide some level of assurance that all *Apple* litigation materials have been produced and there are no documents being improperly withheld.

### *Microsoft* Litigation Materials

**<u>BSD's Position</u>**

Defendants demand that BSD produce materials from prior litigation involving the asserted patent, *Emblaze v. Microsoft*. BSD has never "requested Defendants' help" or "requested Defendants obtain documents in Microsoft's possession." This RFP is from Defendants to BSD. BSD merely pointed out that the documents, if they still exist, are most likely to be in the possession of Defendants' current counsel because the same firm represented Microsoft in the prior litigation. Thus, it should be easier for Defendants to obtain the materials than BSD, who has confirmed it does not have possession, custody, or control of those materials. Rather than seek discovery from Microsoft directly, Defendants attempt to conscript BSD as an intermediary between Amazon and Microsoft. That is improper. If Defendants seek discovery from Microsoft, they should proceed by subpoena, not by demanding that BSD act on their behalf.

**<u>Defendants' Position</u>**

As Defendants previously explained, after BSD requested Defendants help to facilitate the production of *Microsoft* litigation materials from Perkins Coie's files, on March 2, 2026, Defendants provided an email to BSD for BSD to send to Microsoft to confirm its consent to provide BSD with *Apple* litigation materials in Microsoft's possession for production in this case. Defendants believe this is a reasonable request as it will confirm to Microsoft that BSD would not accuse Microsoft of having violated the Protective Order in its case by producing the requested documents. On March 4, 2026, BSD asked Defendants what materials Defendants believed had

not been produced already. Defendants responded the same day identifying numerous documents in Microsoft's possession that had not been produced by BSD. Defendants raised this issue on the April 6, 2026 conferral and BSD stated that Microsoft had not contacted BSD and that the documents sought are not in BSD's possession, custody, or control. Defendants once again explained that it was **BSD** that requested Defendants obtain documents in Microsoft's possession from Microsoft. Defendants' counsel cannot simply access those documents, and as a protective order applies to them, Microsoft wants BSD to confirm its agreement to Microsoft providing the requested materials. BSD now for the first time suggests Defendants should have subpoenaed Microsoft. A subpoena is not necessary, as the only impediment here is BSD's refusal to cooperate, not any refusal by Microsoft to produce. Defendants do not understand BSD's refusal to provide the requested consent to Microsoft and, coupled with BSD's shifting story on *Apple* litigation materials discussed above, causes Defendants concern that there is material in these prior litigation materials that BSD actively does not want Defendants to have.

**BSD's 30(b)(6) Responses and Designations**

**<u>Defendants' Position</u>**

Defendants served their 30(b)(6) notice to BSD on November 14, 2025. BSD served its objections and responses on January 7, 2026. The parties met and conferred regarding BSD's objections and responses on January 15, 2026. BSD confirmed at the conferral that it would provide revised objections and responses based on the parties' discussions. BSD reiterated this commitment on February 18, 2026 by phone and confirmed that it would provide updated objections and responses. A month later, on March 18, 2026, BSD served its updated objections and responses. These objections and responses were inconsistent with BSD's prior agreements and representations regarding numerous 30(b)(6) topics including a request to confer, for a third time, on the topics.

The parties conferred for a third time on the 30(b)(6) notice on April 6, 2026 related to BSD's revised positions. Related to Topics 12-14, 22 and 23 (set forth below in BSD's section), Defendants seek testimony regarding any facts BSD intends to rely on for its contentions on multiple issues. These topics relate to statements BSD has made in is complaint, its infringement contentions, or its damages contentions. The issue is a basic question of fairness and disclosure obligations. If BSD has knowledgeable individuals it can designate on the requested categories, or intends to rely on a fact witness or for its experts to rely on a fact witness when it offers an opinion in support of BSD's positions, then Defendants should be able to seek discovery related to those facts. BSD, however, refuses to designate any witness related to these facts supporting its contentions because, it says, it does not know whether its experts intend to rely on any fact witnesses or whether BSD intends to bring a witness to trial for these issues. Instead, BSD suggests that it will designate testimony related to these topics after the depositions are already complete. This defeats the purpose of seeking testimony on these topics. This case was filed in 2023 and it is now eight months since the stay was lifted (in addition to the year of discovery before the stay was granted). BSD has had plenty of time to marshal its facts and figure out its theories in this case. It should know at this point whether it or its experts intend to rely on any fact witnesses related to these issues, and it should either confirm it is not planning to rely on any fact witnesses and has no witnesses it can designate on the requested categories, or designate a witness for each of these topics.

