UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BSD CROWN, LTD., | Case No. 3:23-cv-00057-TSH |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INTERACTIVE, INC., | **JOINT DISCOVERY STATUS REPORT** |
| Defendants. | |

Dear Honorable Judge Hixson:

Plaintiff BSD Crown, Ltd. ("BSD") and Defendants Twitch Interactive, Inc. ("Twitch"), Amazon.com, Inc. ("Amazon"), and Amazon Web Services, Inc. ("AWS") submit this joint discovery status report.

## Update Regarding Discovery Disputes from February 25 Hearing

**BSD RFP Nos. 8, 10, 43 (Licenses and agreements for the accused products)**

### Defendants' Position

**Twitch agreements with U.S. content creators**: Twitch identified the top 100 U.S. content creators during the period of January 2017 to March 2019 and produced agreements for all but four content creators on March 20, 2026. Twitch has sent notices to the remaining content creators and anticipates production this week of the remaining agreements absent objections.

**AWS agreements with customers**:

### Defendants' Position

BSD requested the production of the agreements for the top 75 U.S. customers, which represents more than a quarter of the companies that purchased Elemental on-premises devices during the damages period. The agreements collected so far have been either Elemental Master Purchase Agreements or AWS Enterprise Agreement, and each incorporate NDAs, which govern the notice requirements. The AWS Enterprise Agreements are directed to all AWS services and generally make no specific mention of Elemental or any Elemental products or services. Defendants further explained that in addition to the Elemental Master Purchase Agreements and the AWS Enterprise Agreements, customers could sign a click-through agreement when purchasing the accused products. AWS is not able to identify customers that signed a click-through agreement from that time period. Customers could also purchase the Elemental on-premise devices through a distributor and would not execute an agreement with AWS.

As to cloud services, such as MediaLive and MediaPackage, there is no reliable data from before 2020 to enable Defendants to identify particular customers. AWS has aggregate data that is not customer or region specific. As explained on the April 6, 2026 conferral with BSD, MediaLive is a cloud service and Defendants cannot verify who MediaLive customers were prior to 2020. Cloud services were associated with either a click through agreement, for which Defendants do not have records of who agreed to the click through agreement, or AWS Enterprise Agreements, which do not mention particular products. Defendants also explained on the April 6, 2026 conferral that they do not have customer level data to determine which customers may have used MediaLive or MediaPackage in the United States during the damages period.

Today, Defendants produced five of the Master Purchase Agreements and Enterprise Agreements and will produce the remaining two once notice provisions are complied with. Defendants offered to produce all of the Elemental Master Purchase Agreements from the damages period, but BSD has not yet responded to this offer.

BSD's assumption that these agreements cover live streaming from end to end and cover the most pertinent revenue suggests a misunderstanding as to what is set forth in these agreements. As Defendants have explained, the accused cloud services are governed by either the AWS Enterprise Agreement, which generally make no specific mention of Elemental or Elemental products or

services, or a click through agreement. AWS has produced its revenue and other documents relevant to damages, which BSD has repeatedly ignored. As such, it is categorically untrue that that BSD is "left with no Amazon-produced damages data points."

Defendants are willing to continue to meet and confer with BSD related to this issue, including the possibility of a manual search. BSD did not raise its suggestion of a manual review or what that would entail during the April 6 meet and confer or during the parties' most recent meet and confer on April 20. Since this has not been discussed, Defendants are not sure what BSD is suggesting related to a manual review or the burden associated with this latest request. Defendants agree to continue to meet and confer with BSD to find a mutually acceptable solution.

Regarding the agreements with streaming partners identified by BSD, Defendants are attempting to locate those agreements. Defendants will produce the relevant agreements to the specific streaming partners identified by BSD to the extent they can be located and notice provisions are complied with.

