UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BSD CROWN, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC., <br><br> Defendants. | Case No. 3:23-cv-00057-TSH <br><br><br> **JOINT LETTER BRIEF** |

**ATTESTATION OF COMPLIANCE**

Ketan Patel and Evan Rosenbaum for Plaintiff, and Robin Brewer, Mathieu Swiderski, and Michael DeStefano for Defendants, have met and conferred about this discovery dispute.

By: */s/ Francisco A. Villegas*
    Francisco A. Villegas
    VILLEGAS & CEFO LLP

    Counsel for Plaintiff
    BSD CROWN, LTD.

By: */s/ Robin L. Brewer*
    Robin L. Brewer
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

    Counsel for Defendants
    AMAZON.COM, INC.,
    AMAZON WEB SERVICES, INC., and
    TWITCH INTERACTIVE, INC.

Dear Honorable Judge Hixson:

The parties submit this joint letter brief regarding Defendants' Motion to compel a complete response to Defendants' Interrogatory No. 16 to BSD.

## **DEFENDANTS' POSITION**

To resolve grave questions regarding spoilation and to address fundamental issues critical to the case, Defendants respectfully request the Court compel BSD to completely and accurately respond to Interrogatory No. 16, which seeks the fate of a server maintained by BSD's predecessor Emblaze (the "Emblaze Server"). Throughout discovery, BSD has claimed that destruction of the Emblaze Server prevents it from producing highly-relevant information, including: (1) documents supposedly evidencing conception and reduction to practice of the asserted patent, (2) technical information and source code for BSD's alleged patent-practicing products, and (3) various business documents and emails. Yet, BSD has provided little clarity on when the Emblaze Server was lost, whether it was intentionally or inadvertently destroyed, and most importantly, if it was destroyed while BSD held reasonable expectation of litigation against Defendants. Even worse, recent testimony by BSD witnesses undermines BSD's claims to date about how the Emblaze Server was handled and how Defendants' discovery requests have been investigated.

Defendants require answers about the Emblaze Server and BSD's actions so that these issues can be resolved without further delay. Rule 26(e) imposes an affirmative obligation on a party to supplement a discovery response in a timely manner if the party learns that the response is incomplete or incorrect "in some material respect." Where a party has failed to do so, a court may direct that "designated facts be taken as established for the purposes of the action." *Vieste, LLC v. Hill Redwood Development*, No. C–09–04024 JSW (DMR), 2011 WL 2181200, at *5 (N.D. Cal. June 3, 2011)(citation omitted) (granting sanctions for failure to correct misleading answers regarding employee positions in response to an Interrogatory); *see also* Fed. R. Civ. P. 26(e).

On November 21, 2025, Defendants propounded Interrogatory No. 16, which asks BSD to "Describe with particularity the decommission, removal, disposal, and/or sale of BSD's servers," and details surrounding that decommission, removal, disposal or sale. (Ex. A.) After an initial, non-substantive response on December 22, 2025, BSD supplemented on March 19, 2026, and June 3, 2026. (Ex. B (BSD's Second Supp. Objs. & Resps. to Interrog. No. 16 (Jun. 3, 2026)).) BSD's first supplement stated that "[o]n or about August 2013, Emblaze was sold to BGI Investments Ltd. [and] during this period and prior to the control of current BSD management, Emblaze server hardware became unaccounted for, and its current whereabouts are unknown." (*Id.* at 5.) BSD's second supplement provided further explanation only as to BSD's efforts to locate the Emblaze Server, i.e., that the "last known location" of the server was Emblaze's offices in Petach Tikva, Israel," and that BSD witness Moshe Dgani conducted an "investigation" which included speaking to Emblaze and BSD personnel, including Yossi Williger and Naftali Shani. (*Id.* at 5-6.)

Mr. Dgani's recent testimony belies the accuracy of BSD's responses. He claimed the actual first date when the Emblaze Server was unaccounted for was August *2016*. Ex. C (Dgani Tr. at 294:6-25 (emphasis added)) (testifying that servers were there in August 2016 and he did not know what happened after that). When directly confronted with the interrogatory response, Mr. Dgani testified "[w]ell, so maybe there is a typo here." (*Id.* at 278:24-279:7.) And, when asked "[i]s it BSD's contention that on August 2013 the server began to go missing," Mr. Dgani responded "No." (*Id.* at 282:2-5.) Indeed, Mr. Dgani's testimony confirmed the Emblaze Server could not have gone missing then, because Emblaze was engaged in litigation with Apple and Microsoft at the time. *Id.*

1

at 286:12-289:15 (discussing document collection and confirming "we had the server in – yeah, of course. We had it entirely during the course of the litigation with Apple."); *id.* at 289:16-21 (confirming Emblaze still had possession of Emblaze server throughout Microsoft litigation).

