UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BSD CROWN, LTD., | Case No. 3:23-cv-00057-TSH |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INTERACTIVE, INC., | **JOINT LETTER BRIEF** |
| Defendants. | |

**ATTESTATION OF COMPLIANCE**

Evan Rosenbaum, and Ketan Patel for Plaintiff, and Robin Brewer, Michael DeStefano, and Mathieu Swiderski for Defendants, have met and conferred about this discovery dispute.


By: */s/ Francsico Villegas*

Francisco A. Villegas
VILLEGAS & CEFO LLP

*Counsel for Plaintiff*
BSD CROWN, LTD.

By: */s/ Robin Brewer*

Robin Brewer
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

*Counsel for Defendants*
AMAZON.COM, INC., AMAZON WEB
SERVICES, INC., and TWITCH
INTERACTIVE, INC.

Dear Honorable Judge Hixson:

Pursuant to the Court's standing order, the parties respectfully submit this joint statement regarding content delivery network ("CDN") discovery, including Amazon CloudFront.

### BSD'S POSITION

BSD seeks discovery concerning the delivery/download portion of the accused HLS and MPEG-DASH live-streaming workflows. Specifically,  BSD seeks corporate testimony and existing documents and data, to the extent maintained or reasonably identifiable in AWS's ordinary-course systems, sufficient to show: (1) whether and at what scale CloudFront distributed live HLS/DASH outputs generated by or delivered through the Accused Instrumentalities; (2) the usage, billing, revenue, cost, or profit metrics AWS actually maintains for those distributions; and (3) internal analyses of the relationship between CloudFront delivery and the accused workflows. This discovery concerns AWS 30(b)(6) Topics 15, 16, and 22–23, and AWS RFP Nos. 13, 57, 58, 62, and 103–108 and is directly relevant to asserted claim 2 of the '473 Patent, which expressly requires "downloading the sequence using an Internet protocol over the network from the server to the one or more client computers." CloudFront, which is Amazon's CDN, is not itself a separately accused instrumentality, and BSD does not contend that Claim 2 requires CloudFront or any particular CDN. The requested discovery instead concerns CloudFront's documented content delivery role in implementations of the already-identified Accused Instrumentalities and the extent and value of Defendants' actual use of those implementations. Thus, BSD does not seek convoyed-sales discovery or to add a new accused product; it seeks existing evidence concerning the delivery path by which accused HLS/DASH outputs reached client devices.

The same relevance extends to the asserted dependent claims incorporating Claim 2's downloading limitation, including its dependent claims 8, 9, 10, 11, 12, and 13. This requested evidence informs *Georgia-Pacific* Factors 9, 10, 11, and 13—utility and advantages, benefits of use, extent and value of use, and apportionment—even if BSD ultimately does not use CloudFront revenue as the royalty base. *See Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1333–34 (Fed. Cir. 2009) (usage evidence relevant to reasonable royalty); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310–11 (Fed. Cir. 2018) (apportionment must tie damages to the infringing functionality).

### 1.   CloudFront/CDN delivery is part of the accused delivery/download workflow.

Defendants' Patent Local Rule argument addresses a position BSD does not take. BSD is not adding CloudFront as a standalone Accused Instrumentality or contending that CloudFront independently satisfies Claim 2. The Claim 2 charts nevertheless expressly identify CloudFront's role in implementations of the named Accused Instrumentalities. In the Claim 2 sections themselves, BSD stated that MediaLive and MediaPackage stream HTTP broadcasts and quoted AWS documentation explaining that MediaPackage packages the streams into HLS and MPEG-DASH formats that are "distributed through Amazon CloudFront." Ex. B at 62; Ex. C at 57, 60–61. Thus, CloudFront is not a newly disclosed infringement theory; it is evidence of the actual delivery path used in implementations already identified in BSD's Claim 2 charts. The fact that customers could select other CDNs affects the proportion of accused workflows using CloudFront—not the relevance of AWS's existing information concerning the workflows that did.[1]

---

[1] *Oracle* is inapposite. It addressed an attempt to accuse additional, identifiable phone models that had not been disclosed as accused products. BSD seeks no additional accused product here; it seeks damages and usage discovery concerning a delivery service expressly identified in the Claim 2 evidence for the named Accused Instrumentalities. *See PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, Dkt. 111 at 3 (N.D. Cal. Jan. 4, 2013) (explaining that *Oracle* concerned existing phone models that could have been specifically identified); *see also MasterObjects, Inc. v. Meta Platforms, Inc.*, No. C 21-05428 WHA, 2022 WL 4856269, at *1 (N.D. Cal. Oct. 3, 2022) ("The

