ROBIN L. BREWER, Bar No. 253686
rbrewer@sheppard.com
ALLEGRA J. KRESS, Bar No. 357488
akress@sheppard.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100

THOMAS N. MILLIKAN, Bar No. 234430
tmillikan@sheppard.com
JOSEPH P. REID, Bar No. 211082
jpreid@sheppard.com
NICHOLAS G. LIPPERD, Bar No. 359627
nlipperd@sheppard.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-7437

MICHAEL J. DESTEFANO, *Admitted Pro Hac Vice*
mdestefano@sheppard.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania, Avenue, NW, Suite 100
Washington, DC 20006
Telephone: (202) 747-1900

NATHAN B. SABRI, Bar No. 252216
nathan.sabri@ashurstperkinscoie.com
ASHURST PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000

*Attorneys for Defendant*
AMAZON.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BSD CROWN, LTD.,

Plaintiff,

v.

AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC., AND
TWITCH INTERACTIVE, INC.,

Defendants.

Case No. 3:23-cv-00057-TSH

**DEFENDANT AMAZON.COM, INC'S MOTION FOR SUMMARY JUDGMENT**

Date: November 19, 2026
Time: 10:00 am
Judge: Hon. Thomas S. Hixson
Place: Courtroom E, 15th Floor

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2026, at 10:00 am, or as soon thereafter as counsel may be heard in the United States District Court for the Northern District of California, San Francisco Division, in Courtroom E, 15th Floor before the Honorable Thomas S. Hixson, Defendant Amazon.com, Inc. ("Amazon") will and hereby does move for summary judgment of no direct infringement and no willful infringement pursuant to Federal Rule of Civil Procedure 56.

**STATEMENT OF RELIEF REQUESTED**

Amazon requests entry of judgment as a matter of law in its favor of no infringement of U.S. Patent No. 6,389,473. Alternatively, Amazon requests entry of judgment as a matter of law of no willful infringement of U.S. Patent No. 6,389,473.

**CERTIFICATE OF CONFERENCE**

The Court's July 7, 2026 Updated Case Management Order (Dkt. No. 226) set forth rules for summary judgment motions, including a meet and confer requirement and procedures for filing separate or joint statements of fact. Dkt. No. 226 at 2-3. On October 2, 2026, the Court further ordered the parties "to meet and confer by October 14, 2026 to determine whether they will file a joint statement or separate statements, after which Amazon shall file revised motions by October 22, 2026." Dkt. No. 278 at 2. Pursuant to those Orders, Amazon certifies that the Parties met and conferred on October 13, 2026 and agreed that with respect to Amazon's Motion for Summary Judgment, the Parties will file separate statements of fact in accordance with the procedures set forth in paragraphs C(1)-(3) of the Court's July 7, 2026 Updated Case Management Order. Dkt. No. 226 at 2-3.

# TABLE OF CONTENTS


**I. INTRODUCTION ..... 1**

**II. BACKGROUND ..... 2**

A. BSD's Lack of Infringement Claims Against Amazon ..... 2

B. BSD's Lack of Damages Claims Against Amazon ..... 5

C. BSD's Willfulness Allegations Against Amazon ..... 5

**III. LEGAL STANDARDS ..... 7**

**IV. ARGUMENT ..... 7**

A. Each of BSD's Theories of Direct Infringement Against Amazon Fail as a Matter of Law ..... 7

1. Amazon's "Ownership" of Alleged Infringers AWS and Twitch Is Not a Legally Cognizable Basis for Infringement ..... 8

2. BSD Cannot Render Amazon Liable for AWS's Actions Under Either an Agency Theory or Piercing the Corporate Veil ..... 10

3. BSD Cannot Establish a Prima Facie Case that Amazon Has Satisfied All Steps of Any Asserted Method Claim ..... 11

B. BSD Cannot Prove Willful Infringement Because There Is No Evidence of Intent or Egregious Conduct. ..... 15

**V. CONCLUSION ..... 16**

# TABLE OF AUTHORITIES

Page(s)

Cases

*A. Stucki Co. v. Worthington Indus., Inc.*
849 F.2d 593 (Fed. Cir. 1988) ........ 8, 10

*AquaTex Indus., Inc. v. Techniche Sols.*
479 F.3d 1320 (Fed. Cir. 2007) ........ 13, 15

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*
361 F. Supp. 2d 210 (S.D.N.Y. 2005) ........ 9

*Bayer Healthcare LLC v. Baxalta Inc.*
989 F.3d 964 (Fed. Cir. 2021) ........ 15

*Berkey v. Third Ave. Ry. Co.*
244 N.Y. 84 (1926) ........ 8

*Bos. Sci. Corp. v. Cook Grp. Inc.*
653 F. Supp. 3d 541 (S.D. Ind. 2023) ........ 9

*Bowoto v. Chevron Texaco Corp.*
312 F. Supp. 2d 1229 (N.D. Cal. 2004) ........ 10, 11

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ........ 7

*Centricut, LLC v. ESAB Grp., Inc.*
390 F.3d 1361 (Fed. Cir. 2004) ........ 13, 15

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*
642 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 15

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*
946 F.3d 1367 (Fed. Cir. 2020) ........ 15

*Finjan LLC v. Palo Alto Networks, Inc.*
No. 14-cv-04908-RS, 2025 WL 885597, Slip Op. (N.D. Cal. Mar. 21, 2025) ........ 14