For Topic No. 25, regarding the status and location of BSD's files from *Apple* and/or *Microsoft*, this issue is relevant given the importance of the previous litigation materials to Defendants' defenses, the fact that BSD has indicated it has no files from the *Microsoft* litigation and the inconsistent positions it has taken related to the *Apple* litigation materials. Further, BSD has produced *Apple* litigation materials from an individual custodian, raising the question as to why that custodian still has *Apple* litigation materials in his possession and what files are in the custodian's possession. A client presumably knows which counsel it has engaged and where its files are located. This information is not privileged. But BSD is taking the position that this information is privileged because the only way a corporate designee would be able to respond to questions on this topic is from being educated by an attorney. This does not make the *facts* requested by this topic privileged and BSD should have to designate a witness on this topic.

The parties are at an impasse as to certain topics as addressed above and Defendants intend to prepare a joint discover letter as to those topics. The parties agreed to continue discussions for Topic Nos. 20 and 27.

## **BSD's Position**

On April 6, 2026, the Parties met and conferred to discuss the outstanding issues. The parties were able to resolve several disputes, but the Parties disagree whether five contention deposition topics (Topics 12-14, 22, and 23) are appropriate, and Defendants have indicated that they will file a joint letter motion to compel responses. Topic 12 states: "All features of the HLS standard that were introduced after October 21, 2015 that BSD contends result in infringement of the '473 patent." Topic 13 states: "All facts, analyses, testing, and evidence supporting BSD's contention that the HLS standard infringes the asserted claims of the '473 patent, including how each limitation is practiced by the Accused Instrumentalities." Topic 14 states: "All facts, analyses, testing, and evidence supporting BSD's contention that the MPEG-DASH standard infringes the asserted claims of the '473 patent, including how each limitation is practiced by the Accused Instrumentalities." Topic 22 states: "BSD's position regarding the timing, parties, and circumstances of the hypothetical negotiation in this case." Topic 23 states: "The benefits and drawbacks of transmitting live video over the Internet using unaccused streaming protocols, including but not limited to the Real-time Streaming Protocol, the Realtime Transport Protocol ("RTP"), RTP-TS, the Real Data Transport protocol, the Real-time Messaging Protocol, WebDAV, Microsoft Smooth Streaming, MPEG-TS, Adobe HTTP Dynamic Streaming, and WebRTC." BSD maintains that, under the case law of this district, these contention deposition topics are more appropriately addressed by contention interrogatories. BSD will fully respond to Defendants' arguments after Defendants brief their portion of their proposed joint discovery motion.

Additionally, Defendants' Topic 25 seeks a 30(b)(6) designee to testify as to "[t]he status and location of BSD's files from the Apple Litigation and/or Microsoft Litigation." After a lead counsel meet and confer, BSD confirmed that it would not designate a witness on this Topic because it seeks attorney testimony from a 30(b)(6) witness. Moreover, the status and location of BSD's prior litigation files has no relevance to this case. BSD has already promised to produce *all* non-privileged documents related to those litigations in its possession, custody, or control and to which third parties do not object under the protective order in that case and will provide a list of

documents to which third parties have objected. Defendants do not need BSD's testimony relating to how BSD's former litigation attorneys store their files.

**BSD's Production of Email from Defendants' Custodian RFPs**

**BSD's Position**

Plaintiff's current and former employees are located in Israel. Given the current circumstances in the region, collection of emails was delayed. That collection is now complete, and Plaintiff is reviewing the materials for privilege as a substantial portion reflects attorney-client communications from prior litigation in the *Apple* and *Microsoft* matters. On April 6, Plaintiff updated Defendants as to the status of the privilege review and expects to make this production shortly.

**Defendants' Position**

Defendants served email RFPs in December 2025. On March 2, 2026, BSD expressed that the searches for Mr. Williger and Mr. Dgani had to be paused due to the escalating situation in Israel. BSD then stated that a production of these emails would occur "shortly" in the last joint discovery update. No production from either custodian has been made. At the April 6, 2026 conferral, BSD stated that Mr. Williger had almost no email to produce, but Mr. Dgani had approximately 1,000 emails—many of which were privileged communications from the *Apple* litigation. BSD indicated it was halfway done reviewing the documents for privilege and expected it would produce the documents by the end of the week.