BSD continues to complain below about the scope of Defendants' search regarding the agreements at issue here despite Defendants explaining that these agreements simply will not provide relevant information. Defendants have produced over a hundred agreements with content creators and BSD has yet to explain whether those agreements revealed any relevant information. BSD continues to fail to justify the proportionality of their continued complaints.

**BSD's Position**

Amazon asserts that no searchable database exists for agreements prior to 2020. But its discovery obligations do not end simply because a centralized repository is unavailable. Amazon has not confirmed that it conducted a reasonable manual search for these materials. Just as it did in failing to thoroughly search individual custodians and instead relying on a central repository to locate documents that "should" have been placed there, here too Amazon does not appear to have conducted a thorough review. For example, despite BSD's patent complaint explicitly referencing Amazon's NFL broadcast streams (*e.g.*, ECF No. 1-3 at 13), Amazon would have the Court believe an agreement with such a high-profile client cannot be found.[1] These streaming agreements cover multiple important sources of important data. They cover live streaming from start to finish and account for at least the most basic sources of pertinent revenue such as the encoder (MediaLive), packager (MediaPackage), advertisement insertion (MediaTailor), and internet distribution (CloudFront). Amazon's own documentation explains this basic arrangement.  *See, e.g.*, https://aws.amazon.com/blogs/media/frequently-asked-questions-about-the-cost-of-live-streaming/ (originally published Aug. 8, 2018, last accessed Apr. 8, 2026). Without such materials, BSD is left with no Amazon-produced damages data points, precisely the outcome Defendants seek.

Defendants claimed to be unaware of BSD's request for agreements relating to NFL streaming on AWS and Twitch. As the Court suggested during the hearing on BSD's motion to compel on this issue, Defendants' repeated insistence that they do not understand "what [BSD] would want" in its Requests for Production is unconvincing. In any event, the NFL was expressly identified in

---

[1] https://www.mux.com/blog/thursday-night-football-streaming-technology-showdown-amazon-prime-vs-twitch ("Recently Amazon started competing with itself for viewers by hosting Thursday Night Football on both Amazon Prime Video as well as Twitch (Reminder: Amazon acquired Twitch in 2016 for around $970M).") (last accessed Apr. 7, 2026).

BSD's Complaint (ECF No. 1 at 3), along with other examples, including Viacom, PAC-12, Notre Dame, the 2018 Olympics, and the 2018 World Cup, and was again referenced in the June 14, 2023 Joint Case Management Conference statement (ECF No. 45 at 8). Any purported surprise therefore reflects a failure to conduct a reasonable search for responsive materials. Further, Amazon's late concession, that it will search for "the agreements with streamers identified by BSD" confirms that Defendants never searched for responsive materials in the first place, and even now, qualify their search as limited solely to "the specific streamers identified by BSD." This is unacceptable. As the Court has already noted, it is Defendants' obligation to identify and produce responsive discovery, not BSD's.

**BSD RFP No. 11 (Agreements concerning the acquisition of streaming businesses)**

**BSD's Position**

Defendants stated during a meet and confer on April 20, 2026, that they will be producing documents relating to the four acquisitions that they previously identified as potentially relevant: (1) the acquisition of Sye Media in 2020, (2) the acquisition of Twitch in 2014; (3) the acquisition of RoofTop Media in 2014; and (4) the acquisition of Elemental in 2015. After BSD reviews the forthcoming production, this issue may be resolved or require follow-up.

However, the related issue of Defendants' financial projections from January 1, 2014 through December 31, 2015 remains unresolved. As stated in the last update, Defendants produced a single, undated spreadsheet (TWITCH_0007513). Based on BSD's experience, revenue projections are routinely generated and maintained. A single undated document, lacking custodial metadata and unilaterally selected by Defendants, does not constitute a good faith production of the requested materials. Defendants claim to have "conducted a reasonable search and produced what they are able to locate," yet as discussed several times in these letters, and at the last hearing, Defendants have not produced any documents based on a custodial level document search. As Defendants have not produced a fulsome set of projections, BSD anticipates that the parties will submit a joint letter motion to compel production of these financial materials.