Mr. Williger (BSD's current CEO) also undermined BSD's response to Interrogatory No. 16. Ex. D (Williger Tr. at 120:20-123:5 ("A. …When I came to the company in, I think, June 2017, there was a server with all the data. Q. And do you know if that server also had Emblaze data? A. Yeah. BSD's Emblaze. Yeah. They -- they had the data of Emblaze -- BS -- Emblaze, BSD. Q. And did that also have Emblaze's technical documents? [] A. Yes. They had all the -- all the -- everything, actually, as far as I concern [sic]..."). Mr. Williger also testified that the Emblaze Server was in Ramat Gan, Israel—not Petach Tikva, Israel. (*Id.* at 261:20-262:14.) He further testified that he instructed BSD's then-CFO, Moran Atar, to transfer "all software" and "everything which was on the server" in the 2018 office move. (*Id.* at 124:3-125:8). Mr. Williger claimed that he had not been made aware that Emblaze data was missing (*id.* at 267:7-270:12.), and that he did not believe the current interrogatory response is accurate (*id.* at 275:17-23). (testifying "I'm not sure it's totally correct [that the server is missing].". BSD must explain the inconsistencies in response to Interrogatory No. 16. *Vieste*, 2011 WL 2181200, at *3-4; Fed. R. Civ. P. 26(e).

BSD's response regarding Mr. Dgani's alleged "investigation" also appears to be inaccurate. Rather than consult anyone on how to investigate the location of the server, (Ex. C at 307:20-309:12), or rather than going to its last known location to look for it, (*id.* at 311:9-21), Mr. Dgani chose to call a few friends and former colleagues who happened to provide little information.[1] (*See, e.g. id.* at 312:16-313:9.) BSD was no mom-and-pop operation; it was a publicly-traded company with reporting obligations that went through a hostile takeover. The idea that, in such a scenario, a primary asset of the company could simply go missing stretches the bounds of credulity. And BSD's failure to contact its lawyers, accountants, and other professionals ***involved*** in those transactions suggests this "investigation" was half-hearted at best. Indeed, simply because Mr. Dgani's personal knowledge regarding the location of the Emblaze Server stops in August 2016 does not mean its location is unknowable. Accordingly, BSD should supplement the response to ***fully*** explain what Mr. Dgani—and BSD as a whole—actually did to evaluate whether BSD performed a reasonable search to find the highly relevant documents located on the server. *Vieste, LLC*, 2011 WL 2181200, at *3-4; Fed. R. Civ. P. 26(e).

Given the importance of the contents of the Emblaze Server—fundamental documents affecting everything from the purported conception of the patent, to BSD's purported embodying products— the glaring inconsistencies regarding both the Emblaze Server's whereabouts and BSD's efforts to locate it are troubling to say the least. If the Emblaze Server still exists, Defendants are entitled to the information contained on it as part of their effort to defend themselves against infringement. Naturally, if the Emblaze Server was lost or destroyed, Defendants will be inherently prejudiced by being denied access to that critical information. And, worst of all, if BSD or principals deliberately caused that information to be unavailable, weighty sanctions would be appropriate. Thus, at a minimum, Defendants are entitled to a complete and accurate explanation of what happened to the Emblaze Server and when. Only BSD has the facts necessary to provide that narrative, but BSD has been unwilling to provide those facts voluntarily, instead offering incomplete and misleading narratives and then contradictory testimony. Accordingly, Defendants

---

[1] Casting further doubt on BSD's narrative, one of the people Mr. Dgani identified—Naftali Shani, Emblaze's former CEO—denied under oath that Mr. Dgani ever contacted him about the Emblaze Server. Ex. E (Shani Tr. at 320:8-321:17).

respectfully request the Court compel BSD to fully respond to Interrogatory No. 16, including by addressing all of the inconsistencies addressed above. That should include documents and/or communications from which the Court and Defendants can confirm that the narrative presented is true and accurate. Once BSD provides such a supplement, depending on its contents, Defendants request the ability to seek further judicial assistance to obtain additional relief as appropriate.

BSD's response below does little to explain these issues. *First*, BSD lists a number of whataboutism arguments related to perceived discovery issues from Defendants, while utterly ignoring that Emblaze was a public company with tracked assets during an acquisition that cannot have just simply disappeared. And Defendants have already explained the perceived Twitch spoliation issues to BSD. (*See* Ex. F). *Second*, BSD argues the server would contain documents that support its claims. This is self-serving and unconvincing, given the absence of the documents now and its prior loss in litigation against Apple when the server was available. *Third*, BSD claims it offered to supplement during a meet and confer. BSD's counsel offered to change "2013" to "2016" in the interrogatory response, and nothing else. Defendants rejected that offer because it is insufficient to fully respond to the Interrogatory. *Finally*, BSD points to alleged explanatory reasoning for the testimony below, even relying on contradictory testimony of its CEO offered on redirect, and claims its investigation was sufficient. At no point does BSD attempt to explain how a public company with public reporting obligations lost a server containing its most valuable assets, its technical documents and source code. If BSD has an explanation as to what happened with the Emblaze Server, it should supplement its Interrogatory and provide it. Defendants are not looking for perfect memory—all Defendants are looking for is a reasonable explanation.