The Rule 30(b)(6) topics confirm that CDN delivery is within the case. AWS Topic 15 seeks testimony concerning how processed live multimedia is delivered to, and downloaded by, AWS clients through the Accused Instrumentalities, including the networks used for that delivery. AWS agreed to designate a witness to testify regarding customers' ability to choose CDNs and media players for use with the Accused Instrumentalities. AWS Topic 16 likewise seeks testimony concerning the proportion (or estimated proportion) of HLS and MPEG-DASH live streams transported through Amazon CloudFront in the Accused Instrumentalities, and AWS agreed to designate a witness regarding its knowledge of that subject. Topics 15 and 16 therefore confirm that CDN selection and CloudFront transport are factual aspects of implementations of the Accused Instrumentalities. BSD does not seek to reopen technical testimony already provided or obtain duplicative testimony under Topics 22–23. The unresolved issue is whether AWS must produce the existing ordinary-course usage, billing, financial, and analytical materials concerning actual CloudFront delivery of accused HLS/DASH outputs and, only if necessary, limited testimony concerning the systems and data fields in which that information is maintained.

### 2. The deposition record confirms the technical importance of CloudFront/CDN downloading.

The Dunlap and Bringuier depositions occurred after the June 17 Order and supplied product-specific testimony regarding CloudFront's role in the accused workflows. Dunlap, who formerly managed CloudFront, testified that CloudFront distributes content to end users, that MediaPackage performs just-in-time packaging when a device or CDN makes a request, and that customers commonly placed a CDN such as CloudFront between MediaPackage and end user devices. Ex. 1, Depo. Tr. of David Dunlap dated June 19, 2026 ("Dunlap Tr.") 21:2–25, 35:21–36:23. He further testified that Amazon built CloudFront so customers could distribute content to end users, confirming that CloudFront performs the delivery function for which BSD seeks discovery (*id.* at 22:1–25), as well as its applicability to Claim 2. Testimony from former AWS Elemental product manager Lionel Bringuier similarly confirms that HLS and MPEG-DASH are distribution protocols for end devices and that CDNs distribute that content through the internet to the last mile. Ex. 2, Depo. Tr. of Lionel Bringuier dated June 24, 2026 ("Bringuier Tr.") 15:20–18:11, 20:1–14, 27:16–24.

The testimony also rebuts AWS's categorical suggestion that no responsive ordinary-course information exists. Dunlap testified that ███████████████████████████████████ ████████████████████████████████████████████████ Ex. 1, Dunlap Tr. 45:12–16, 46:16–24, 47:10–14. BSD does not contend that this proves AWS maintains the exact stream-level allocation requested. It does show that ██████████████████████████████████████████████████████ ████████████████

### 3. The discovery is important and proportional.

CloudFront/CDN discovery is important because delivery/downloading is where the accused live-streaming workflows reach the viewer. A compressed and packaged stream has little commercial value if the client device cannot download the segments reliably and at scale. The requested discovery will show whether and how Defendants used CloudFront to deliver the accused HLS/DASH segments to clients, the scale of that use, and the ordinary-course metrics Defendants used to value performance, latency, scalability, and cost. Those are precisely the kinds of facts relevant to *Georgia-Pacific* Factors 9, 10, 11, and 13: utility and advantages, benefits of use, extent and value of use, and apportionment. *See Lucent*, 580 F.3d at 1333–34.

*Thought, Inc. v. Oracle Corp.* confirms the distinction between the sweeping request denied in the prior Order and BSD's present targeted request. The court denied financial discovery concerning

_____

rules do not require identification of every evidentiary item of proof," provided the contentions give reasonable notice of the infringement theory).

2

numerous products, but distinguished *Aylus* because the plaintiff there identified specific products, articulated their connection to the accused products, and limited discovery to transactions using the accused products; the court also observed that a more targeted request might be permissible. No. 12-cv-05601-WHO, Dkt. 143 at 6–7 (N.D. Cal. May 15, 2015). BSD identifies one service—CloudFront—explains its documented role in the Claim 2 delivery path, and limits its request to existing information concerning CloudFront delivery of outputs from the named Accused Instrumentalities.

The request is proportional because BSD does not ask AWS to create information it does not maintain, reconstruct customer-side configurations, or calculate a new revenue allocation. In the first instance, BSD seeks existing ordinary-course materials, at whatever level of granularity AWS maintains them, including: CloudFront usage and billing metrics; reports or analyses associating CloudFront with Media Services, Elemental endpoints, origins, distributions, or customer accounts; data dictionaries identifying available fields; and internal business reviews addressing CloudFront delivery of MediaLive, MediaPackage, Elemental Live, or Elemental Delta output. AWS alone can determine what responsive systems, reports, and fields exist, and BSD cannot obtain that information publicly. If AWS maintains no information permitting an exact stream-level linkage, it should produce what exists and provide a declaration or limited corporate testimony identifying the systems searched, available fields, persons consulted, and basis for its assertion that no more precise information can be obtained. BSD would then meet and confer before seeking any additional extraction or analysis.