*Finjan, Inc. v. Cisco Sys. Inc.*
No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ........ 15

*Finjan, Inc. v. Symantec Corp.*
14-cv-02998-HSG, 2018 WL 620169 (N.D. Cal. Jan. 30, 2018) ........ 12

*FloodBreak, LLC v. Art Metal Indus., LLC*
No. 3:18-CV-503 (SRU), 2020 WL 5300250 (D. Conn. Sept. 3, 2020) ........ 9

*Google LLC v. Princeps Interface Techs. LLC*
No. 19-CV-06566-EMC, 2020 WL 1478352 (N.D. Cal. Mar. 26, 2020)....................................15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*
579 U.S. 93 (2016)....................................15

*Intell. Ventures I LLC v. Symantec Corp.*
234 F. Supp. 3d 601 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018)....................................16

*Lemelson v. U.S.*
752 F.2d 1538 (Fed. Cir. 1985)....................................13

*Limelight Networks, Inc. v. Akamai Techs., Inc.*
572 U.S. 915 (2014)....................................13

*MasterObjects, Inc. v. Amazon.com, Inc.*
No. C20-08103 WHA, 2022 WL 4280640 (N.D. Cal. Sept. 15, 2022)....................................13, 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
475 U.S. 574 (1986)....................................11

*Mobil Oil Corp. v. Linear Films, Inc.*
718 F. Supp. 260 (D. Del. 1989)....................................9, 10, 11

*Monsanto Co. v. Syngenta Seeds, Inc.*
503 F.3d 1352 (Fed. Cir. 2007)....................................13

*Oracle Am., Inc. v. Google Inc.*
10-cv-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)....................................12

*Radware, Ltd. v. F5 Networks, Inc.*
No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016)....................................16

*Ranza v. Nike, Inc.*
793 F.3d 1059 (9th Cir. 2015) ....................................8, 9, 10

*Resh, Inc. v. Skimlite Mfg. Inc.*
666 F. Supp. 3d 1054 (N.D. Cal. 2023) ....................................9, 10

*Sonos, Inc. v. Google LLC*
591 F. Supp. 3d 638 (N.D. Cal. 2022) ....................................6, 15

*Tegal Corp. v. Tokyo Electron Co.*
248 F.3d 1376 (Fed. Cir. 2001)....................................8

*U.S. v. Bestfoods*
524 U.S. 51 (1998)....................................8

## I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Amazon does not belong in this case as a Defendant because neither it nor its products stand accused of patent infringement. Plaintiff BSD has admitted as much to this Court, expressly conceding after the close of fact discovery that "BSD does not accuse Amazon.com of infringing the patent based on its offering of Prime Video." Dkt. No. 238 at 2. Indeed, at every stage of this litigation—from BSD's complaint, to its infringement contentions, to its discovery responses, and now its expert reports—BSD has actively and expressly confirmed that the only accused products are AWS's Elemental Live, Elemental MediaLive, Elemental MediaPackage, and Elemental Delta ("AWS Accused Instrumentalities"), and Twitch's streaming service ("Twitch Accused Instrumentality") (collectively, "Accused Instrumentalities"). None of those are Amazon products.

In BSD's own words, its only reasons to keep Amazon in the case are its claims that (1) Amazon operates Defendant AWS "as its parent," and (2) AWS used the Accused Instrumentalities to live stream "on behalf of Amazon.com" just as AWS did "on behalf of [other customers like] NBC and PBS." *Id.* Yet, both of these theories fail legally and factually.

BSD's "control" theory is not legally cognizable. The law is clear that a parent corporation is not liable for the purported infringement of its subsidiaries absent evidence of a special agency-like relationship specific to the accused conduct, or some other corporate malfeasance. BSD has not advanced and cannot prove any such theory. BSD has never articulated any facts showing that "piercing the corporate veil" is appropriate in the present case. Amazon therefore does not infringe the '473 patent based on any purported "control" over AWS.

BSD's "use" theory fails for a simple failure of proof: BSD has not, and cannot, show that Amazon practices every limitation of any asserted claim from the '473 patent. Merely alleging that Amazon "uses" AWS products without a proper limitation-by-limitation analysis in its infringement contentions and expert report is plainly insufficient.

The deficiencies in BSD's only theories against Amazon should result in summary judgment of noninfringement and Amazon's dismissal from the case. However, if the Court disagrees for some reason, Amazon is alternatively entitled to summary judgment as to at least BSD's claim for willful infringement. A finding of willful infringement requires evidence of both

(1) egregious conduct by the alleged infringer, and (2) specific intent to infringe the patent. With fact discovery complete, BSD has not—and cannot—marshal any evidence to show either of these elements for Amazon. That failure of proof is fatal, and summary judgment is appropriate.

## II. BACKGROUND

### A. BSD's Lack of Infringement Claims Against Amazon

On January 5, 2023, BSD filed its complaint for infringement of the '473 patent against Amazon, AWS and Twitch. Dkt. No. 1, (the "Complaint.") To the extent the Complaint made allegations against Amazon, they stemmed entirely from Amazon's purported use of AWS products.[1] *See, e.g.*, *id.* ¶ 79. In other words, the Complaint only accused Amazon as an internal customer of AWS, the same as if it were a third-party content provider purchasing AWS's services.