**Defendants' Document Production from Individual Custodians:**

**BSD's Position**

Defendants still have not produced documents identifying any individual custodians. Despite multiple meetings, Defendants first indicated during a March 5, 2026 meet and confer that they had not conducted searches of files maintained by individual custodians. Defendants further suggested that BSD, rather than Defendants, should identify the relevant individuals to be searched. Following that discussion, Defendants stated they would consider undertaking identifying relevant individuals and conducting custodian-level document searches. On April 6, 2026, counsel indicated that they are still conducting that search and, again, that "relevant documents would have gone to central repositories." After prodding, counsel confirmed that they can confirm that there are no responsive documents on hard drives of *some* individual custodians likely to have relevant information, but Defendants still refuse to identify which individuals' files they have searched and still have not confirmed that the search is complete or indicated when the search will be complete, saying only that they are still working to identify relevant individual custodians ***more than 3 years into the litigation.***

This lack of custodian-level discovery has delayed BSD's depositions of Defendants' personnel, as document discovery informs the identification of key custodians, which in turn guides targeted email searches and ultimately the scheduling of depositions. Given that the deadline for the substantial completion of document production was on January 16, 2026, Defendants' continued

delay is inexcusable. BSD anticipates that a joint discovery statement will be necessary if Defendants do not promptly confirm that their search is complete.

**Defendants' Position**

BSD mischaracterizes Defendants' position on the meet and confers. Defendants conducted a reasonable search, including of custodians' files. As Defendants have repeatedly explained and as has been confirmed again upon further questioning, relevant documents were kept in central repositories, not individual files. Nonetheless, Defendants are conducting an additional search for responsive custodial documents with individuals at Twitch and AWS to confirm they do not have additional, non-duplicative documents to produce. That process is ongoing.

**Defendants' Initial Disclosures:**

**BSD's Position**

Defendants Initial Disclosures are deficient, identifying only two individuals from Twitch, neither of whom were employed during the relevant time period and two individuals from AWS and/or Amazon.com, only one of whom was employed during the relevant time period. Further, Defendants seem to be taking the mistaken position that they are only required to identify current employees, and since most of the employees with relevant information have since left the companies, they do not need to identify them. This is particularly troubling given the lack of documents, Defendants' deletion of former employees' emails, and because BSD has no other way of knowing which former-employee third parties are likely to have relevant information for depositions.

Despite the case being ***over three years old***, Defendants have failed to comply with their obligations under Rules 26(a)(1) or 26(e). The parties have met and conferred on this issue. Defendants stated months ago that they were working on a supplement. On April 6, 2026, Defendants again stated that they are working on a supplement but still could not provide a date certain by which that supplement would be complete. BSD anticipates that it will need to move to compel compliance with Federal Rule of Civil Procedure 26 to make sure that BSD knows who to subpoena for deposition testimony. This is especially important given Defendants' refusal to agree to additional depositions over the limit of ten, discussed below.

BSD is aware of no Federal Rule, Local Rule, or case law suggesting that the timing of a complaint excuses a defendant's failure to comply with its obligations under Federal Rule 26.

**Defendants' Position**

Defendants have committed to supplementing their initial disclosures and have informed BSD of relevant witnesses that they intend to include on the initial disclosures. It seems preferable that Defendants attempt to identify employees with relevant knowledge, but Defendants are not intending to limit their supplementation to only employees. Further, to the extent it has been difficult to identify relevant witnesses, much of that relates to the fact that BSD waited until four years after the patent expired to bring this case and is seeking discovery related to work done almost a decade ago. AWS will supplement its initial disclosures by April 13 and Twitch will

9

supplement its initial disclosures by April 17.

**BSD's Deposition Notices**

**BSD's Position**

In the last joint status update, Plaintiff indicated that it intended to file a joint statement seeking permission to take 18 depositions in this case. The Parties are at an impasse and BSD has provided Defendants with its portion of a joint statement. Once Defendants add their portion, the Parties will file the joint statement.

**Defendants' Position**

On April 6, 2026, BSD provided a draft joint letter regarding this issue. Defendants are reviewing the draft and will provide BSD with their position.

**Defendants' Prior Refusal to Provide Discovery from Alex Dunlap**

**BSD's Position**

Defendants have indicated that they are now willing to search for and produce emails from Mr. Dunlap and produce him for a deposition related to his work relevant to this litigation. Therefore, despite the delay caused by Defendants' prior improper refusal to produce his emails, this issue is resolved at this time.