**Defendants' Position**

At the parties' meet and confer on April 20, 2026, Defendants informed BSD that they would be producing the four requested acquisition agreements this week. BSD, however, did not raise its concern regarding the production of Defendants' financial projections. Defendants have explained numerous times that Twitch conducted a reasonable search for financial projections between January 1, 2014 and December 31, 2015, and produced what it was able to locate. BSD seems to suggest that, based on its experience, there should be more without going into additional detail regarding what additional documents it expects exist. The bottom line is Defendants conducted a reasonable search and produced what they are able to locate. It is not clear what more BSD expects or what there will be to address in the discovery letter BSD claims will be forthcoming.

The same is true for documents from individual custodians, which is a different issue that BSD references in its position and is discussed below. As Defendants have repeatedly explained, they have searched for documents from individual custodians *but have not yet located any given that the relevant time period ended more than 7 years ago*, and documents are overwhelmingly kept either in email or in central repositories. To that end, Defendants have produced documents in response to BSD's email discovery requests and are continuing to search for documents from individual custodians, as discussed on page 6, below.

**BSD RFP No. 44 (Marketing documents and negotiation materials with streaming partners and content providers)**

**Defendants' Position**

Defendants view this issue as resolved, at least as to Twitch. Twitch identified public documents relating to Twitch events from the damages period that involved content creators and have produced those documents. Twitch does not believe it possesses any additional documents relating to joint marketing efforts with content creators. AWS is also working to investigate whether it has engaged in any marketing with the customers for which it is producing agreements. AWS has not identified any negotiations that occurred outside of email and are confirming.

**BSD's Position**

BSD is waiting for Defendants to confirm that their search and production is complete. BSD understands based on the last joint update and meet and confers this week that Twitch considers its search complete, having located a few documents, but that AWS's search is ongoing.

**Update Regarding Other Discovery Disputes**

In accordance with the Court's March 13, 2026 Order (Dkt. No. 175) requiring the parties to file a discovery status report, the parties hereby provide a summary of discovery issues. The parties continue to meet and confer as to these issues.

**Production of Prior Litigation Materials Involving Asserted Patent (*Emblaze Ltd. v. Apple Inc.*, 11-cv-01079 (N.D. Cal.) and *Emblaze Ltd. v. Microsoft Corporation*, 3:12-cv-05422 (N.D. Cal.))**

***Apple* Litigation Materials**

The Parties have reached an impasse and are working to file a joint letter motion as soon as possible. Defendants provided their portion of the letter on April 14, 2026. BSD indicated it would provide its portion shortly.

***Microsoft* Litigation Materials**

BSD has agreed to reach out to Microsoft to facilitate the production of documents. BSD has requested contact information for the recipient at Microsoft. The Parties anticipate that once BSD's correspondence to Microsoft is delivered and Microsoft produces the documents, this issue will be resolved.

**BSD's 30(b)(6) Responses and Designations**

**Defendants' Position**

Related to Topics 12-14, 22 and 23 (set forth below in BSD's section), Defendants seek testimony regarding any facts BSD intends to rely on for its contentions on multiple issues. These topics relate to statements BSD has made in its complaint, its infringement contentions, or its damages contentions. The issue is a basic question of fairness and disclosure obligations. If BSD has

4

knowledgeable individuals it can designate on the requested categories, or intends to rely on a fact witness or for its experts to rely on a fact witness when it offers an opinion in support of BSD's positions, then Defendants should be able to seek discovery related to those facts. BSD, however, refuses to designate any witness related to these facts supporting its contentions because, it says, it does not know whether its experts intend to rely on any fact witnesses or whether BSD intends to bring a witness to trial for these issues. Instead, BSD suggests that it will designate testimony related to these topics after the depositions are already complete. This defeats the purpose of seeking testimony on these topics. This case was filed in 2023 and it is now eight months since the stay was lifted (in addition to the year of discovery before the stay was granted). BSD has had plenty of time to marshal its facts and figure out its theories in this case. It should know at this point whether it or its experts intend to rely on any fact witnesses related to these issues, and it should either confirm it is not planning to rely on any fact witnesses and has no witnesses it can designate on the requested categories or designate a witness for each of these topics. Defendants intend to prepare a joint discovery letter as to those topics.