## BSD'S POSITION

BSD has not withheld any fact known to it that is responsive to Interrogatory No. 16. As explained in its responses, (Ex. B), BSD has performed more than a reasonably diligent search for the old Emblaze Server and the information it contained. In fact, BSD has searched for the server multiple times over two separate litigations. The information on the Emblaze server would not only bolster BSD's positions related to conception and validity in this case but also in separate litigation between these two parties, in which discovery closed over a year ago. BSD cannot supply an exact date, a decision-maker, or method of disposition that its reasonable inquiry did not reveal.

In addition to being wrong on the facts, Defendants are wrong on the law. ***First***, they omit critical language from Rule 26(e). A response must be supplemented only if the corrective information "has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Defendants quote testimony that makes every potential correction known, and BSD nevertheless offered to memorialize that information in writing. ***Second***, Defendants' only case is inapposite. *Vieste* held that information disclosed through deposition testimony was made known during discovery and discharged the Rule 26(e) duty. *Vieste,* 2011 WL 2181200, at *3. That interrogatory answer unequivocally stated that no employee worked on the projects, even though later discovery established that four employees did. The court found that evasive language rendered the answer nonresponsive. *Id.* at *5. Here, no testimony establishes BSD's response is false, and BSD offered to clarify the response before this letter .

Although BSD's existing response is truthful and complete, BSD acknowledges that one portion could have been phrased more precisely. It states: "On or about August 2013, Emblaze was sold to BGI Investments Ltd. Plaintiff understands that, during this period and prior to the control of current BSD management, Emblaze server hardware became unaccounted for, and its current whereabouts are unknown." Ex. B. The first sentence dates BGI's acquisition of Emblaze, not the

3

disappearance of the Emblaze Server. The next sentence explains that the server became unaccounted for during the ensuing management transitions and before current management took control in early 2017. To eliminate any ambiguity, BSD offered during the parties' July 22, 2026 meet and confer to further supplement that Mr. Dgani last knew the Emblaze Server to be present in August 2016 and that it became unaccounted for thereafter, before current management assumed control in early 2017. BSD proposed to serve that clarification promptly. Defendants rejected the offer preferring to seek an order compelling the same clarification, along with documents and potential sanctions not properly presented through this interrogatory dispute.

Defendants' own citations to the *Apple* and *Microsoft* litigations confirm that the server remained in use after 2013 thus defeating Defendants' misreading of the response, not BSD's explanation. When read with Mr. Dgani's testimony, the response places the loss of the server after August 2016 and before current management. Clarification is appropriate; an accusation of "grave questions" suggesting falsehood or foul play is not.

Nothing in this motion can change the underlying facts or "resolve fundamental issues critical to the case." It will not make the server reappear. Notably, Defendants have offered materially similar explanations for numerous documents missing from their own production, namely, that the documents were lost or destroyed years ago. The Court rejected BSD's similar request to compel Defendants to search for more documents. Dkt. No. 213 at 2. Nor is there evidence that BSD destroyed or concealed the server to deprive Defendants of relevant evidence. That circumstance stands in marked contrast to Defendants' failure to provide litigation-hold notices to key employees, which resulted in the destruction of Twitch emails *during this litigation*.

Defendants' argument concerning Mr. Dgani relies on quoting a preliminary statement that "maybe there is a typo" while ignoring his immediate explanation. After counsel repeatedly misrepresented the response as stating that the server went missing in *or before* August 2013, (Ex. C at 279:4-6; 279:14-18), and BSD's counsel's mischaracterization objections, Mr. Dgani explained: "[F]irst of all, everything is correct here. But it . . . doesn't say that in August 2013 the servers are missing, because this is not true. And it also . . . says that . . . during this period and prior . . . to the control of current BSD management, it means when . . . the current BSD management was about 2017. So prior to the control of BSD, then this is the point that the server[s] are missing. Because the current BSD management doesn't know where they are. This was the meaning." *Id*. at 279:21–280:9. Mr. Dgani even explained why the transition period extended through 2017: "Only prior to the control of current BSD, because there are so many changes with the BSD management. There were, as you mentioned, Gurtovoy and Granovsky before. And then Yossi took the management in 2017. So the meaning is: In this transition between Yossi and the previous management, then the servers disappeared. This is the point." *Id*. at 280:19–281:1.