BSD therefore requests a phased order requiring production of the existing ordinary-course materials described above, followed only if necessary by limited testimony concerning AWS's data systems and reasonable inquiry.

## DEFENDANTS' POSITION

BSD's request should be denied. Having failed to expand its damages base by framing CloudFront revenue as an "ancillary product" (Dkt. No. 213 at 2-3), BSD now seeks that same information under a flawed—and new—theory. BSD takes the position that that CloudFront is not an "accused instrumentality" because it is not *independently* accused of infringement. Whether CloudFront is alleged to independently infringe or infringe as part of a system with other products or services is a distinction without a difference—both qualify as accused instrumentalities such that they should be identified as part of the patent local rule disclosures. BSD did not identify CloudFront.

That BSD should have disclosed CloudFront in its infringement contentions if it wanted the discovery it now seeks is underscored by BSD's characterization of its allegations. BSD asserts it is entitled to sweeping CloudFront discovery because CloudFront is supposedly necessary for the practice of certain claim limitations. *But that is an accused instrumentality*, and BSD was required to put it at issue in its infringement contentions. Given BSD's admission that it did not identify CloudFront as an accused instrumentality, it has no right to the discovery. *Bender v. Maxim Integrated Prods, Inc.*, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) ("[u]ntil plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1, the Court will not order defendant to proceed with discovery"); *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-01904-WHO, 2019 WL 8810168, at *10 (N.D. Cal. Dec. 16, 2019) ("infringement contentions are supposed to establish a basis for taking discovery, not the other way around").

### CloudFront Is Not at Issue and Not Relevant to Infringement.

BSD's request rests on the premise that CloudFront is purportedly required to meet certain asserted claim limitations. It is hard to reconcile this position with BSD's admission that it did not identify CloudFront as an accused instrumentality. This is clear from its infringement contentions, in which

BSD identified the Accused AWS Instrumentalities as: "AWS Elemental MediaLive, AWS Elemental Live, AWS Elemental MediaPackage, and AWS Elemental Delta." Ex. A (BSD's Infringement Contentions) at 3. BSD made no mention of CloudFront in the section in which it was required to identify the specific accused instrumentalities in accordance with Patent L.R. 3-1(b). *Id*.; *Oracle Am., Inc. v. Google Inc*., 10-cv-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (Patent L.R. 3-1(b) requires a plaintiff to provide "*specific identification* of particular accused products" in its infringement contentions) (emphasis added).

Nor is CloudFront closely related to the Accused Elemental Instrumentalities—AWS launched CloudFront in 2008, well before AWS acquired Elemental in 2015 or the launch of MediaLive and MediaPackage in 2017. BSD's assertion that CloudFront is still implicated by claim 2 despite BSD's failure to identify it in accordance with the patent local rules because it is supposedly necessary to claim 2 is not accurate and is not born out by BSD's claim charts.

Claim 2 provides: "A method according to claim 1, and comprising downloading the sequence using an Internet protocol over the network from the server to the one or more client computers." In its claim charts, BSD highlights the alleged server and the alleged clients that supposedly receive the transmitted slices. *See, e.g.*, Ex. B (AWS HLS Claim Chart) at 62. While CloudFront appears in the graphic, BSD neither highlights it nor points to it for any specific aspect of the limitation. More generally, CloudFront appears only tangentially in BSD's infringement contentions as part of block quotes. BSD addresses specific components unrelated to CloudFront in each instance where it appears, and BSD added emphasis to different portions of those block quotes, revealing that CloudFront is only included to complete the block quote. *See, e.g.*, Ex. B (AWS HLS Claim Chart) at 6, 38, 62, 99, and 109; Ex. C (AWS MPEG-DASH Claim Chart) at 7, 40, 45, 49, 57, 60, 61, 65, 70, 96, 99, 100, 105, 106, and 109. The fact that BSD includes no allegations specifically directed to a CDN, let alone CloudFront, further reinforces that a CDN is not necessary to meet the claim limitations.

Nor is CloudFront the only CDN used with the Accused AWS Instrumentalities, which BSD is forced to acknowledge above when it refers to "CloudFront/CDNs." *See supra*, at 2; s*ee also* Ex. D (Sengupta Tr.) at 94:15-16 ("Q. What CDNs does MediaPackage work with? A. I'm not aware of a CDN that we don't work with."), 95:12-14 ("But there was nothing in the video delivery that did anything different if it was CloudFront or not CloudFront."); Ex. E (Truax July 10 Tr.) at 194:8-14 ("The configuration of a CDN working with MediaPackage is largely a function of the CDN configuration, so not the other way around"); MediaPackage FAQs at https://aws.amazon.com/mediapackage/faqs/ (explaining MediaPackage may be used with non Amazon CDNs). Customers, not AWS, configure their livestreams, including selecting their preferred CDN for delivery. Ex. E at 191:2-10 ("Q. During the timeframe of 2017 to early 2019, other than CloudFront and Akamai, what were the other CDNs that customers could choose in the AWS Media Services console? … A. Customers could use any CDN that they could route into or out of AWS.").