Consistent with the Complaint, BSD's infringement contentions did not include **any** Amazon products as accused products. Rather, in its Patent Local Rule 3-1(b) disclosure of Amazon accused instrumentalities, BSD only identified the AWS Accused Instrumentalities and Twitch Accused Instrumentality. Ex. 1 (BSD's Infringement Contentions) at 3.[2] The contentions expressly explained that BSD was only accusing Amazon of infringement by virtue of the fact that the AWS Accused Instrumentalities included "services/products that are owned and/or operated by Amazon.com." *Id.* at 3.

BSD's accompanying claim charts did not provide a limitation-by-limitation disclosure of how any Amazon products or services, alone or in combination with the AWS Accused Instrumentalities, allegedly infringe. The charts simply stated Amazon purportedly "owned" or "operated" the Accused Instrumentalities from AWS and Twitch. In fact, while BSD provided separate charts for Amazon and AWS, the charts were virtually identical, merely substituting "AWS" for "Amazon" and otherwise using boilerplate language. Ex. 2 at 2, Ex. 3 at 2, Ex. 4 at 2,

---

[1] BSD grouped Amazon and AWS together as "Amazon" in the Complaint and alleged that the improperly defined "Amazon" implemented "Amazon Infringing Services." Dkt. No. 1 at ¶ 57. But, even with this improper comingling, the accused "Amazon Infringing Services" were limited to AWS products: AWS Elemental Media Services and AWS Elemental Live. *Id.*

[2] References to Ex. __ refer to the exhibits attached to the Declaration of Robin L. Brewer in support of Amazon's Motion for Summary Judgment, attached hereto. Amazon has submitted excerpted versions of the exhibits with the sections it believes are necessary to decide the instant motion, but can provide the Court with a copy of the entirety of each exhibit if helpful.

Ex. 5 at 2. The only substantive difference appears in one Amazon chart, where BSD included language indicating Amazon infringes because AWS is its subsidiary:

> "Amazon owns AWS, which [is] a wholly-owned subsidiary of Defendant Amazon. At all times relevant to this case, Amazon and AWS have acted in concert with each other, and AWS acts at the direction of Amazon. Amazon exercises control over AWS. AWS's technology is used by Amazon, for instance for Amazon's real-time broadcasting. For this reason, Amazon infringes the '473 Patent based on the video streaming systems described in this claim chart, including Elemental Live and Elemental MediaLive."

Ex. 5 at 2. BSD never sought leave to amend its infringement contentions in the nearly three years between their service on July 21, 2023 and when fact discovery closed on July 17, 2026.

BSD's discovery responses did not identify any accused Amazon products, either. Defendants' Interrogatory No. 30 asked BSD to "[i]dentify each stream and/or broadcast using the Accused AWS Instrumentalities that BSD accuses of infringing the Asserted Claims of the '473 patent in this litigation." Ex. 6 (Defs.' Sixth Set of Interrogs.) at 3 (No. 30). BSD's response only identified one stream, for which BSD indicated the NFL was the relevant AWS customer. Ex. 7 (Pl.'s July 17, 2026 Supp'l Objs. and Resps. to Defs.' Interrogs. (First Supp'l Resp to Interrog. No. 30)) at 93.

Following fact discovery, BSD expressly represented to the Court that it was not accusing any Amazon products of infringement. On July 25, 2026 (one week after fact discovery closed), the parties submitted a Joint Discovery Letter Brief wherein BSD sought discovery into financials for Amazon's Prime Video product. Dkt. No. 238. In its portion of the joint letter brief, BSD unequivocally stated Prime Video was not an accused product:

> "[T]o be clear, **BSD does not accuse Amazon.com of infringing the patent based on its offering of Prime Video**; rather, as the infringement contentions make clear, AWS (and as its parent, Amazon.com, Inc.) operates the Accused Instrumentalities for each of its customers to provide infringing live streaming services. That is, just as AWS used the Accused Instrumentalities to live stream on behalf of NBC and PBS, AWS used the Accused Instrumentalities to live stream on behalf of Amazon.com. **Prime Video itself is not the Accused Instrumentality and need not have been disclosed in the patent disclosures.**"

Dkt. No. 238 at 3 (emphases added). Despite BSD further alleging in this brief that "[f]rom the

beginning, BSD has accused Prime Video as an infringing user of AWS's Accused Instrumentalities," *id.*, the Court emphasized that Prime Video was not accused when it denied BSD's discovery request. Specifically, the Court confirmed that "BSD does not contend that Amazon.com infringes the patent based on its offering of Prime Video, which is why Prime Video is not discussed in BSD's infringement contentions," and "[f]or Amazon's financial information attributable to Prime Video to be relevant, Prime Video would need to be an infringing product – a theory BSD disclaims and that is nowhere mentioned in its infringement contentions." Dkt. No. 251 at 3-4.