**Defendants' Position**

Upon learning that Mr. Dunlap was no longer the Shadow Advisor to the CEO of Amazon and confirming Mr. Dunlap's new role, Defendants in good faith revised their position. There has been no unnecessary delay and BSD's commentary regarding delay is counter-productive. But as it indicates, this issue appears resolved.

**BSD's RFA Denials**

**Defendants' Position**

On March 25, 2026, BSD served its First Supplemental Responses to Interrogatory No. 23 and Requests for Admission Nos. 41-52, which seek clarification regarding the particular configurations of the Accused Instrumentalities that are accused in this litigation. BSD's response remains deficient and Defendants anticipate moving to compel given—from their perspective—BSD's continued failure to define the bounds of its infringement theories or explain how the HLS standard can infringe the '473 patent despite the non-infringement verdict in the *Apple* litigation. Notably, Defendants raise this issue here because BSD's supplemental responses effectively just restate BSD's initial responses to Defendants' RFAs. At the April 6, 2026 conferral, BSD stated it was not prepared to address this issue and suggested that BSD would either set up an additional conferral this week or confirm in writing that it would provide further supplementation. Defendants will follow up with BSD on this issue.

**BSD's Position**

10

Defendants' Requests for Admission Nos. 41-52 are intentionally vague and ambiguous and designed to confuse, taking one aspect of the allegations against the Accused Instrumentalities out of context from the rest of the case. In its supplemental responses, BSD sought to clarify its position and will continue to consider its responses given Defendants' failure thus far to understand that the allegations in this case do not depend on a single aspect of the Accused Instrumentalities.

**BSD's Responses to Defendants' Interrogatories**

<u>**Defendants' Position**</u>

On March 27, 2026, BSD served its responses and objections to Defendants' Sixth Set of Interrogatories. On April 2, 2026, Defendants served a letter identifying numerous deficiencies with BSD's responses. BSD outright refused to respond to Interrogatory Nos. 32-36 as BSD alleged Defendants' prior interrogatories were compound and as a result Defendants exceeded the limit of 50 interrogatories. Defendants' April 2 letter explained why this was improper. The letter also identified deficiencies with BSD's responses to Interrogatory Nos. 25, 27, 28, 29, and 30. At the April 6, 2026 conferral BSD agreed to provide substantive responses to Interrogatory Nos. 32-36 by Tuesday, April 14, 2026 and supplement its responses to Interrogatory Nos. 25, 27, and 28. However, the parties could not reach agreement regarding Interrogatory Nos. 29 and 30.

Defendants' Interrogatory No. 29 seeks identification of what aspects of HLS streams were found not to infringe in the *Apple* litigation. Instead of providing any explanation, BSD cites *over 120 pages* of the trial transcript from the *Apple* litigation. This is not a good faith response. BSD's response is an improper use of Federal Rule 33(d). Rule 33(d) permits a responding party to answer an interrogatory by directing the proponent to "a party's business records ... if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). BSD's citation to hundreds of pages of trial transcripts without explanation is plainly improper. A party "may not abuse the option…by directing the propounding party to a mass of undifferentiated records." *E&J Gallo Winery v. Cantine Rallo, S.p.A.*, No. 1:04cv5153 OWW DLB, 2006 WL 3251830, at *2 (E.D. Cal. Nov. 8, 2006); *Loop AI Labs Inc v. Gatti,* No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *2 (N.D. Cal. May 3, 2016); *LaserDynamics, Inc. v. Asus Comput. Int'l*, No. 2:06-CV-348, 2009 WL 153161 at *2, 2009 U.S. Dist. LEXIS 3878 at *8 (E.D. Tex. Jan. 21, 2009) ("The defendants' reliance on Rule 33(d) is improper. The interrogatories are directed to the functionality of the defendants' own products. It is implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate."). BSD is the party that brought the litigation against Apple and is the party best situated to explain the aspects of HLS streams that were found not to infringe in a trial that BSD litigated. At the April 6, 2026 conferral, BSD confirmed that it had "ideas" about what aspects of the HLS streams were found not to be infringed. BSD's counsel is familiar with the trial transcripts, the accused products in the *Apple* litigation, and the claims and defenses in that case. BSD's suggestion that it would be the same burden for Defendants to review the transcripts and attempt to discern the response to this interrogatory from it is incorrect.