The parties met and conferred on April 20, 2026 and April 21, 2026 and resolved the issues around Defendants' Topic No. 27. The parties agreed to continue discussions for Topic No. 20.

**BSD's Position**

On April 6, 2026, the Parties met and conferred to discuss the outstanding issues. The parties were able to resolve several disputes, but the Parties disagree whether five contention deposition topics (Topics 12-14, 22, and 23) are appropriate, and Defendants have indicated that they will file a joint letter motion to compel responses. Topic 12 states: "All features of the HLS standard that were introduced after October 21, 2015 that BSD contends result in infringement of the '473 patent." Topic 13 states: "All facts, analyses, testing, and evidence supporting BSD's contention that the HLS standard infringes the asserted claims of the '473 patent, including how each limitation is practiced by the Accused Instrumentalities." Topic 14 states: "All facts, analyses, testing, and evidence supporting BSD's contention that the MPEG-DASH standard infringes the asserted claims of the '473 patent, including how each limitation is practiced by the Accused Instrumentalities." Topic 22 states: "BSD's position regarding the timing, parties, and circumstances of the hypothetical negotiation in this case." Topic 23 states: "The benefits and drawbacks of transmitting live video over the Internet using unaccused streaming protocols, including but not limited to the Real-time Streaming Protocol, the Realtime Transport Protocol ("RTP"), RTP-TS, the Real Data Transport protocol, the Real-time Messaging Protocol, WebDAV, Microsoft Smooth Streaming, MPEG-TS, Adobe HTTP Dynamic Streaming, and WebRTC." BSD maintains that, under the case law of this district, these contention deposition topics are more appropriately addressed by contention interrogatories.

BSD still has not received Defendants' draft of a proposed joint motion but will fully respond to Defendants' arguments after reviewing Defendants' brief. However, BSD notes that Defendants' statements above misstate BSD's positions as to why the topics are objectionable.

Additionally, Defendants' Topic 25 seeks a 30(b)(6) designee to testify as to "[t]he status and location of BSD's files from the Apple Litigation and/or Microsoft Litigation." After a lead counsel meet and confer, BSD confirmed that it would not designate a witness on this Topic because it seeks attorney testimony from a 30(b)(6) witness. Moreover, the status and location of BSD's prior litigation files has no relevance to this case. BSD has already promised to produce *all*

5

non-privileged documents related to those litigations in its possession, custody, or control and to which third parties do not object under the protective order in that case and will provide a list of documents to which third parties have objected. Defendants do not need BSD's testimony relating to how BSD's former litigation attorneys store their files.

On April 21, 2026, the Parties agreed that Defendants will withdraw Topic No. 27 and BSD will withdraw its similar topic. The Parties also discussed Topic No. 20, and BSD is considering whether it will amend its response.

**BSD's Email Production**

BSD intends to produce all non-privileged, responsive emails by today or tomorrow. The parties expect that this production will resolve this issue.