His later testimony that he knew the servers were present in August 2016 and did not know what happened thereafter is consistent, not contradictory. *Id*. at 294:6-25. Together, the testimony narrows the relevant window to after August 2016 and before current management took control. His testimony concerning the *Apple* and *Microsoft* litigations likewise establishes only that the server existed during those litigations, a fact BSD does not dispute. Defendants cannot manufacture a contradiction by isolating a passing statement from nearly ninety pages of testimony while ignoring the witness's immediate and unequivocal clarification.

Defendants similarly mischaracterize Mr. Williger's testimony as suggesting that he possessed, and perhaps still possesses, the Emblaze Server. He testified to no such thing. He described "a server" in Ramat Gan and a general instruction to move "everything," but he repeatedly disclaimed

4

inspecting that server or knowing its contents: "I didn't check," and, on redirect, he did not know whether it contained any Emblaze materials. Ex. D at 122:17-18, 122:25, 292:6-12. Put differently, he inherited whatever his new management received. Further, the fact that Mr. Dgani last knew the Emblaze Server to be in Petach Tikva and Mr. Williger later encountered an unidentified server in Ramat Gan does not establish that they were the same physical server, much less a contradiction. A different location at a different time is not proof of identity. Nor does a generic instruction in 2018 to migrate "everything" establish that the missing Emblaze data was then present, particularly because it is absent from BSD's current servers.

Defendants' attack on BSD's investigation ignores the response they challenge, asserting that BSD "fail[ed] to contact its lawyers, accountants, and other professionals." BSD expressly identified, among others, Arnon Gicelter, former in-house counsel to Emblaze and transition counsel to BSD, and Slavi Khodorokovsky, Emblaze's former IT manager. Ex. B. A lawyer involved in the transition and the former IT manager are precisely the people most likely to know about a historical server. Mr. Shani's testimony, at most, creates a dispute about one reported contact, not BSD's other interviews, searches, or repeated efforts across two litigations. Nor does the failure, years later, to visit a former office establish that the search was unreasonable. The succession of owners and managers explains why current management lacks first-hand knowledge.

Defendants' argument depends on misquoting the interrogatory response, disregarding Mr. Dgani's express clarification, attributing knowledge to Mr. Williger that he repeatedly disclaimed, and ignoring the persons identified in BSD's supplemental response. Those tactics do not create a legitimate discovery controversy. BSD has conducted a reasonable search, disclosed what it knows, offered to clarify the relevant time period, and explained that the Emblaze Server cannot be located. There is no further information BSD can provide.

Defendants unreasonably expect BSD's witnesses to have perfect memory of what happened a decade ago, while they *were not even at the company*. Importantly, Defendants' expectation that memories should be perfect flies in the face of Defendants' own explanations as to why, among other things, they (a) cannot provide crucial damages documents their own deponents testified existed and should still exist, (b) cannot provide testimony related to financial information created during this litigation, (c) cannot provide fulsome responses to interrogatories relating to the amount of infringement, and (d) cannot provide a signed version of Amazon's nearly one billion dollar acquisition of Twitch. BSD has bent over backwards to (1) try to find the server, (2) try to find the information that was on the server, and (3) explain to Defendants BSD's best knowledge of what happened to the server. But Defendants refuse to hear it. There is no additional information.

Finally, Defendants' spoliation rhetoric is speculation, not a basis to compel a different answer. Amazon has not shown that the server was destroyed at all, who acted, when any act occurred, or that BSD anticipated litigation against Amazon at the relevant time. The missing materials would support BSD's conception and validity positions in both litigations, which undercuts any suggestion of a motive to destroy. Defendants' attempt to cast aspersions because a server was lost during a drawn-out management transition in which the company completely changed from a large technology company to a food importer before this litigation's decision-makers were even in charge of the company fails. BSD has served two supplements, offered a third, and disclosed everything its investigation has revealed. Defendants unbelievably conclude by demanding that BSD explain what happened to the server despite BSD's repeated statements that after its investigation, it *does not know* what happened to the server. The Court should deny Amazon's motion or, at most, deem BSD's promised clarification sufficient and deny all broader relief.

Respectfully submitted,

Dated: June 24, 2026


By: */s/ Francisco A. Villegas*
    Francisco A. Villegas
    VILLEGAS & CEFO LLP

    *Counsel for Plaintiff*
    BSD CROWN, LTD.

By: */s/ Robin L. Brewer*
    Robin L. Brewer
    SHEPPARD, MULLIN, RICHTER &
    HAMPTON LLP

    *Counsel for Defendants*
    AMAZON.COM, INC., AMAZON WEB
    SERVICES, INC., and TWITCH
    INTERACTIVE, INC.


## **ATTESTATION CLAUSE**

I, Robin L. Brewer, am the ECF user whose credentials were used in this filing. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have consented to the filing of this document.

Dated:    July 24, 2026


By:  */s/ Robin L. Brewer*
      Robin L. Brewer