BSD's assertions that CDNs were necessary for infringement only appeared once BSD sought to expand its damages base.

**Defendants Provided All Court-Ordered Discovery on CDN Topics.**

BSD's assertion that the fact AWS provided certain testimony in response to the served Topics related to CDNs somehow renders CloudFront relevant and entitles it to additional discovery is incorrect. BSD already received the discovery related to CloudFront to which it is entitled. The Court addressed each of BSD's requested Topics in its omnibus ruling; the Court granted BSD's

request for Topics 22 and 23, and Mr. Truax provided fulsome testimony on each topic. Dkt. No. 213 at 3. The Court denied BSD's request for financial information concerning ancillary products, including CloudFront, and in doing so set the scope of Topics 15 and 16. *Id.* at 2. Apart from the 30(b)(6) deposition, BSD deposed eight current and former AWS employees in their personal capacity and had every opportunity to develop its theory regarding CloudFront. BSD misleadingly cites AWS witness testimony regarding CDNs generally in an attempt to elevate the "technical importance" of CloudFront. Yet it is not disputed that data passes through a CDN. None of BSD's arguments show that CloudFront is at issue in this case, let alone why the financials of an unaccused instrumentality are necessary. BSD also does not contend AWS witnesses were unprepared or unable to testify regarding CDNs generally or CloudFront specifically. Rather, it seeks to elevate the testimony AWS witnesses did provide, claiming that because certain deposition topics involved CloudFront, BSD is entitled to more discovery. Yet, BSD did not pursue this when fact discovery was actually open.

As with its deposition topics, the Court has already addressed many of BSD's RFPs and, in each case, it denied BSD's request. Under Omnibus Topic 4, BSD asked the Court to treat RFPs 13, 58, and 62 as including CloudFront under the theory that it was a convoyed sale. Dkt. No. 206 at 27. The Court denied BSD's request. Dkt. No. 213 at 2-3. BSD never raised RFPs 103 through 108 in the omnibus discovery letter, or any preceding discovery dispute, yet its decision to put these Requests at issue for the first time is telling. These RFPs are directed toward advertising and marketing. BSD does not take the position that Defendants inadequately produced documents responsive to this request related to the Accused Instrumentalities. Rather, it seeks additional discovery related to an AWS offering that is not accused or at issue in this case.

**BSD's Request Is Not Proportional and Is Another Attempt to Extend Fact Discovery.**

Defendants do not possess the information BSD seeks. ████████████████████ ██████████████████████████████████████████████████████████ *See* Ex. E at 196:7-13. Elemental products bill based on data in and out of its products; the billing structure is agnostic as to where the data is sent. *Id.* at 231:25-232:3; 232:24-233:2. BSD already knows, based on the depositions that it took, that Defendants cannot separate out "revenues, costs, profits, attach rates, and internal analyses only where CloudFront delivered live HLS or MPEG-DASH generated by or delivered through the Accused Instrumentalities"—BSD acknowledges AWS may not have the metrics it seeks above—and yet it requests it anyway.

BSD's requests should be denied. They are nothing more than an attempt at an end-run around the Court's order denying its discovery motion on ancillary products. CloudFront is not accused, BSD already received the discovery on CloudFront to which it is entitled, and the request is not proportional given that —as BSD already knows—AWS does not track the information that BSD is seeking. AWS does not maintain data on customer configurations for the Accused Instrumentalities for the relevant time period—it does not track what streams are broadcast by its customers, how they were configured, or whether CloudFront was used, let alone a revenue allocation for the use of CloudFront with streams that fall within BSD's infringement allegations. Even if the relief BSD now seeks was proper (which it is not), the information it is seeking simply does not exist.

5

Respectfully submitted,

Dated: July 24, 2026

By: */s/ Francisco Villegas*
   Francisco A. Villegas
   VILLEGAS & CEFO LLP

   *Counsel for Plaintiff*
   BSD CROWN, LTD.

By: */s/ Robin Brewer*
   Robin L. Brewer
   SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP

   *Counsel for Defendants*
   AMAZON.COM, INC., AMAZON WEB
   SERVICES, INC., and TWITCH
   INTERACTIVE, INC.

## <u>ATTESTATION CLAUSE</u>

I, Francisco Villegas, am the ECF user whose credentials were used in this filing. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have consented to the filing of this document.

Dated: July 24, 2025

By: */s/ Francisco Villegas*

Francisco Villegas

7