BSD's infringement expert report also did not analyze infringement by Amazon, further corroborating that Amazon is not accused as an infringer. On September 9, 2026, BSD served its expert's opening report on infringement ("Jamieson Report" (Ex. 8)). The report totaled 448 pages and included a section entitled "Components of the Accused Technology," which purported to provide an overview of the Accused Instrumentalities. That section had only two subsections: "Twitch" and "AWS Accused Instrumentalities." Ex. 8 ¶¶ 74-88. There was no section for "Amazon" or "Amazon Accused Instrumentalities." In fact, Dr. Jamieson's report did not provide **any** claim-by-claim analysis of any Amazon product or service, alone or in combination with any Accused Instrumentality, for alleged patent infringement. *Id.*

Moreover, Dr. Jamieson's report hardly mentioned Amazon products or services at all.[3] In a single paragraph of his infringement analysis, Dr. Jamieson listed several Amazon "Fire" or "Echo" branded devices but only did so as part of an exemplary list of Amazon and third-party devices that could be used to stream video from the AWS Accused Instrumentalities (*i.e.*, as a customer). *Id.* ¶ 815. Similarly, Dr. Jamieson mentioned in a handful of places that Amazon's Prime Video service used Elemental services as a customer. *Id.* ¶¶ 124 ("Amazon's video service 'was already a customer of Elemental before the acquisition'"), 474 ("including for Prime Video, an AWS customer"), 815 (listed among devices and services that can stream video from the AWS

[3] The report conflated "Amazon" and "AWS," but it only referenced both parties in terms of AWS's products. The report established the defined term "Amazon.com" to refer to Amazon.com, Inc. and the term "Amazon Defendants" to refer collectively to Amazon.com and AWS. *Id.* ¶ 1. But "Amazon Defendants" only appeared once, to list the patent claims that BSD asserts jointly against Amazon and AWS. *Id.* All of the analysis was in terms of AWS.

Accused Instrumentalities). These devices and services were not themselves Accused Instrumentalities. *Id.* ¶¶ 74-88.

**B. BSD's Lack of Damages Claims Against Amazon**

BSD also seeks no damages against Amazon. In its final Patent L.R. 3-8 damages contentions, served on the last day of fact discovery, BSD simply stated that [redacted] Ex. 13 (BSD Third Amended Damages Contentions) at 5. The damages contentions went on to [redacted] *Id.* at 7-8.

BSD's expert report on damages confirmed that [redacted] On September 9, 2026, BSD served the Expert Report of Aminta Raffalovich (the "Raffalovich Report" (Ex. 9)) on damages. The Raffalovich Report [redacted]. Ex. 9 ¶¶ 20-21 ([redacted]), 135-36 ([redacted]), 391 ([redacted]), 476 ([redacted]), 480 ([redacted]). Notably, Ms. Raffalovich's damages framework [redacted] *Id.* ¶ 21.a.i (emphasis added). For AWS, she started by [redacted]. *Id.* ¶ 21.b.i (emphasis added). There was [redacted].

**C. BSD's Willfulness Allegations Against Amazon**

BSD's Complaint alleged that all three Defendants willfully infringed the '473 patent based on pre-suit knowledge and/or willful blindness.[4] Dkt. No. 1 ¶¶ 56, 80, 85. Specifically, the

[4] BSD makes no claims for post-suit willful infringement because the '473 patent expired on March 24, 2019, but this litigation was not filed until January 5, 2023. Ex. 1 at 5 ("BSD further identifies

Complaint alleged that, on December 18, 2015, a USPTO examiner cited the '473 patent as a primary reference in two office actions against an Amazon patent application. Dkt. No. 1 ¶¶ 40-51. BSD then averred that "Amazon's infringement has occurred with full knowledge of the '473 Patent since at least December 18, 2015, and has been willful and deliberate ever since." *Id.* ¶ 80. The allegations did not identify particular facts evidencing knowledge of the patent by AWS or Twitch.

Early in the case, Defendants moved to dismiss the willfulness claims based on a failure to allege pre-suit knowledge of the patent as to AWS and Twitch, and a failure to plausibly plead intent or egregious conduct as to Amazon. Dkt. No. 32. Judge Orrick, then presiding over this case, dismissed the willfulness allegations against AWS and Twitch, but denied the 12(b)(6) motion as to Amazon, reasoning that, "[f]or now, it is sufficient to plausibly allege that Amazon.com knew of the patent, that it tried several times to convince the USPTO that the technology did not infringe, that the technology did in fact infringe, and that it has infringed for eight years despite its knowledge." Dkt. No. 51 at 8 (dismissing willfulness against AWS and Twitch), 11 (denying motion to dismiss as to Amazon). Importantly, however, Judge Orrick noted that, while "a plaintiff is not expected to **plead** in detail all the facts that may support intent; that is the purpose of discovery," *id.* at 11, and a plaintiff's ability to **recover** enhanced damages for willful infringement "relies on the existence and extent of egregious behavior by the defendant." *Id.* (citing *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643–45 (N.D. Cal. 2022)) (emphases added).

Discovery did not uncover any additional facts beyond what was alleged in BSD's Complaint. BSD's infringement contentions merely reiterated the Complaint's allegations, *i.e.*, that the USPTO cited the '473 patent during prosecution of unrelated patents pre-suit. Ex. 1 at 5-6. And, in response to Defendants' Interrogatory No. 5, seeking BSD's contentions as to secondary considerations of non-obviousness, [redacted]. Ex. 10 (BSD's Aug. 10, 2026 Response to Interrogatory No. 5) at 28. To

---

the end of the claimed damages period as March 24, 2019, which is the expiration date of the '473 Patent"); Dkt. No. 1 (filed Jan. 5, 2023).

demonstrate it had nothing to hide, Amazon agreed to a limited privilege waiver and produced its correspondence with counsel prosecuting the patent applications in question. *See* Ex. 12 (Amazon's 7/17/26 Amended Response to Fourth Set of Interrogatories to Amazon.com) at 10 (No. 12)) (citing Amazon's production of the "Baker documents" (Baker Hostetler was responsible for prosecuting the patent applications)).