Defendants' Interrogatory No. 30 seeks identification of each stream and/or broadcast using the Accused AWS Instrumentalities that BSD accuses of infringing the Asserted Claims of the '473 patent. BSD requested that the parties meet and confer regarding the scope of the interrogatory. At

the April 6, 2026 conferral, BSD requested clarification regarding what Defendants sought by this interrogatory. Defendants explained that because BSD was asserting a method claim against the Accused AWS Instrumentalities, BSD must identify specific instances where the method was performed. BSD's position, that its infringement contentions provide this information, is incorrect as the infringement contentions do not identify specific instances where the method was allegedly performed. BSD has acknowledged that it must provide this identification to meet its burden. Specifically, BSD stated that "[i]f Defendants' discovery responses are accurate, then without nonparty latency evidence of infringing systems, it will be extremely difficult, if not impossible, for BSD to prove infringement. Thus, BSD will suffer irreparable harm without a preservation order because it will not have access to critical infringement and damages evidence." Dkt. No. 123 at 12-13. As such, BSD has been aware for years that the information it seeks here is not in Defendants' possession and it is BSD's burden to prove its case. The information sought is relevant and BSD should identify any specific instances where the alleged method was performed so that Defendants can adequately prepare their defenses.

BSD's attempts to turn the blame on Defendants are unavailing. As AWS has said repeatedly since the beginning of the case, AWS does not know how individual streams are configured and cannot identify which stream used HLS, MPEG-DASH, or another protocol, and does not know what the segment size used in any of the streams. These are all configurable and were set by AWS's customers. AWS cannot provide information it does not have.

**BSD's Position**

Defendants served several interrogatories that are compound and contain multiple subparts that should be counted as separate interrogatories. As a result, they have served a total of 55 interrogatories, 5 more than the number permitted. At the April 6, 2026 conferral, in a good faith effort to resolve the dispute, and despite Defendants' refusal to respond to additional interrogatories, BSD agreed that it would not stand on its objections to some of those compound interrogatories and would provide supplemental responses to Interrogatories 32-36 if Defendants agreed that they would not assert a similar objection to BSD's outstanding interrogatories. BSD explicitly did not waive this objection as to Defendants' interrogatory seeking the bases for each of BSD's denials to any Request for Admission. BSD agreed to get back to Defendants about whether and when it would supplement responses to Interrogatories Nos. 25, 27, and 28.

As to Interrogatory No. 29 ("Describe in detail the characteristics of the HLS streams that were found not to infringe the '473 patent in [Apple]"), Defendants attempt to cast the outcome of that litigation as unclear. It is not. Defendants have long been aware that latency was a central issue in *Apple*. Indeed, at claim construction in this case, Defendants relied on Apple in an effort to misleadingly argue that a 15-second latency was non-infringing. Dkt. No. 85 at 9.

The evidentiary record from *Apple*, including the testimonial evidence cited by Defendants in this letter and the Apple expert's non-infringement slides (BSD 00052756–BSD 00052829), reflect the facts presented in *Apple* for purposes of non-infringement. To the extent Defendants seek detail regarding the HLS streams at issue in *Apple*, that information is equally available to both sides. There is no authority requiring a plaintiff to synthesize equally accessible materials for a defendant's convenience.

12

Defendants' Interrogatory No. 30 seeks information that is in the exclusive possession of Defendants or their customers (whom Defendants refuse to identify) and which Defendants have failed to provide in response to BSD's discovery. Once Defendants comply with their discovery obligations, BSD will consider whether a supplemental response is appropriate.

Respectfully submitted,

Dated: April 8, 2026

By: */s/ Francisco A. Villegas*
　　Francisco A. Villegas
　　VILLEGAS & CEFO LLP

　　*Counsel for Plaintiff*
　　BSD CROWN, LTD.

By: */s/ Robin L. Brewer*
　　Robin L. Brewer
　　Sheppard, Mullin, Richter & Hampton  LLP

　　*Counsel for Defendants*
　　AMAZON.COM, INC.,
　　AMAZON WEB SERVICES, INC., and
　　TWITCH INTERACTIVE, INC.

## FILER'S ATTESTATION

I, Robin L. Brewer, pursuant to Civil Local Rule 5-1(i)(3), attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing of the document.

Dated:  April 8, 2026

By: */s/ Robin L. Brewer*
　　Robin L. Brewer

13