**Defendants' Document Production from Individual Custodians**

**<u>BSD's Position</u>**

Defendants still have not produced documents identifying any individual custodians. Despite multiple meetings, Defendants first indicated during a March 5, 2026 meet and confer that they had not conducted searches of files maintained by individual custodians. Defendants further suggested that BSD, rather than Defendants, should identify the relevant individuals to be searched. Following that discussion, Defendants stated they would consider undertaking identifying relevant individuals and conducting custodian-level document searches. On April 6, 2026, counsel indicated that they are still conducting that search and, again, that "relevant documents would have gone to central repositories." After prodding, counsel confirmed that they can confirm that there are no responsive documents on hard drives of *some* individual custodians likely to have relevant information, but Defendants still refuse to identify which individuals' files they have searched and still have not confirmed that the search is complete or indicated when the search will be complete, saying only that they are still working to identify relevant individual custodians ***more than 3 years into the litigation.***

During a meet and confer on April 20, 2026, Defendants confirmed that their search remains ongoing.

This lack of custodian-level discovery has delayed BSD's depositions of Defendants' personnel, as document discovery informs the identification of key custodians, which in turn guides targeted email searches and ultimately the scheduling of depositions. Given that the deadline for the substantial completion of document production was on January 16, 2026, Defendants' continued delay is inexcusable. BSD anticipates that a joint discovery statement will be necessary if Defendants do not promptly confirm that their search is complete.

**<u>Defendants' Position</u>**

BSD mischaracterizes Defendants' position on the meet and confers. Defendants conducted a reasonable search, including of custodians' files. As Defendants have repeatedly explained and as has been confirmed again upon further questioning, relevant documents were kept in central repositories, not individual files. Nonetheless, Defendants are conducting an additional search for

responsive custodial documents with individuals at Twitch and AWS to confirm they do not have additional, non-duplicative documents to produce. As of April 22, 2026, that process is ongoing.

**Defendants' Initial Disclosures:**

Defendants supplemented their Initial Disclosures during the week of April 13, 2026. BSD is reviewing those disclosures but anticipates that this issue is resolved at this time.

**BSD's Deposition Notices**

BSD served a draft of its joint discovery letter on April 6, 2026. Defendants served their responsive portion on April 16, 2026. The Parties are exchanging additional edits and anticipate filing the joint motion this week.

**Defendants' Prior Refusal to Provide Discovery from Alex Dunlap**

Defendants stated on April 20, 2026 that they will be producing emails from Mr. Dunlap shortly and have agreed to produce him for a deposition related to his work relevant to this litigation. The Parties agree that, pending the production of Mr. Dunlap's emails, this issue is resolved at this time.

**BSD's RFA Denials**

**<u>Defendants' Position</u>**

On March 25, 2026, BSD served its First Supplemental Responses to Interrogatory No. 23 and Requests for Admission Nos. 41-52, which seek clarification regarding the particular configurations of the Accused Instrumentalities that are accused in this litigation. BSD's response remains deficient and Defendants anticipate moving to compel given—from their perspective— BSD's continued failure to define the bounds of its infringement theories or explain how the HLS standard can infringe the '473 patent despite the non-infringement verdict in the *Apple* litigation. Notably, Defendants raise this issue here because BSD's supplemental responses effectively just restate BSD's initial responses to Defendants' RFAs.

At the April 6, 2026 conferral, BSD was not prepared to address this issue and suggested that BSD either set up an additional conferral that same week or confirm in writing that it would provide further supplementation.  At an April 21, 2026 conferral, BSD stated it would supplement its responses to Defendants' RFAs to provide a fulsome response. BSD did not commit to a date by which it would supplement its responses.

**<u>BSD's Position</u>**

Although BSD maintains that Defendants' Requests for Admission Nos. 41-52 are intentionally vague and ambiguous and designed to confuse, taking one aspect of the allegations against the Accused Instrumentalities out of context from the rest of the case, during the April 21 meet and confer, BSD agreed to further supplement its responses to these RFAs. The April 6 conferral occurred prior to the last joint status update. This issue was not further addressed until BSD itself raised the issue at the end of the meet and confer on April 21, 2026. Defendants' statements about BSD's preparedness are counterproductive.