During depositions, Amazon's 30(b)(6) designee, Scott Hayden, directly addressed and confirmed that the '473 patent was "cited by the...**examiner** in a rejection," which Amazon's outside counsel reviewed and responded to, and that the patent had subsequently been cited by Amazon's outside counsel "in two or three other applications." *See* Ex. 10 (BSD's Aug. 10, 2026 Response to Interrogatory No. 5) at 28 (citing Ex. 11 (S. Hayden Dep. Tr. at 29:16-30:10)) (emphases added). Mr. Hayden further testified that Amazon first became aware of the '473 patent "[a]t the time of the lawsuit, which I think was January of '23." Ex. 11 at 29:12-15.

Finally, the Jamieson Report on infringement contained no mention of willfulness, intent, or even awareness of the patent by Amazon. Accordingly, BSD provided no expert opinions showing alleged evidence of willful infringement.

## III. LEGAL STANDARDS

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where there is no evidence to support a plaintiff's claims, the moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial," *id.* at 324 (internal quotations omitted).

## IV. ARGUMENT

### A. Each of BSD's Theories of Direct Infringement Against Amazon Fail as a Matter of Law

BSD has no remaining viable theory of infringement against Amazon. BSD has never

alleged indirect infringement. Dkt. No. 1 ¶¶ 77-81 (indirect infringement not alleged in the Complaint); Ex. 1 (Infringement Contentions) at 4 ("Plaintiff is not currently asserting a claim of indirect infringement in this case"); Ex. 8 (Jamieson Report) ¶ 21 ("I understand that BSD has not made indirect infringement allegations in this case."). And BSD does not accuse any Amazon products of directly infringing the '473 patent, either alone or in combination with any of the Accused Instrumentalities. *See* Ex. 1; Ex. 8 ¶¶ 74-88 (listing only AWS and Twitch products in the "components of the accused technology"). As BSD itself represented to the Court in discovery, "BSD does not accuse Amazon.com of infringing the patent based on its offering of Prime Video." Dkt. No. 238 at 3. BSD's only theories of infringement relate to Amazon's alleged "control" over its subsidiaries, such as AWS, or potentially by virtue of Amazon's "use" of the AWS Accused Instrumentalities as a customer. Ex. 1 (Infringement Contentions) at 3. But each of those theories fail as a theory of direct patent infringement against Amazon, leaving BSD with no viable path forward and necessitating Amazon's dismissal as a defendant.

#### 1. Amazon's "Ownership" of Alleged Infringers AWS and Twitch Is Not a Legally Cognizable Basis for Infringement

BSD's assertions that "Amazon owns AWS" or that its subsidiaries' accused products are "owned...by Amazon.com" fail to establish liability as a matter of law. Ex. 5 at 2; Ex. 1 at 3.

It is a bedrock principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries absent special circumstances. *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) (collecting cases); *Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 85 (1926) (Cardozo, J.); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary"). In patent cases, the Federal Circuit has held that "[i]n the absence of a showing of control over another party, merely permitting that party to commit infringing acts does not constitute infringement." *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378 (Fed. Cir. 2001) (reversing grant of contempt patent infringement injunction against parent company for acts of infringement committed by subsidiary); *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988) (holding that a parent "can be liable for [its subsidiary's] infringement…only

if the evidence reveals circumstances justifying disregard of [their] status…as distinct, separate corporations," which "requires invocation of those general principles relating to piercing the corporate veil") (internal citations omitted). A parent-subsidiary relationship alone is insufficient to support a direct patent infringement claim against the owner/parent company for acts committed by the subsidiary. *See Ranza*, 793 F.3d at 1070; *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1064 (N.D. Cal. 2023) (dismissing individual owners of a defendant corporation in absence of cognizable infringement claims against individual owners). In that vein, courts have examined a variety of facts exemplifying a typical parent-subsidiary relationship and declined to confer infringement liability in situations similar to (or more extreme than) the present case. *See, e.g.*, *Bos. Sci. Corp. v. Cook Grp. Inc.*, 653 F. Supp. 3d 541, 586-88 (S.D. Ind. 2023) (awarding summary judgment to a parent corporation despite a "substantial and continuing" relationship, including significant overlap in officers/directors and parent's support, oversight, and control over child corporation); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp. 2d 210, 218 (S.D.N.Y. 2005) (denying plaintiff's motion to join defendant's parent corporation as a party even where subsidiary and parent shared same officers, directors, customer and office space, and parent participated in subsidiary's legal defense); *FloodBreak, LLC v. Art Metal Indus., LLC*, No. 3:18-CV-503 (SRU), 2020 WL 5300250 at *9 (D. Conn. Sept. 3, 2020) (granting summary judgment for a parent corporation despite its "spearhead[ing] the design, manufacture, and sale of [its subsidiary's] allegedly infringing [product]"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266-67 (D. Del. 1989) (awarding summary judgment for parent corporation despite parent and subsidiary sharing common officers and directors, failing to keep separate agendas or minutes for board meetings, parent approving hiring and salaries for subsidiary's officers, major expenditures, and policies, and parent's obligations being paid from subsidiary's bank account).