**BSD's Responses to Defendants' Interrogatories**

**<u>Defendants' Position</u>**

On April 15, 2026, BSD served supplemental responses to Defendants' Sixth Set of Interrogatories. BSD, however, again failed to provide substantive responses to Defendants' Interrogatory Nos. 34, 35, and 36. The parties met and conferred on April 21, 2026 regarding these interrogatories. BSD agreed to supplement its response to Interrogatory No. 34, but stated that it was waiting for Defendants to provide discovery regarding non-infringing alternatives. BSD did not identify the specific discovery it requires from Defendants and Defendants disagree that any delay  is due to Defendants. BSD took the position in its damages contentions that it is "unaware of any non-infringing alternatives available to Defendants that would provide for similar benefits as the claimed subject matter or be acceptable to users of the Accused Instrumentalities" (Nov. 4 20215 Am. Damages Content., at 7), but provided no additional detail. Defendants have identified multiple alternative protocols and/or configurations that do not infringe. Interrogatory No. 34 is directed to identification of BSD's support for the conclusory statement in its damages contentions. To the extent BSD fails to its factual support for this statement response to Interrogatory No. 34, Defendants will move to strike undisclosed theories presented during expert discovery.

Defendants' Interrogatory Nos. 35 and 36 seek  identification of documents, communications, and relevant source code passages that BSD intends to rely in support of their Infringement and Damages contentions. BSD's contention this is duplicative of the Patent Local Rules is incorrect. The Patent Local Rules require early disclosures of theories and help guide the scope of discovery. While the theories must be adequately disclosed, the Patent Local Rules do not require identification or marshalling of all evidence in support of those theories. At this point, near the end of fact discovery, BSD should know what factual evidence it intends to rely on in support of its theories. BSD's further contention that responding to such interrogatories would require BSD to "put forth its full case" illustrates the problem—BSD wants to litigate by surprise and Defendants want to understand BSD's theories and support for those theories so they can adequately prepare their defenses. To avoid surprise in expert discovery interrogatories such as these are appropriate. *See, e.g.*, *Vasudevan Software, Inc. v. IBM,* 2011 WL 13153991, (N.D. Cal. June 15, 2011) (compelling supplemental responses to contentions directed to theories and evidence supporting infringement claims). BSD served its infringement contentions nearly *three years ago*. Since then, Defendants have produced thousands of pages of documents and source code. Defendants are entitled to understand what evidence from discovery BSD believes supports its positions. Forcing Defendants to "guess" what evidence supports BSD's theories is improper. The parties agreed to continue conferring regarding Interrogatory Nos. 35 and 36, but to-date, BSD has not provided substantive responses.

**<u>BSD's Position</u>**

Defendants served several interrogatories that are compound and contain multiple subparts that should be counted as separate interrogatories. As a result, they have served a total of 55 interrogatories, 5 more than the number permitted. At the April 6, 2026 conferral, in a good faith effort to resolve the dispute, and despite Defendants' refusal to respond to additional interrogatories, BSD agreed that it would not stand on its objections to some of those compound

8

interrogatories and would provide supplemental responses to Interrogatories 32-36 if Defendants agreed that they would not assert a similar objection to BSD's outstanding interrogatories. BSD explicitly did not waive this objection as to Defendants' interrogatory seeking the bases for each of BSD's denials to any Request for Admission.

On April 15, 2026, BSD served supplemental responses to Interrogatories Nos. 25, 27-30, 32-36. On April 21, 2026, the Parties met and conferred regarding Interrogatories Nos. 34-36. BSD stated that it intends to supplement its response to Interrogatory No. 34, which is directed to BSD's support for its contention that there are no non-infringing alternatives, but requires discovery from Defendants, who were broadcasters at the time of the hypothetical negotiation but did not use an alternative. Defendants' statement above, again complaining that they do not know what BSD seeks, simply repeats their pattern of claiming ignorance as to discovery requests in this case. BSD has been and was clear on April 21 about the discovery BSD needs from Defendants relating to their choice not to use one of their so-called non-infringing alternatives. Defendants' statement above that they "have identified multiple alternative protocols and/or configurations that do not infringe" is untrue. Each of Defendants' "alternatives" is either infringing or not a true alternative. And, as BSD has said, it intends to supplement this response, so the inclusion of argument related to this issue is a waste of the Court's time.