BSD's only allegation has been that Amazon infringes because "Amazon owns AWS" or because the AWS Accused Instrumentalities "are owned...by Amazon.com." Ex. 1 at 3; Ex. 5 at 2. But BSD has not provided any additional facts showing how Amazon's ownership of AWS alone provides it a legally cognizable claim for direct patent infringement against Amazon; much less facts sufficient to meet the appropriate standard. Indeed, its infringement contentions are silent on

the matter. *See* Ex. 1 at 3 (providing no explanation beyond assertions that "the following services/products [] are owned and/or operated by Amazon.com"). Moreover, it is simply wrong to say that the AWS Accused Instrumentalities are "owned" by Amazon. Putting aside that each product has "AWS" in its name, BSD's own contentions state the exact opposite—that the accused products are "owned...by AWS." *Id.*

Given that BSD has provided no evidence that Amazon's mere ownership over AWS can confer patent liability, summary judgment is appropriate. *See A. Stucki Co.*, 849 F.2d at 596; *Ranza*, 793 F.3d at 1070; *Resh, Inc.*, 666 F. Supp. 3d at 1064.

### 2. BSD Cannot Render Amazon Liable for AWS's Actions Under Either an Agency Theory or Piercing the Corporate Veil

BSD has also failed to marshal facts allowing Amazon to be liable for alleged infringing acts committed by AWS under (1) an agency theory of infringement or (2) derivative liability or "piercing the corporate veil" theory.

For an agency theory, the plaintiff bears the burden to show that the subsidiary was acting on the parent corporation's behalf with respect to the specific conduct accused of infringement. *See Bowoto*, 312 F. Supp at 1240 ("Not only must an arrangement exist between the two corporations so that one acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing"); *Mobil Oil*, 718 F. Supp. at 271 ("the relevant question is whether the alleged principal...directed the specific actions of the alleged agent...which resulted in infringement").

For derivative liability, a parent can be liable for a subsidiary's patent infringement "only if the evidence reveals circumstances justifying disregard of the status of [the parent and child corporations] as distinct, separate corporations." *A. Stucki Co.*, 849 F.2d at 596 (affirming the district court's directed verdict for a parent corporation). This type of liability, often called "piercing the corporate veil," requires a showing of fraud or other special circumstances. *Mobil Oil*, 718 F. Supp. at 268.[5]

[5] As the District of Delaware noted in *Mobil Oil*, 718 F. Supp. at 268, there is a potential choice of law issue as to whether state law or federal common law should apply to the veil-piercing question. Here, Amazon, AWS, and Twitch are each Delaware corporations. The *Mobil Oil* court, collecting

BSD has not made any such claims here, including in its Patent L.R. 3-1 and 3-2 infringement contentions or in any of its expert reports. BSD did not assert fraud or misuse of the corporate form to justify piercing the corporate veil, nor that Amazon directed AWS as its agent to perform any specific infringing conduct. Instead, BSD only alleged in conclusory fashion that, "Amazon and AWS have acted in concert with each other, and AWS acts at the direction of Amazon. Amazon exercises control over AWS." Ex. 5 at 2. BSD provided no explanation or evidence in support of these conclusory statements, and its experts did not analyze or opine on these theories. Such bare, generalized allegations are insufficient to survive summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."). BSD, therefore, to the extent its contentions could be construed to have alleged these theories, has failed to meet its burden of proving that Amazon infringes the '473 patent by virtue of alleged acts of infringement committed by AWS.

### 3. BSD Cannot Establish a Prima Facie Case that Amazon Has Satisfied All Steps of Any Asserted Method Claim

Given the complete failure of BSD's ownership, agency and derivative liability theories against Amazon, to proceed at this point BSD bears the burden of establishing that Amazon has satisfied all elements of at least one patent claim. But BSD has failed to do so for at least two reasons. First, to the extent BSD seeks to pursue an infringement theory based on Amazon's purported "use" or "operation" of the Accused Instrumentalities,[6] BSD has waived those arguments by failing to disclose them in its infringement contentions. Second, even if not waived, BSD's expert on infringement, Dr. Kyle Jamieson, has provided no expert opinion sufficient to

---

cases, concluded that under either the Delaware or federal common law standards, "the outcome is the same. Fraud or something like it is required." *Id.* Courts in this District are in accord. *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1237 (N.D. Cal. 2004) (citing *Mobil Oil* and concluding "state and federal precedent on this issue do not appear to diverge in any way meaningful to the adjudication of this case"), *overruled-in-part on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014).

[6] *See, e.g.*, Ex. 1 at 3 (alleging the Accused Instrumentalities include "services/products that are...**operated by** Amazon.com."); Ex. 5 at 2 (alleging as to MPEG-DASH, "AWS's technology is **used** by Amazon, for instance for Amazon's real-time broadcasting.") (emphasis added).

generate a genuine dispute of material fact, and summary judgment is appropriate.