The Parties disagree about whether Interrogatories Nos. 35 and 36, which seek "all documents, communications, and source code, with specific citations to pertinent passages, that support" BSD's Infringement Contentions and Damages Contentions, respectively. The Parties agreed to continue to consider and meet and confer on these issues. During the meet and confer on April 21, 2026, BSD requested legal support for Defendants' position that these Interrogatories were not duplicative or overbroad and unduly burdensome. Defendants first provided that support in a draft of this letter today. BSD has not yet reviewed Defendants' single case and does not view this joint status update as the proper medium to brief this issue. Moreover, as BSD has explained and will continue to explain in forthcoming joint discovery statements to the Court, Defendants' claims that they have produced "thousands of pages of documents" among other things, ignores the fact that *nearly all* of those pages lack any probative value whatsoever and Defendants' responses to other discovery are equally deficient.

**Defendants' Responses to BSD's RFAs**

**BSD's Position**

BSD has identified many of Defendants' responses to BSD's RFAs that BSD believes are deficient and is diligently working to draft a meet and confer letter to Defendants' counsel to facilitate a productive meet and confer. As the Parties have not yet met and conferred, BSD writes only to notify the Court of the status in the event that this issue cannot be resolved between the Parties.

**Defendants' Position**

As BSD flags, this issue is premature as BSD has yet to send Defendants a letter related to Defendants' RFA responses served on March 27, 2026. Defendants are willing to meet and confer on any issues BSD raises.

**Defendants' Responses to BSD's 3rd and 4th Sets of Interrogatories**

**BSD's Position**

BSD has identified many of Defendants' responses to BSD's 3rd and 4th Sets of Interrogatories to each Defendant that BSD believes are deficient and is diligently working to draft a meet and confer letter to Defendants' counsel to facilitate a productive meet and confer. As the Parties have not yet met and conferred, BSD writes only to notify the Court of the status in the event that this issue cannot be resolved between the Parties.

**Defendants' Position**

As BSD flags, this issue is premature as BSD has yet to send Defendants a letter related to Defendants' interrogatory responses served on April 9, 2026. Defendants are willing to meet and confer on any issues BSD raises.

**Defendants' Objections and Responses to BSD's 30(b)(6) Notice**

**BSD's Position**

Defendants served their objections and responses to BSD's 30(b)(6) Notice after work hours on April 17, 2026. BSD has not yet fully reviewed the objections and responses but anticipates that the Parties will need to meet and confer to discuss Defendants' objections and responses. As the Parties have not yet met and conferred, BSD writes only to notify the Court of the status in the event that this issue cannot be resolved between the Parties.

**Defendants' Position**

As BSD flags, this issue is premature as BSD has yet to send Defendants a letter related to Defendants' objections to the 30(b)(6) notices. Defendants are willing to meet and confer on any issues BSD raises.

Respectfully submitted,

Dated: April 22, 2026

By: */s/ Francisco A. Villegas*
Francisco A. Villegas
VILLEGAS & CEFO LLP

*Counsel for Plaintiff*
BSD CROWN, LTD.

By: */s/ Robin L. Brewer*
Robin L. Brewer
Sheppard, Mullin, Richter & Hampton LLP

*Counsel for Defendants*
AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC., and
TWITCH INTERACTIVE, INC.

10

# FILER'S ATTESTATION

I, Robin L. Brewer, pursuant to Civil Local Rule 5-1(i)(3), attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing of the document.

Dated:  April 22, 2026                                By: */s/ Robin L. Brewer*
                                                                    Robin L. Brewer