Specifically, regarding the first reason, any allegation that Amazon directly infringes based on its own use is waived. Patent L.R. 3-1(b) requires a plaintiff to provide "specific identification of particular accused products" in its infringement contentions. Contentions which include "broad categorical identifications" or "vague references without explanation or specificity" fail to meet this District's exacting standards. *Oracle Am., Inc. v. Google Inc.*, 10-cv-03561-WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011); *Finjan, Inc. v. Symantec Corp.*, 14-cv-02998-HSG, 2018 WL 620169, at *5 (N.D. Cal. Jan. 30, 2018). Patent Local Rule 3-1(d) further states "[i]nsofar as alleged direct infringement is based on joint acts of multiple parties, **the role of each such party in the direct infringement must be described**." Patent L.R. 3-1(d) (emphasis added).

BSD's contentions did not identify any Amazon products, nor did they explain how or under what circumstances Amazon has practiced any limitations of the asserted claims of the '473 patent. Instead, BSD's contentions merely asserted without explanation that the other Defendants' Accused Instrumentalities were "operated by Amazon.com." Ex. 1 at 3. For its claim charts, BSD cloned the charts it produced for AWS products, replaced "AWS" with "Amazon," and added boilerplate language to one of those charts that just stated "AWS's technology is used by Amazon, for instance for Amazon's real-time broadcasting." Ex. 5 at 2. The chart did not explain how Amazon allegedly used AWS's technology, or what "Amazon's real-time broadcasting" refers to. This failure to comply with the Patent Local Rules, standing alone, dooms any attempt by BSD to assert infringement claims against Amazon.

BSD's statements in discovery further confirmed that no Amazon products were accused. For example, BSD failed to identify any infringing Amazon streams in its interrogatory responses. Defendants' Interrogatory No. 30 asked BSD to "[i]dentify each stream and/or broadcast using the Accused AWS Instrumentalities that BSD accuses of infringing the Asserted Claims of the '473 patent in this litigation." Ex. 6 at 3 (Interrogatory No. 30). BSD's responses only identified one stream, for which it stated the NFL was the relevant AWS customer. Ex. 7 at 93 (First Supplemental Response to Interrogatory No. 30). Second, BSD confirmed it was not accusing any Amazon products of infringement, and the Court denied discovery into Prime Video on that basis.

*See* Dkt. No. 251 at 3-4. Accordingly, there exist no accused Amazon products in this case such that Amazon has "used" or "operated" the alleged inventions claimed in the '473 patent.

As to the second reason, even if BSD had not waived its chance to demonstrate infringement, it has submitted no expert opinion showing that Amazon performs each step of the methods claimed in the '473 patent. Each asserted claim against Amazon is a method claim. Dkt. No. 1-1 ('473 patent) at 14:17-15:62 (Claims 1, 2, 11, 12, 23, and 24); Ex. 9 at ¶ 137 ("I understand that the asserted claims of the '473 Patent reflect method claims."). To infringe a method claim, the patentee bears the burden of demonstrating that the alleged infringer has practiced each step of the method. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out."); *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) ("As this court has stated many times, for infringement of a process invention, all of the steps of the process must be performed, either as claimed or by an equivalent step.") (internal quotations omitted); *Lemelson v. U.S.*, 752 F.2d 1538, 1549 (Fed. Cir. 1985) ("For method claims, a plaintiff must prove the modes in which the accused devices have been operated and the manner in which those modes infringe the patent claims."). And for cases where the claims cannot be easily understood by a jury, such as the software claims at issue in this litigation, expert testimony is necessary to survive summary judgment. *See MasterObjects, Inc. v. Amazon.com, Inc.*, No. C20-08103 WHA, 2022 WL 4280640, at *9 (N.D. Cal. Sept. 15, 2022) (granting summary judgment of non-infringement where patentee did not provide expert testimony that software met claim limitation and accused infringer offered expert opinion of non-infringement); *Centricut, LLC v. ESAB Grp., Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004) (reversing judgment of infringement where patentee did not proffer expert testimony of infringement in case involving complex technology); *cf. AquaTex Indus., Inc. v. Techniche Sols.,* 479 F.3d 1320, 1329 n.7 (Fed. Cir. 2007) ("expert infringement testimony is generally required in cases involving complex technology").

Dr. Jamieson provided no claim-by-claim analysis showing Amazon has practiced each step of any of the methods asserted by BSD for the '473 patent. The Jamieson Report simply mentioned that Amazon sells products which, like third party products, can use AWS' services.

But Dr. Jamieson did not explain how Amazon actually meets any specific claim limitation. *See* Ex. 8 ¶¶ 124, 474, 475, 815 (referencing Amazon products but failing to explain how those products support infringement). Dr. Jamieson's conclusory opinions on this point doom any claim for infringement against Amazon. *See Finjan LLC v. Palo Alto Networks, Inc.*, No. 14-cv-04908-RS, 2025 WL 885597, Slip Op. at *5 (N.D. Cal. Mar. 21, 2025) (granting summary judgment of no patent infringement of software patent where plaintiff provided only conclusory infringement opinions and noting "[t]he battle of the experts is appropriately called at the summary judgment stage when one side presents no non-conclusory expert opinion on the point."). And even if Dr. Jamieson's opinions could be construed as alleging that some Amazon product somewhere "uses" the AWS Accused Instrumentalities, that fact alone cannot show infringement of the methods claimed in the '473 patent sufficient to defeat summary judgment. As BSD's own expert on damages recognized, [redacted]" *See, e.g.*, Ex. 9 ¶ 93. Indeed, as BSD's expert on infringement, Dr. Jamieson notes, the AWS Accused Instrumentalities are capable of being configured in ways which would not infringe the '473 patent. *See, e.g.*, Ex. 8 ¶¶ 85 ("AWS Elemental Live is a software encoder that...produces adaptive bitrate outputs in [accused] HLS, [accused] MPEG-DASH, [non-accused] Microsoft Smooth Streaming, and [non-accused] RTMP from a single encoder"), 86 ("AWS Elemental MediaLive is the cloud-hosted counterpart to Elemental Live"), 87 ("AWS Elemental Delta is a video delivery platform that...receives the encoder's output and repackages it on request into [accused] HLS, [accused] DASH, [non-accused] HDS, or [non-accused] Smooth Streaming"), 88 ("AWS Elemental MediaPackage is the cloud-native successor to Delta"). Expert opinion stating Amazon uses the AWS Accused Instrumentalities generally therefore does not show that Amazon has practiced each step of any asserted claim of the '473 patent.

Because BSD has failed to provide any expert or fact testimony establishing even a *prima facie* case for Amazon practicing each step of any asserted claim of the '473 patent, summary judgment of no infringement is appropriate. *See MasterObjects*, No. C20-08103 WHA, 2022 WL

4280640, at *9; *Centricut, LLC*, 390 F.3d at 1369-70; *cf. AquaTex Indus., Inc.* at 1329 n.7.

**B. BSD Cannot Prove Willful Infringement Because There Is No Evidence of Intent or Egregious Conduct.**

In the event the Court disagrees with the arguments above and allows BSD to proceed with an infringement case against Amazon despite none of its products being accused, the Court should—at an absolute minimum—grant Amazon summary judgment of no willfulness. After all, BSD's willfulness claim barely survived Defendants' early motion to dismiss, with Judge Orrick warning BSD that, "[t]o establish willfulness, the patentee must show the accused infringer had [the] specific intent to infringe at the time of the challenged conduct." Dkt. No. 51 at 4 (quoting *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc*. 579 U.S. 93, 105-06 (2016))); *see also Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022).

Yet, despite having years of discovery in which to prove its case, BSD did not generate any evidence of deliberate or specific intent to infringe, or of egregious conduct by Amazon. Specific intent to infringe requires more than mere knowledge of the patent. *Bayer Healthcare LLC*, 989 F.3d at 988 ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement."). Courts in this District have also repeatedly required a plaintiff to show egregious conduct to sustain willfulness claims. *See, e.g.*, *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022) (dismissing willfulness claims because they "d[id] not demonstrate that Zoom's behavior was egregious."); *Google LLC v. Princeps Interface Techs. LLC*, No. 19-CV-06566-EMC, 2020 WL 1478352 at *3 (N.D. Cal. Mar. 26, 2020) (dismissing willfulness claims, holding that a plaintiff "must plead specific factual allegations of egregious conduct, that it can under Rule 11, to pursue a viable willful infringement claim."); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423 at *5 (N.D. Cal. June 7, 2017) ("because [plaintiff] has failed to make sufficient factual allegations that [defendant] had pre-suit knowledge of the Asserted Patents or that [defendant]'s behavior was 'egregious ... beyond

typical infringement,' it has failed to state a claim for willful infringement.").

Here, Amazon's 30(b)(6) witness, Scott Hayden, confirmed that the only pre-suit knowledge Amazon had of the '473 patent was knowledge through its counsel. Ex. 11 (S. Hayden Dep. Tr.) at 29:3-5, 30:11-19. Further, Amazon produced its relevant correspondence with prosecution counsel under a limited privilege waiver for BSD's inspection. Ex. 12 (Amazon's 7/17/26 Amended Response to Fourth Set of Interrogatories to Amazon.com) at 10 (No. 12) (citing correspondence with BakerHostetler, its prosecution counsel). BSD never amended its infringement contentions in response, and its opening expert report on infringement identified none of this correspondence, nor alleged any other specific facts showing Amazon specifically intended to infringe the '473 patent or that it engaged in egregious conduct. *See generally* Ex. 8. If BSD was going to bring forth any evidence of willfulness, it needed to do so by now. *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 4427490 at *4-5 (N.D. Cal. Aug. 22, 2016) (granting judgment as a matter of law of no willful infringement where "the only direct evidence that [plaintiff] offered to show that [defendant] was subjectively aware of [plaintiff's] Patent before this suit commenced was [USPTO correspondence] sent to [defendant's] outside patent prosecution counsel…, which [defendant's] outside counsel then forwarded…to [defendant's] in-house counsel."); *Intell. Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 611 (D. Del. 2017) (granting summary judgment of no willful infringement because "mere citation to a patent number in correspondence from the Patent Office is legally insufficient to support a finding of willfulness"), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018).

Having a complete failure of proof on both required elements, BSD's claim of willfulness should finally be dispatched. Summary judgment should be entered in Amazon's favor on this issue, unless the Court decides to dismiss Amazon entirely for the reasons stated earlier.

## V. CONCLUSION

For the reasons stated above, Amazon respectfully requests an order granting summary judgment for Amazon of no infringement on all claims or, in the alternative, an order granting summary judgment as to BSD's claims for willful infringement against Amazon.

Dated: October 15, 2026

By: */s/ Robin L. Brewer*
Robin L. Brewer

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Attorney for Defendant
AMAZON.COM, INC.

•